**II.   Questions for Contracting States**

**A.   "Service Section" of the HCCH website**

4)   On the "Service Section" of the HCCH website, the Permanent Bureau currently provides practical information for each Contracting State that was mainly obtained from the responses to the 2003 Questionnaire accompanying the provisional version of the new edition of the Practical Handbook on the operation of the Service Convention (2003 Service Questionnaire). This practical information, which is presented in form of a chart, consists of the following:

1)   Contact details of each of the Central Authorities (Arts 2 and 18)
      *Telephone: +45 72 26 84 00*
      *General website: www.justitsministeriet.dk*
2)   Forwarding authorities (Art. 3(1))
      *The Courts and the Regional State Administrations*
3)   Methods of service (Art. 5(1) and (2))
4)   Translation requirements (Art. 5(3))
5)   Costs relating to the execution of the request for service (Art. 12)
6)   Time for the execution of a request
7)   Judicial officers, officials and other competent persons (Art. 10 *b)* and *c)*)
8)   Oppositions and declarations (Art. 21(2), in particular with respect to Arts 8(2), 10 *a), b)* and *c)*, 15(2) and 16(3))
9)   Derogatory channels (bilateral or multilateral agreements or domestic law permitting other transmission channels (Arts 11, 19, 24 and 25)
      *Please add the following to the information already available on the HCCH website: "Council Regulation (EC) No 1393/2007 on the service in the Member States of Judicial and extrajudicial documents in civil and commercial matters, in accordance with the agreement between the European community and the Kingdom of Denmark on the service of judicial and extrajudicial documents in civil and commercial matters (Brussels, 19 October 2005)."*
10)  Useful links

The Permanent Bureau invites your State to peruse the "Service Section" and to verify if all the information contained in the practical information chart for your State is (still) correct or if it needs to be updated, amended or supplemented. **The States that currently do not have a chart of practical information on the "Service Section" are kindly invited to submit this information to the Permanent Bureau.**

5)   Would your State consider that the information provided on the "Service Section" of the HCCH website is:

[**x**]   Very useful
[ ]   Useful – would you have any suggestions for improvement?


[ ]   Not useful – would you have any suggestions for improvement?


**B.   Contact details for designated Authorities**

6)   Please check the contact information as contained on the HCCH website with regards to the **Central Authority(ies)** designated by your State (Arts 2 and 18(3)). If one of the following categories of information is missing then please provide it below (please provide both a postal address and a street address, if these are not identical):

*See the answer to question 4.*

Name of Authority:

Address:
Telephone:
Fax:
E-mail:
Website:
Language(s) of communication:
Name of contact person:

If your State is a federal State that has designated several Central Authorities under Article 18(3) and one of the above categories is missing for more than one Central Authority designated, please provide separate details for each of those Central Authorities (copy and paste if necessary – also, please provide both a postal address and a street address, if these are not identical):

Name of Authority: *Not applicable*
Address:
Telephone:
Fax:
E-mail:
Website:
Language(s) of communication:
Name of contact person:

7) Please also verify the contact information as contained on the HCCH website with regards to the following authorities in your State, *if applicable*. If one of the following categories of information is missing then please provide it below (please provide both a postal address and a street address, if these are not identical):

   a. **Other Authorities** that may have been designated in addition to the Central Authority (Art. 18(1)):

   Name of Authority: *Not applicable*
   Address:
   Telephone:
   Fax:
   E-mail:
   Website:
   Language(s) of communication:
   Name of contact person:

   b. An **Authority** that may have been designated instead of the Central Authority to complete the Certificate in the form of the model annexed to the Service Convention (Art. 6(1)):

   *The Danish courts. Further information about the courts, including the addresses of the individual courts, can be found on www.domstol.dk. The information on the website is available in English and French.*

   Name of Authority:
   Address.
   Telephone:
   Fax:
   E-mail:
   Website:
   Language(s) of communication:
   Name of contact person:

   c. The **Competent Authority** that receives documents transmitted by indirect diplomatic or consular channels (Art. 9(1)):

   Name of Authority:
   Address:
   Telephone:
   Fax:

E-mail:
Website:
Language(s) of communication:
Name of contact person:

8) In Conclusion and Recommendation No 48, the 2003 Special Commission invited all States to provide information on the forwarding authorities (the authority or judicial officer competent under the law of the requesting State to forward to the Central Authority of the requested State the request for service) and their competences for this information to be posted on the HCCH website. If your State has not yet done so, please provide comprehensive information to this effect below (obviously, the Permanent Bureau is not asking for a comprehensive list of individuals who may be forwarding authorities, but rather for a reference to all the categories of authorities, officials or professionals that may be forwarding authorities, for example "the courts", "bailiffs", "(professional) process servers", etc.):

## C.   Statistics

### *Main Channel of Transmission (Art. 3)*

### *Requests for Service – Incoming*

9) The following questions relate to the number of requests for service *addressed to your State* under the Service Convention.

a. Please complete the following table to indicate how many *incoming* requests for service the Central Authority(ies) of your State received in each of the past five years under the main channel of transmission. Please also note, if possible for each year, the country(ies) from which your State received the most requests for service.

| 2003 | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|
| Number: **503** | Number: **453** | Number: **678** | Number: **527** | Number: **575** |
| State(s): *France and Turkey* | State(s): *France and Turkey* | State(s): *France and Turkey* | State(s): *France and Turkey* | State(s): *Turkey* |

*The Ministry of Justice is not in possession of exact statistical information about received requests for service. The numbers mentioned above are the amount of cases registered in the Ministry's archives concerning both the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters and the Service Convention (and Council Regulation 1348/2000). Also, please note that there might be several requests of service in each case.*

*Council Regulation (EC) No 1348/2000 on the service in the Member States of judicial and extrajudicial documents in civil and commercial matters went into effect 1 July 2007. From this date, fewer request for service were received under the Service Convention.*

b. Of the total amount of requests for service received in 2007, please divide these depending on the method of service that was used by your State and complete the following table with respect to the time that lapsed between the Central Authority(ies) of your State receiving a request for service and the relevant authority of your State forwarding the Certificate of service to the applicant in the requesting State.

For example, if your State executed 12 requests for service using personal service and the entire process took less than two months in each case, please write the number "12" in the relevant box. The total amount of incoming requests for service that your State received in the past year should therefore equal the sum of the figures appearing in the sub-totals line below:

| Method of service | Less than 2 months | Between 2 and 4 months | Between 4 and 6 months | Between 6 and 12 months | More than 12 months | Returned un-executed (Art. 13) | Cases currently pending |
|---|---|---|---|---|---|---|---|
| Formal service (Art. 5(1) a)) | | | | | | | |
| Service by a particular method (Art. 5(1) b))[4] | | | | | | | |
| Informal delivery (Art. 5(2)) | | | | | | | |
| **Sub-totals:** | | | | | | | |

*The Ministry of Justice is not in possession of statistical information about the method of service used. However, the Ministry roughly assesses that little more than half the requests were conducted as formal service. Requests for service by a particular method are rare. The Ministry of Justice is not in possession of statistical information about the time lapsed in individual cases between reception of a request and the courts forwarding the Certificate to the requesting state. However, it is the assessment of the Ministry that the time lapsed in by far the most cases is less than 2 months.*

### Requests for Service – Outgoing

10) The following questions relate to the number of requests for service *sent by the forwarding authorities of your State* under the Service Convention. These questions are likely to require some consultation with the (main) forwarding authorities in your State that (may) have previously forwarded requests for service:

*The Ministry of Justice is not in possession of statistical information about outgoing requests. The Danish Court Administration has, however, informed the following to the Ministry of Justice:*

*"The Copenhagen Maritime and Commercial Court has informed the Danish Court Administration that the court has not got any specified record hereof. Eastern High Court has informed that the court has not got any specified record as well. However the court has informed that during the last 20 months the court has not had any outgoing requests for service to central authorities of other States according to the Hague Convention of 15 November 1965. In this period Eastern High Court has solely had outgoing requests for service to central authorities of other States according to EU-regulation 1393/2007."*

---

[4] See Question 29) b. for an explanation as to the meaning of Art. 5(1) *b)* – please adopt that meaning to fill in the chart above, independently of your response to Question 29) b. (i).

a.  Please complete the following table to indicate how many *outgoing* requests for service the forwarding authorities of your State have forwarded to Central Authorities of other States Parties in the past five years. If possible, please also note the country(ies) to which your State sent the most requests for service for each year listed below.

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| Number:<br><br>State(s): | Number:<br><br>State(s): | Number:<br><br>State(s): | Number:<br><br>State(s): | Number:<br><br>State(s): |

b.  Of the total amount of requests for service sent in 2007, please complete the following table with respect to the *time that lapsed* between the forwarding authority of your State sending a request for service and the applicant receiving the Certificate of Service from the requested State. Please also divide these depending on the method of service that was used in the requested State.

For example, if your State is made aware that six requests for service were sent from your State and the entire process took less than two months in each case, please write the number "6" in the relevant box. The total amount of outgoing requests for service that your State is aware were sent in the past year should therefore equal the sum of the figures appearing in the sub-totals line below:

| Method of service | Less than 2 months | Between 2 and 4 months | Between 4 and 6 months | Between 6 and 12 months | More than 12 months | Returned un-executed (Art. 13) | Cases currently pending |
|---|---|---|---|---|---|---|---|
| Formal service (Art. 5(1) *a)*) | | | | | | | |
| Service by a particular method (Art. 5(1) *b)*)[5] | | | | | | | |
| Informal delivery (Art. 5(2)) | | | | | | | |
| **Sub-totals:** | | | | | | | |

## D.  General appreciation of the Service Convention

11)  Please indicate below how your State rates the general operation of the Service Convention:

[ ]   Excellent
[x]   Good
[ ]   Satisfactory
[ ]   Unsatisfactory

---

[5] See Question 29) b. for an explanation as to the meaning of Art. 5(1) *b)* – please adopt that meaning to fill in the chart above, independently of your response to Question 29) b. (i).

If your State considers that the general operation of the Service Convention is good, satisfactory or unsatisfactory, please indicate what particular aspects of the Convention your State considers require improvement or where your State has encountered difficulties. For any areas that require improvement, please also indicate whether your State considers that solutions could be developed in specific *Conclusions and Recommendations* to be adopted by the next Special Commission or by specific comments in a new edition of the *Service Handbook* or if a *Protocol* to the Convention is needed.

## E.    Case law and reference work

12)   The Permanent Bureau invites States Parties to provide copies of any guides, desk instructions or any other practical information that may have been produced for the assistance of their judicial authorities or other authorities when sending or executing requests for service under the Service Convention.

*The Ministry of Justice has produced a guide to the Convention (vejledning nr. 21 af 28. januar 1970 om Haagerkonventionen af 15. november 1965 om forkyndelse i udlandet af retslige og udenretslige dokumenter i sager om civile eller kommercielle spørgsmål). The guide, which is dated 28 January 1970, can be found on www.retsinformation.dk. The guide is in Danish only.*

13)   The Permanent Bureau invites States Parties to provide copies of decisions rendered after the publication of the Service Handbook (or from before this time if these have not already been provided to the Permanent Bureau) that apply or relate to the Service Convention. If the decision is in a language other than English or French, a summary into either of these languages would be appreciated.

14)   The Permanent Bureau invites States Parties to forward a list of references of articles or books in connection with the Service Convention that do not already appear on the bibliography tab of the HCCH website or in the Service Handbook.

15)   The Permanent Bureau invites States Parties to forward a citation for and / or a copy of the domestic legislation which implemented the Service Convention in their territory(ies), as well as any citations for and / or copies of any domestic laws which provide for the service of documents abroad.

16)   The Permanent Bureau invites States Parties to forward a list of any other bilateral treaties and / or international instruments to which they are a party and that provide rules for the service of documents abroad. In particular, States Parties are invited to identify those treaties that allow for direct judicial communication (see Art. 11 *in fine* of the Service Convention).

*See the answer to question 4.*

## F.    Service Handbook

17)   In 2006 during the Special Commission on General Affairs and Policy of the HCCH (now referred to as the "Council on General Affairs and Policy"), the Permanent Bureau distributed free copies of the Service Handbook to the heads of all delegations in attendance. Subsequently, the Permanent Bureau also sent free copies of the Service Handbook to the National Organs of Member States of the HCCH (in most instances for them to be passed on to the Central Authorities designated by their States), and the Central Authorities of non-Member Contracting States to the Service Convention. Additional copies of the Service Handbook may be ordered via the "Service Section" of the HCCH website (< www.hcch.net >). Do(es) the Central Authority(ies) of your State have copies of the Service Handbook at their / its disposal?

[ ]   NO – why not?

[**x**]   YES

    a.   Do(es) the Central Authority(ies) of your State regularly consult the Service Handbook when confronted with issues regarding the operation of the Service Convention?

        [ ]   YES

        [**x**]   NO – why not? *The HCCH website is often used instead.*

    b.   Do(es) the Central Authority(ies) of your State find the Service Handbook to be:

        [ ]   Very useful
        [**x**]   Useful
        [ ]   Not useful

    Please indicate what particular aspects of the Service Handbook could be improved:

18)   Do practitioners (attorneys, process servers, etc.) in your State also consult and rely on the Service Handbook?

    [**x**]   YES

    [ ]   NO

    []   No information available for possible comment

19)   Has the Service Handbook been quoted or referred to in judicial proceedings and / or court decisions in your State (please provide precise references and copies of the relevant decisions)? If a decision is in a language other than English or French, a summary into either of these languages would be appreciated.

*Not to the knowledge of the Ministry of Justice*

    [ ]   YES – references / comments:

    [ ]   NO

## PART TWO – SUBSTANTIVE ISSUES

### I.   Non-mandatory but exclusive character of the Service Convention

20)   In Conclusion and Recommendation No 73, the 2003 Special Commission unanimously confirmed the view that the Service Convention is non-mandatory but exclusive (see also Service Handbook, paras 24-45).

*Please be aware of the comments made by the European Community with regard to the Council Regulation No 1393/2007 on the service in the Member States of judicial and extrajudicial documents in civil and commercial matters.*

a.   Has the non-mandatory but exclusive character of the Service Convention led to any questions or difficulties in your State since the 2003 Special Commission?

[**x**]   NO

[  ]   YES – please explain what these questions or difficulties were and how they were addressed and solved:

b.   Have any judicial proceeding and / or court decisions addressed this particular matter of the non-mandatory but exclusive character of the Service Convention?

[**x**]   NO

[  ]   YES – please explain how the court(s) addressed and / or decided the matter (please provide precise references and copies of the relevant decisions; if a decision is in a language other than English or French, a summary into either of these languages would be appreciated):

### II.   Scope of the Service Convention

### A.   Interpretation of the phrase "civil or commercial matters"

21)   In Conclusions and Recommendations Nos 69 to 72, the 2003 Special Commission urged for a broad and liberal interpretation of the phrase "civil or commercial matters" (Art. 1) and reaffirmed the Conclusions adopted at the 1989 Special Commission regarding the scope of the Service Convention.

a.   Has the interpretation of the phrase "civil or commercial matters" given rise to specific issues in your State (either as a requested or a requesting State) since 2003?

[  ]   YES

(i)   What were they and how have they been solved?

(ii)   Have the authorities of your State followed the Conclusions and Recommendations of the 2003 Special Commission?

[  ]   YES

[  ]   NO – why not?

(iii)   Please provide details and / or a copy of any relevant decision(s) (if these decisions are in a language other than English or French,

a brief summary into either of these languages would be appreciated):

[**x**]   NO

b.   Has (any of) the Central Authority(ies) of your State been in direct contact with an authority of another Contracting State to discuss the interpretation of this phrase (so as to decide whether or not to execute a request for service)?

[  ]   YES – please briefly explain the circumstances and modalities of any exchange:

[**x**]   NO – please explain why there was no communication on this issue:

*The Ministry of Justice normally applies a broad and liberal interpretation to the phrase. There have not been any problems in this regard. Please see below.*

22)   Regardless of whether a matter has actually arisen, please indicate (by placing a "YES" or a "NO" in the relevant box) which of the following types of matters the authorities of your State consider as falling within the scope of the phrase "civil or commercial matters":

*The answer given below only indicates a starting point. The determination of whether a certain matter falls within the scope of "civil and commercial matters" depends on the circumstances of the specific case. Therefore, the final scope of the phrase "civil or commercial matters" is for the courts to determine.*

[**yes**]   Bankruptcy or insolvency in general
[**yes**]   Reorganisation under bankruptcy laws
[**yes**]   Insurance
[**no**]   Social security
[**yes**]   Employment
[**no**]   Taxation
[**yes**]   Anti-trust and competition
[**yes**]   Consumer protection
[  ]   Regulation and oversight of financial markets and stock exchange (*e.g.*, in matters possibly involving insider trading)
[**no**]   Proceeds of crime
[  ]   Other matters (please specify):

*Whether or not the matter of "regulation and oversight of financial markets and stock exchange" falls within the scope of the Convention depends – more so than the other matters – on the individual case.*

23)   *This question is addressed to States that are also States Parties to the Evidence Convention*: Does your State interpret the expression "civil or commercial matters" in the same way under both the Service Convention and the Evidence Convention (see also Questions 17) and 18) in the Evidence Questionnaire, Prel. Doc. No 1 of May 2008 for the attention of the Special Commission on the practical operation of the Hague Evidence, Service, Apostille and Access to Justice Conventions)?

[**x**]   YES
[  ]   NO – please explain the difference(s):

**B.   Interpretation of "judicial and extrajudicial documents"**

24) The Service Convention applies to both judicial and extrajudicial documents (Art. 1(1) – see paras 65 to 70 of the Service Handbook).

a. Is the concept of extrajudicial documents, which may have to be served on an addressee, known in the domestic law of your State?

[ ]   NO
[**x**]   YES

*Decisions made by the Regional State Administrations.*

(i) What are the most important examples of extrajudicial documents generated in your State and which, under the domestic law of your State, may have to be served (*e.g.*, consents for adoption, notarial documents)?

(ii) Please explain in what circumstances these extrajudicial documents may have to be served abroad:

(iii) Who may serve these extrajudicial documents? Please specify in particular whether or not private persons may serve extrajudicial documents (see para. 70 of the Service Handbook).

(iv) How many extrajudicial documents has your State, as a requesting State, forwarded in 2007 to another State Party for service?
[ ]   0
[ ]   1-10
[ ]   11-20
[ ]   more than 20

*No information available.*

b. In 2007, how many extrajudicial documents has(have) the Central Authority(ies) or other relevant authorities and officials of your State received under the Service Convention, as the requested State, for service in your State?

*The Ministry of Justice is not in possession of statistical information on this matter.*

[ ]   0
[ ]   1-10
[ ]   11-20
[ ]   more than 20

(i) Please specify from which States these requests for service of extrajudicial documents emanated:

(ii) Were all these requests executed?
[ ]   YES
[ ]   NO – why not?

**C.   Service on States and State Officials**

25) Have the forwarding authorities of your State, as a State of origin, used any channel(s) of transmission available under the Service Convention when service has had to be effected upon a foreign State, head of State, a government entity,

member of government, consular or diplomatic agent or any other official acting for a State or a State-owned company (see also Question 39))?

*No information available*

[ ]   YES – please indicate:

    a.   which channel(s) of transmission under the Service Convention has(ve) most commonly been used in this context:

    b.   those State(s), or agents representing such State(s), for which / whom such requests for service have been forwarded:

    c.   whether service was eventually effected, and if so, by what method:

    d.   any difficulties that were encountered in any of these cases:

[ ] NO – if applicable, please indicate the method(s) of transmission that was (were) used, not under the Service Convention, to transmit requests for service upon a foreign State, head of State, a government entity, member of government, consular or diplomatic agent or any other official acting for a State or a State-owned company, whether or not service was eventually effected, and, if so, by what method:

26)   Has(have) the Central Authority(ies) or other authorities and officials in your State, as a State of destination, received requests for service upon your State, head of State, a government entity, member of government, consular or diplomatic agent or any other official acting for your State or a State-owned company?

*The Ministry of Justice is aware of a few examples of requests received by the Central Authority.*

[ ]   YES – please indicate:

    a.   which channel(s) of transmission under the Service Convention has(ve) most commonly been used in this context?

    b.   from which State(s), or which agents representing that State, such requests for service were received:

    c.   if service was eventually effected after such requests for service were received, and if so, by what method:

    d.   any difficulties that were encountered in any of these cases:

[ ]   NO – if applicable, please indicate the method(s) of transmission that was(were) used, not under the Service Convention, by other States to transmit requests for service upon your State, head of State, a government entity, member of government, consular or diplomatic agent or any other official acting for your State or a State-owned company, whether or not service was eventually effected, and, if so, by what method:

## III.   The main channel of transmission

## A.   Forwarding Authority (Art. 3)

27)   In Conclusion and Recommendation No 49, the 2003 Special Commission advised that in case of doubt as to the competence of the forwarding authority, rather than rejecting the request for service, the authorities in the requested State should seek to confirm that competence by either consulting the HCCH website or by making informal enquiries, including by way of e-mail.

Has your State, as a requested State, experienced any difficulties in determining whether a specific forwarding authority was in fact a legitimate forwarding authority under the law of the requesting State?

[**x**]   NO

[  ]   YES – please specify whether or not the authorities of your State followed Conclusion and Recommendation No 49 of the 2003 Special Commission:

[  ]   YES

[  ]   NO – why not?

28)   The Service Convention does not specify how requests for service should be sent by the forwarding authority of the requesting State to the relevant Central Authority of the requested State.

a.   Do the forwarding authorities of your State use the official postal mail service of your State to send most of their requests for service abroad?

[**x**]   YES

[  ]   NO

b.   Do the forwarding authorities of your State also use *private* courier services to send requests for service abroad?

[  ]   YES – please explain in what circumstances they use private courier services:

[**x**]   NO – please explain why:

c.   Do(es) the Central Authority(ies) of your State, as a requested State, accept requests for service when they are sent via a private courier service?

[**x**]   YES

[  ]   NO – why not?

*See also Question 33) regarding the use of modern technologies, in particular sub-questions b. and c.*

## B.   Methods of service (Art. 5)

29)   Please complete:

a.   Formal service (Art. 5(1) *a)*)

(i)   Please describe the methods of service prescribed by the domestic law of your State to effect formal service of documents upon persons who are within the territory of your State (Art. 5(1) *a)*):

*According to § 155 of the Danish Administration of Justice Act, 3 methods of service are available; service by letter, service by post and service by a bailiff. Service by letter is done by sending or delivering two copies of the document to the party and requesting the party to acknowledge the receipt by returning one copy to the court. By service by post the document is sent to the party by letter through the Danish*

*post office authorities with a certificate of delivery. By service by a bailiff the document is delivered to the party by a bailiff, who is appointed by the court.*

(ii)   Please indicate the method(s) generally used by your State when service is requested under Article 5(1) *a)* and no preference has been indicated as to the manner in which service should be effected (*e.g.,* personal service, by post, etc. See also below Question 29) c. (ii) and (iii)). Please also indicate your State's reasons behind any such default choice:

*Service by bailiff is generally used.*

b.   Service by a particular method (Art. 5(1) *b)*)

Pursuant to Article 5(1) *b),* service may be effected by a particular method requested by the applicant unless such a method is incompatible with the law of the requested State (requests for the use of a particular method are fairly rare in practice, see para. 132 of the Service Handbook). The purpose of this provision is to enable requests for a particular method of service *contemplated by the law of the requesting State* to be applied in the requested State so that the validity requirements for service in the requesting State are met. However, it appears that some forwarding authorities are systematically requesting that their request for service be executed under Article 5(1) *b)* even in circumstances where they intend to have service effected by a method that is recognised under the laws of the *requested* State (such as personal service). The Permanent Bureau believes that this practice is erroneous and that such a request should instead be made and specified under Article 5(1) *a).*

(i)   Does your State agree with the position of the Permanent Bureau that a request for a method of service that is recognised by the law of the requested State (such as personal service) may be specified and effected under Article 5(1) *a)* and that Article 5(1) *b)* serves a separate purpose?

[**x**]  YES

[  ]  NO – please explain why:

(ii)   If relevant, please describe the particular methods of service which your forwarding authorities have requested other States to use under Article 5(1) *b)* and whether these particular methods have in fact been used to effect service:

*No available information.*

(iii)   If relevant, please describe the particular methods of service by which your State has been requested to effect service under Article 5(1) *b)* and whether these particular methods have in fact been used to effect service:

*No available information.*

c.  Informal delivery (Art. 5(2))

(i)  Does the law of your State provide for *informal delivery* of documents (understood to be a method of service where the documents to be served are delivered to an addressee who accepts them voluntarily)?

[ ]  YES – please describe how service of documents via informal delivery is made in your State (Art. 5(2)):

[x]  NO

(ii)  As a matter of practice, does your State systematically attempt service of process by informal delivery if and when no particular method of service has been requested under Article 5(1) *a)* or *b)*?

*Formal service will always be attempted if the requirements are fulfilled. If the requirements for formal service are not fulfilled, informal delivery will be attempted.*

[ ]  YES

[ ]  NO

(iii)  As a matter of practice, does your State systematically attempt service of documents via a *formal* method of service when informal delivery has proven to be unsuccessful?

[ ]  YES – please specify if your State imposes any additional requirements before such formal service will be attempted (*e.g.*, a translation):

[x]  NO. *As mentioned above, formal service will be attempted if the requirements are fulfilled. If the requirements for formal service are not fulfilled – e.g. because the document to be served is not translated – informal delivery may be attempted. If informal delivery is unsuccessful, a translation of the documents is required before formal service will be attempted.*

## C.  Translation requirements (Art. 5(3))

30)  Please indicate if your State, as a requested State, imposes any language or translation requirements for documents to be served in your State under Article 5(1) (see Conclusions and Recommendations Nos 67 and 68 of the 2003 Special Commission):

[ ]  NO requirements

[x]  YES – please indicate what these requirements are, in each of the following set of circumstances:

*Documents to be served under Article 5(1) must be translated.*

a.  Formal service (Art. 5(1) *a)*):

In circumstances where the / a Central Authority of your State, as a requested State, is in a position to assess the content and nature of the request for service based on the "Summary" section of the Model Form and where there is evidence that the addressee is fluent in the language in which the document to be served is written. Would your State then still insist, under Article 5(1) *a)*, that the document be translated into another language (*i.e.*, one of the official languages of your State)?

[x]  YES – please indicate why:

[ ]  NO

b.  Particular method requested by the applicant (Art. 5(1) *b)*):

In circumstances where the / a Central Authority of your State, as a requested State, is in a position to assess the content and nature of the

request for service based on the "Summary" section of the Model Form and where there is evidence that the addressee is fluent in the language in which the document to be served is written. Would your State then still insist, under Article 5(1) *b)* that the document be translated into another language (*i.e.*, one of the official languages of your State)?

[**x**]   YES – please indicate why:

[ ]   NO

c.   Informal delivery (Art. 5(2)):

[**x**]   NO translation requirement for informal delivery

31)   The Service Convention does not state how any translation of the documents to be served under Article 5(1) should be prepared or who should prepare it. According to your State, which law determines these issues?

[ ]   The domestic law of the requesting State
[**x**]   The domestic law of the requested State
[ ]   Both laws
Please specify / comment if needed:

**D.   Costs (Art. 12)**

32)   Please indicate the costs incurred (if any) for each of the following methods of service under the law of your State (as a requested State) in accordance with Articles 5 and 12:

a.   Formal service (Art. 5(1) *a)*):

(i)   Who bears these costs?
[**x**]   Your State (requested State)
[ ]   The applicant / forwarding authority / requesting State – please explain whether or not service will only be effected in your State, as the requested State, only once any costs have been reimbursed. Also, please explain the modalities of any reimbursement (to whom the costs are reimbursed (relevant Competent Authority of your State, judicial officer, other person, etc.), and how the reimbursement is effected (electronic bank transfers, cheques, etc.))

b.   Particular method requested by the applicant (Art. 5(1) *b)*):

(i)   Who bears these costs?
[ ]   Your State (requested State)
[ ]   The applicant / forwarding authority / requesting State – please explain whether or not service will only be effected in your State, as the requested State, only once any costs have been reimbursed. Also, please explain the modalities of any reimbursement (to whom the costs are reimbursed (relevant Competent Authority of your State, judicial officer, other person, etc.), and how the reimbursement is effected (electronic bank transfers, cheques, etc.))

*The answer to this question depends on how unusual the particular method of service requested by the applicant is.*

c.   Informal delivery (Art. 5(2)):

(i)   Who bears these costs?

[**x**]   Your State (requested State)

[ ]   The applicant / forwarding authority / requesting State – please explain whether or not service will only be effected in your State, as the requested State, only once any costs have been reimbursed. Also, please explain the modalities of any reimbursement (to whom the costs are reimbursed (relevant Competent Authority of your State, judicial officer, other person, etc.), and how the reimbursement is effected (electronic bank transfers, cheques, etc.))

**E.   Modern Technologies**

33)   In Conclusions and Recommendations Nos 60 to 62, the 2003 Special Commission noted that the Service Convention does not on its terms prevent or prescribe the use of modern technologies to assist in further improving the operation of the Convention and that States Parties should explore all ways in which they can use modern technology. In Conclusion and Recommendation No 63, a variety of steps were identified for the exploration and use of modern technologies: in communications between a requesting party and a forwarding authority, in communications between a forwarding authority and a Central Authority of a requested State, and in the retransmission of the certificate of execution by the Central Authority or the designated authority (Art. 6). In light of these Conclusions, and in the context of the main channel of transmission, please comment on the following (see also below Part Three, Section II. C.):

a.   Does the law of your State, as a requesting State, allow for documents to be forwarded *from a requesting party to a forwarding authority* by fax, e-mail or a similar technology?

The question is not regulated by law. However, according to case law a writ must be sent to the courts with an original signature in order to be accepted

[ ]   YES – please specify what technologies are used in practice (*e.g.*, (secured or unsecured) transmission via fax or e-mail) and any requirements of the law of your State (*e.g.*, obtaining the consent of all / some of the authorities or parties involved, etc.):

[ ]   NO – please explain / specify:

b.   Does the law of your State, as a requesting State, allow for documents to be forwarded *from a forwarding authority to a Central Authority of a requested State* by fax, e-mail or a similar technology?

The question is not regulated by law. However, it is the opinion of the Ministry that there is nothing to prevent it in practice.

[ ]   YES – please specify what technologies are used in practice (*e.g.*, (secured or unsecured) transmission via fax or e-mail) and any

requirements of the law of your State (*e.g.*, obtaining the consent of all / some of the authorities or parties involved, confirming any requirements and / or capabilities of the Central Authority of the requested State in this regard, etc.).

[ ]   NO – please explain / specify:

c.   Does the law of your State, as a requested State, allow for documents to be *received by your (one of your) Central Authority(ies) from a forwarding authority abroad* by fax, e-mail or a similar technology?

The question is not regulated by law. However, in practice the Ministry of Justice will accept documents forwarded by fax, e-mail or similar technology unless the specific facts of the case give the Ministry reason to require an original signature.

[ ]   YES – please specify what technologies are used in practice (*e.g.*, (secured or unsecured) transmission via fax or e-mail) and any requirements of the law of your State (*e.g.*, obtaining the consent of all / some of the authorities or parties involved, etc., before being able to accept such documents for service).

[ ]   NO – please explain / specify:

d.   Does the law of your State, as a requested State, allow for *the certificate of execution to be transmitted* from the relevant Central Authority of your State or the authority designated under Article 6 to the applicant by fax, e-mail or a similar technology?

The question is not regulated by law. However, it is the opinion of the Ministry that there is nothing to prevent it in practise.

[ ]   YES – please specify what technologies are used in practice (*e.g.*, (secured or unsecured) transmission via fax or e-mail) and any requirements of the law of your State (*e.g.*, obtaining the consent of all / some of the authorities or parties involved, etc., before being able to transmit the certificate of execution):

[ ]   NO – please explain / specify:

e.   Does the law of your State, as a requesting State, allow for the certificate of execution to be received from the requested State by fax, e-mail or a similar technology?

The question is not regulated by law. However, it is the opinion of the Ministry that there is nothing to prevent it in practise. However, the facts of the specific case might give reason to require an original signature.



[ ]   YES – please specify what modern technologies are used in practice (*e.g.*, (secured or unsecured) transmission via fax or e-mail) and any requirements of the law of your State (*e.g.*, obtaining the consent of all / some of the authorities or parties involved, etc., before being able to receive the certificate of execution):

[ ]   NO – please explain / specify:


**IV.   Alternative Channels of Transmission (Arts 8, 9, 10)**

**A.   Translation requirements**

34)   In Conclusion and Recommendation No 65, the 2003 Special Commission recognised that whilst no translation is required under the Service Convention for documents transmitted under the alternative channels of transmission, in isolated cases, translations are sometimes required in these circumstances by the domestic law of States. Does the domestic law of your State impose translation requirements on documents that are transmitted for service through an alternative channel of transmission?

[**x**]   NO. *However, please see the comments previously given by Denmark with regard to Article 10(a).*

[ ]   YES – please provide to the Permanent Bureau all relevant information pertaining to these internal legal requirements and to which alternative channel they relate. If this information is not in either French or English then a translation into one of these languages would be appreciated:


**B.   Model Form**

35)   The Fourteenth Session of the HCCH (held in 1980) recommended that the part of the Model Form that contains the "Summary", accompanied by the "Warning", not only be used under the main channel of transmission but also under the alternative channels of transmission of the Service Convention (the Recommendation and the accompanying Report established by Gustaf Möller are available on the "Service Section" of the HCCH website (< www.hcch.net >). Please indicate whether the forwarding authorities in your State systematically send the "Summary" accompanied by the "Warning" when requests for service are sent abroad using an alternative channel of transmission.

*No information available.*

[ ]   YES
[ ]   NO – why not?


36)   The Permanent Bureau approves and encourages the practice of certain States to return the Certificate to the applicant even if transmission of the request for service occurred via an alternative channel of transmission provided for in Article 10 *b)* and *c)* (see para. 119 of the Service Handbook). This practice may even be extended to Article 10 *a)*, depending on the postal mail service used in the State of destination. Is it a practice within your State, as a State of destination, to use the "Certificate" part of the Model Form and to transmit this to the applicant in the State of origin when the transmission of the request for service occurred under one of the alternative channels of transmission contained within Article 10 *a)*, *b)* and *c)*?

*No information available.*

[ ]   YES, the Certificate is transmitted to the applicant when the transmission of the request for service occurred under Article 10 *a)* – please provide further details:

[ ]   YES, the Certificate is transmitted to the applicant when the transmission of the request for service occurred under Article 10 *b)* and / or *c)* – please

provide further details, *i.e.*, what category of or which judicial officers, officials or competent persons exercise this practice:

[  ]   NO

**C.    Diplomatic and Consular Channels**

**Article 8 – Direct Channels**

37)   Have the diplomatic and consular agents of your State been used to directly effect service of judicial documents upon persons abroad in accordance with Article 8(1) in the past five years?

*No information available.*

[  ]   NO – why not?

[  ]   Yes – please specify:
   a.   on how many occasions your diplomatic and consular agents abroad have been used to effect service in accordance with Article 8(1):

   b.   in which States these diplomatic and consular agents were based:

   c.   the average time taken between the transmission of the documents for service and the execution of service:

   d.   whether your State considers this channel to be efficient and effective:
      [  ]   YES
      [  ]   NO – why not?

   e.   whether there have been situations whereby the diplomatic and consular agents of your State have attempted to directly effect service of judicial documents upon persons abroad but were unable to as a result of the addressee not voluntarily accepting delivery of the document:
      [  ]   YES – please indicate how this matter was dealt with:

      [  ]   NO
   f.   whether the transmission of judicial documents to the diplomatic agents or consular officers of your State posted abroad, or the actual service of these judicial documents upon an addressee, have been executed by using electronic means (*e.g.*, by fax or e-mail):
      [  ]   YES
      [  ]   NO – why not?

**Article 9 – Indirect Channels**

38)   In the past five years, has your State used consular channels to forward documents, for the purpose of service, to those authorities of another Contracting State which were designated by the latter for this purpose in accordance with Article 9(1)?

*No information available.*

[  ]   NO – why not?

[ ]   YES – please specify:

a.   on how many occasions this channel has been used in the past five years:

b.   in which States these diplomatic and consular agents were based:

c.   the average time taken between the first transmission of the documents to be served and the execution of service:

d.   whether your State considers this channel to be efficient and effective?
  [ ]   YES
  [ ]   NO – why not?

39)   In the past, have there been "exceptional circumstances" in accordance with Article 9(2) that required your State to use diplomatic channels to forward documents to another State Party for the purpose of service?

*No information available.*

[ ]   NO
[ ]   YES – please describe what these exceptional circumstances were that warranted the use of diplomatic channels to forward documents for the purpose of service in another State Party. In particular, did any exceptional circumstances relate to the service of a claim on a foreign State, head of State, a government entity, member of government, consular or diplomatic agent or any other official acting for a State or a State-owned company (see para. 193 of the Service Handbook):

40)   Has the transmissions of documents to either diplomatic agents or consular officers of your State located abroad for the purpose of service in the State in which they are based, or the actual service on these documents upon the addressee, occurred via electronic means (*e.g.*, by fax or e-mail)?

*No information available.*

[ ]   YES
[ ]   NO – why not?

**D.   Article 10 *a)* – Postal Channel**

41)   If your State has opposed "the freedom to send judicial documents, by postal channels, directly to persons abroad" (Art. 10 *a)*), please indicate:

a.   the reason(s) that motivated this opposition:

b.   whether your State uses this channel of transmission to send judicial documents abroad for service by mail despite having filed an opposition under Article 10 *a)* (see paras 206-210 of the Service Handbook):
  [ ]   NO
  [ ]   YES – please explain:

*Please go to Question 45).*

42) Has the interpretation and application of Article 10 *a)* given rise to any difficulties in your State?

   *Please see the comments previously made by Denmark with regard to Article 10(a).*

   [ ]   YES – please specify / comment:

   [ ]   NO

43) If possible, please comment upon how frequently judicial documents are sent for service upon persons abroad, by parties in your State, via postal channels:

   *No information available.*

44) In Conclusion and Recommendation No 56, the 2003 Special Commission concluded that for the purposes of Article 10 *a)*, the use of a private courier was the equivalent of using the postal channel under the Service Convention.

   a.   Does the law of your State, as a State of origin, allow for private courier services to be used under Article 10 *a)*, *i.e.*, are judicial documents sent from your State for service abroad via private courier services:

   [ ]   YES
   [**x**]   NO – why not?

   b.   Does the law of your State, as a State of destination, allow for private courier services to be used under Article 10 *a)*, *i.e.*, are judicial documents received from abroad and served within your State by private courier services:

   [ ]   YES
   [**x**]   NO – why not?

**E.   Article 10 *b)* – Judicial Officers, Officials or Other Competent Persons**

45) If your State has opposed "the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination" (Art. 10 *b)*), please indicate the reason(s) that motivated this opposition:

   *If your State does hold an opposition, please go to Question 47).*

46) Provided the application of Article 10 *b)* has not been objected to by your State and that the law of your State presumably allows for service to be effected by "judicial officers, officials or other competent persons", please answer the following:

   a.   Which of the following would be considered to be "judicial officers, officials or other competent persons" under the law of your State (please tick all relevant boxes)? Please also note whether these categories differ depending on whether your State is a State of origin or a State of destination:

   *The answer differs depending on whether Denmark is the state of origin or the state of destination. With regard to the latter, the determination of whether the phrase "judicial officers, officials or other competent persons" includes a certain person relies on interpretation of the specific characteristics. With regard to Denmark being a state of origin, the answer is given below.*

   [ ]   Attorneys or solicitors
   [**x**]   Bailiffs (stævningsmænd)

[  ]   *Huissiers*
[  ]   Process servers
[  ]   Court officials
[  ]   Notaries
[  ]   Officials of the executive branch
[  ]   Other – please specify

b.  How does this channel of transmission operate in practice – in particular, do (any of) the judicial officers, officials or other competent persons mentioned above send (or receive) the judicial documents *directly* to (or from) their counterparts abroad, or do they have to use some other channel? Please also indicate whether these channels differ depending on whether your State is a State of origin or a State of destination.

*No information available.*

c.  Are there any costs associated with the use of this alternative channel of transmission in your State, either in terms of sending or receiving judicial documents?

*Not relevant.*

d.  How frequently is this channel of transmission used in your State (either as a State of origin or as a State of destination)?

*No information available.*

e.  May any transmission between the judicial officers, officials or other competent persons be done via electronic means (*e.g.*, by fax or e-mail)?

*Not regulated by law.*

[  ]   YES
[  ]   NO – why not?

## F.    Article 10 *c)* – Interested Persons

47)  If your State has opposed "the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, officials or other competent persons of the State of destination" (Art. 10 *c)*), please indicate the reason(s) that motivated this opposition:

*If your State does hold an opposition, please go to Question 49).*

48)  Provided the application of Article 10 *c)* has not been objected to by your State, please answer the following:

a.  Which of the following would be considered to be "any person interested in a judicial proceeding" under the law of your State (please tick all relevant boxes):

[  ]   Attorneys or solicitors
[  ]   Bailiffs
[  ]   *Huissiers*
[  ]   Process servers
[  ]   Court officials
[  ]   Notaries
[  ]   Officials of the executive branch
[  ]   Other – please specify

b.  How does this channel of transmission operate in practice – in particular is any person interested in a judicial proceedings able to send the judicial documents *directly* to the judicial officers, officials or other competent persons of the State of destination or does another channel have to be used?

c.  Are there any costs associated with the use of this channel of transmission in your State, either in terms of sending or receiving judicial documents?

d.  How frequently is this channel of transmission used in your State (either as a State of origin or as a State of destination)?

e.  May any transmission between a person interested in a judicial proceeding and the judicial officer, official or other competent person be done via electronic means (*e.g.*, by fax or e-mail):

[  ]   YES
[  ]   NO – why not?

## V.   Final refusal to execute the request (Art. 13)

49)  According to Article 13 of the Service Convention a requested State may refuse to execute a request for service when this would infringe the "sovereignty or security" of the requested State.

a.  In the past five years, has your State, as a requested State, rejected the execution of any request for service under Article 13?

[  ]   YES – please specify the grounds upon which your State rejected the execution. Please specify whether there is case law in your State that relates to this issue:

[**x**]   NO

b.  In the past five years, is your State aware of whether a(ny) request(s) for service forwarded by your State has(have) been refused by a requested State under Article 13?

[  ]   YES – please specify the precise grounds upon which the(se) request(s) for service were rejected:

[**x**]   NO

## VI.   Protection of the interests of the Plaintiff and Defendant (Arts 15 and 16)

50)  When a writ of summons or an equivalent document has been transmitted abroad for the purpose of service under the Service Convention, and the defendant has not appeared, Article 15(1) requires States not to give judgment unless certain requirements have been met. Nonetheless, and subject to States' declarations on this matter, a judge may give judgment if the conditions specified in Article 15(2) are fulfilled. One of these conditions is Article 15(2) *c)* which states that "no certificate *of any kind* has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed" [emphasis added]. Please comment on the interpretation in your State of the expression "no certificate *of any kind*". In particular, would your State, as a

requesting State, consider that the receipt of a certificate that stated that *no service* has occurred could nevertheless trigger the application of Article 15(2)?

[**x**]   YES, the receipt of a certificate that states that no service has occurred may trigger the application of Article 15(2) (if all the other conditions are fulfilled).

[  ]   NO, the receipt of a certificate that states that no service has occurred may not trigger the application of Article 15(2) – please explain why:

51)   If a requesting State has made a declaration in accordance with Article 15(2) and considers that all conditions of Article 15(2) have been fulfilled and accordingly enters a default judgment, would your State, as a requested State, recognise and enforce the resulting judgment in these circumstances (assuming that all other conditions for the recognition and enforcement of the judgment are fulfilled)?

It is a basic principle in Denmark that judgements of a foreign court is neither recognised nor enforced by the Danish courts. However, the courts are in some cases obligated to recognize and enforce a foreign judgement according to international agreements and regulations, for example the Brussels I Regulation and the Lugano-convention. The answer depends on whether these international instruments allow the courts to examine the question of service.

[  ]   YES
[  ]   NO – please indicate the grounds upon which your State would refuse to enforce a judgment in these circumstances:

52)   If your State has not made a declaration under Article 15(2), please explain:

*Declaration has been made.*

a.   why your State has not made such a declaration:

b.   whether or not your State is assessing the possibility of making such a declaration:

53)   If your State has *not* made a declaration under Article 15(2), what actions would a judge in your State take (as a requesting State) if your State has not received a certificate of service and the defendant has not appeared? For example, would the law of your State enable a judge to enter a default judgment, despite the absence of a declaration under Article 15(2)? Upon what grounds would such a judgment be made? If there were some evidence that service had actually been effected, would this change the options that may be available to a judge?

[**x**]   Not applicable (my State made a declaration under Art. 15(2))

54)   If your State has not made a declaration under Article 16(3), please explain:

*Declaration has been made.*

a.   why your State has not made a declaration:

b.   whether or not your State is assessing the possibility of making a declaration:

**VII.  Date of service**

55) The Service Convention does not include a provision that determines the date of service (*i.e.*, the precise moment when the documents have actually been or are deemed to have been served). As a result, it is for the domestic law of the State(s) involved to determine the date of service.

    a.    How is the date of service of documents determined in your State:

        (i)    in relation with the execution of a request for service forwarded under the main channel of transmission (please also specify whether your State relies on the date mentioned under point 1 of the Certificate to determine the actual date of service)?

        (ii)    when one of the alternative channels of transmission has been used?

The determination of the date of service depends on the method of service in question. In the case of service by letter, the date, which the receiving part notes to be the date he/she received the mail, is considered the date of service, cf. § 156 of the Danish Administration Act. Has the receiving part not noted a date of reception, the date of the postmark on the returning letter is considered as the date of service. In the case of service by a bailiff appointed by the court or by a public official of the Danish post office authorities (Post Danmark A/S), the date of service is the date that the document was handed over to either the person in question or one of the persons allowed to receive the document on behalf of that person (see the answer to question 29 a).

    b.    When the law of your State requires that documents be served within a specific period, does the law of your State also provide effective means to protect the interests of the applicant when the documents have to be served abroad and are thus subject to the effective operation of authorities or professionals abroad (*e.g.*, does the law of your State provide for extended periods of service or for fictitious dates of service based on the date when the documents are sent or ready to be sent abroad, etc.; see Conclusion and Recommendation No 75 of the 2003 Special Commission)?

Danish law does not contain rules which require that documents be served within a specific period.

    [  ]    YES – please specify:

    [  ]    NO

    c.    Has the absence of an explicit rule on the date of service in the Convention caused any practical difficulties in your State?

    [  ]    YES – please specify:

    [**x**]    NO

**PART THREE – OTHER OPERATIONAL ISSUES**

**I.     Model Form annexed to the Service Convention**

**A.     Fillable PDF versions of the Model Form**

56)   The Permanent Bureau has made the Model Form annexed to the Convention available as a fillable PDF document on the HCCH website. This fillable version of the Model Form is currently available in English, French and in two trilingual versions (English / French / Ukrainian and English / French / Russian). These fillable forms have proven to be very useful. The Permanent Bureau would be pleased to make available other trilingual Model Forms in the same format (English / French / one of the official languages of a State Party). States that are interested in producing a Model Form with (one of) their official language(s) available as fillable PDF documents are invited to send to the Permanent Bureau a document in MS-Word with the text of the Model Form in the relevant official language. The Permanent Bureau will then create the fillable version and upload it onto the HCCH website.

Please feel free to comment further on the above:


**B.     Request Form (Art. 3)**

57)   The first box on the Model Form asks for the "[i]dentity and address of the *applicant*" [emphasis added]. The Permanent Bureau's interpretation of the word "applicant" is that it refers to the *forwarding authority* referred to in Article 3(1) (see Service Handbook, paras 112-114). Does your State agree with this interpretation?

[**x**]   YES

[  ]   NO – what then is the interpretation of this word in your State?

    [  ]   The plaintiff in the proceedings

    [  ]   Counsel representing the plaintiff (if different from the forwarding authority)

    [  ]   The court where the proceeding is taking place in the requesting State

    [  ]   Other – please specify:


58)   In Conclusion and Recommendation No 48, the 2003 Special Commission unanimously approved the suggestion that the information regarding the forwarding authorities and their competences be included in the Model Form. Does your State systematically follow this Conclusion and Recommendation when sending a request for service?

[**x**]   YES *(according to the information received from the Danish Court Administration)*

[  ]   NO – why not?

**C.   Certificate (Art. 6)**

59)   Article 6(4) indicates that the Certificate shall be "forwarded directly to the *applicant*" [emphasis added]. The Permanent Bureau's interpretation of the word "applicant" is again that it refers to the *forwarding authority* referred to in Article 3(1). Does your State agree with this interpretation?

    [**x**]   YES

    [ ]   NO – to whom then do(es) the Central Authority(ies) of your State or the authority designated for this purpose forward the Certificate:

        [ ]   The plaintiff in the proceedings

        [ ]   Counsel representing the plaintiff (if different from the forwarding authority)

        [ ]   The court where the proceedings are taking place in the requesting State

        [ ]   The nearest Embassy representing the requesting State

        [ ]   Other – please specify:


**II.   E-service**

**A.   In strictly domestic situations**

60)   Does the law of your State, in strictly domestic situations, allow for documents to be served by fax, e-mail, SMS, the posting of a message on a website, or by a similar modern technology?

    [**x**]   NO – are there plans to introduce service by using such technologies?

        [**x**]   YES – please specify:

        In 2004, a bill on digital communication in the judicial system, including rules on digital service, was passed, but not set into force. According to the bill, a document can be served by sending a digital message, e.g. an e-mail. However the document is only considered to be served, if the receiving part acknowledges receipt of the message. Acknowledgement can be done by sending a digital message (e.g. an e-mail) signed digitally (digital signatur) or by returning a signed copy of the message. The minister of justice is given the power to establish the time of coming into force.

        [ ]   NO

    [ ]   YES – please specify:

        a.   the legal framework and practical circumstances in which such technologies may be used (please describe for each if necessary):

        b.   whether a secured transmission has to be used for any / each of these technologies, and if so, which kind of secured transmission is used in practice:

        c.   if and how service upon the addressee is acknowledged or proven in such circumstances:


**B.   In cross-border situations outside of the Service Convention**

61) Have the relevant authorities of your State served documents by fax, e-mail, SMS, the posting of a message on a website or by a similar modern technology in cross-border situations that did not fall within the scope of the Service Convention?

[ ]   YES – please specify:

    a.   the legal framework and practical circumstances in which this occurred – in particular, whether the terms of a regional or bilateral instrument provided for or otherwise allowed this (please describe for each if necessary):

    b.   whether a secured transmission has to be used for any / each of these technologies, and if so, which kind of secured transmission is used in practice:

    c.   if and how service upon the addressee was acknowledged or proven in such circumstances:

[**x**]   NO  *(according to the information received from the Danish Court Administration)*

## C.   E-service and the main channel of transmission under the Service Convention

62) Has the / a Central Authority of your State received requests for service that expressly asked for documents to be served by fax, e-mail, SMS, the posting of a message on a website or by a similar modern technology?

[**x**]   NO  *(not to the knowledge of the Ministry of Justice)* – please indicate how the Central Authority would respond if it were to receive such requests:

[ ]   YES

    a.   From which State(s) did these requests emanate?

    b.   Did the requests for service provide any particular circumstances or explanations as to why the execution of using such technologies was requested?

        [ ]   YES – what were these circumstances or explanations? (please tick all relevant boxes)

            [ ]   Urgency

            [ ]   Failure of previous attempts to serve process by traditional means

            [ ]   Use of such technologies approved by judicial authority of the forum or the domestic law of the forum

            [ ]   All parties involved gave their (prior or subsequent) consent

            [ ]   Other – please specify:

        [ ]   NO

    c.   Did your State in fact execute any of these requests for service by using any of these modern technologies?

        [ ]   NO – why not?

[ ]   YES – please specify:
- (i)   the legal basis upon which these requests for service were executed:

- (ii)   whether a secured transmission was used or required or requested to be used, and if so, which kind:

- (iii)   if and how service upon the addressee was acknowledged or proven in such circumstances:

63)   Has your State, as a requesting State under the Service Convention, sent requests for service abroad that expressly asked for documents to be served by fax, e-mail, SMS, the posting of a message on a website or by using a similar modern technology?

[**x**]   NO   *(according to the information received from the Danish Court Administration)*

[ ]   YES
- a.   To which State(s) were these requests sent?

- b.   Did the requests for service provide any particular circumstances or otherwise provide explanations as to why the execution of service using such technologies was requested?
  - [ ]   YES – what were these circumstances or explanations? (please tick all relevant boxes)
    - [ ]   Urgency
    - [ ]   Failure of previous attempts to serve process by traditional means
    - [ ]   Use of such technologies approved by the relevant judicial authority or the domestic law of your State
    - [ ]   All parties involved gave their (prior or subsequent) consent
    - [ ]   Others – please specify:

  - [ ]   NO
- c.   Were these requests for service in fact executed by using any of these modern technologies?
  - [ ]   YES
  - [ ]   NO – please provide any information you may have as to why these requests were not executed:

64)   How likely is it that your State would recognise and execute a foreign judgment if the related writ of summons was served abroad by fax, e-mail, SMS, the posting of a message on a website or by using a similar modern technology (all other conditions for recognition being of course fulfilled)?

The answer depends entirely on the situation at hand.

- [ ]   Very likely
- [ ]   Likely
- [ ]   Very unlikely
- [ ]   It depends on the technology used – please indicate which modern technology method of service your State would accept:

65) How likely is it that your State would recognise and enforce an agreement made by parties to a contract to the effect that they agree in advance to serve documents by fax, e-mail, SMS, the posting of a message on a website or by using a similar modern technology?

The answer depends entirely on the situation at hand.

[ ]   Very likely

[ ]   Likely

[ ]   Very unlikely

Please explain / comment:

**D.   E-service and the alternative channels of transmission under the Service Convention**

66) Does your State interpret the expression "postal channels" in Article 10 *a)* as including transmissions by:

a.   Fax

[ ]   YES

[**x**]   NO

*Comments:*

b.   E-mail

[ ]   YES

[**x**]   NO

*Comments:*

c.   SMS

[ ]   YES

[**x**]   NO

*Comments:*

d.   The posting of a message on a website

[ ]   YES

[**x**]   NO

*Comments:*

**E.   Miscellaneous**

67) Have there been any other recent developments in your State in relation to the service of documents by fax, e-mail, SMS, the posting of a message on a website or by using a similar modern technology (including in situations involving one of the alternative channels of transmission under the Service Convention where applicable)? Please describe below and provide the citations for and / or a copy of any relevant decision or article in this regard (if this information is not in English or French, a summary into one of these languages would be appreciated):

No information available.

68) In Conclusions and Recommendations Nos 60 to 62, the 2003 Special Commission noted, amongst other matters, that the Service Convention does not on its terms

prevent or prescribe the use of modern technologies to assist in further improving its operation and that States Parties to the Service Convention should explore all ways in which they could use modern technology. Does your State think that the use of modern technologies under the Service Convention should be further encouraged by the adoption of:

Please be aware of the comments made by the European Community.

a.   Specific Conclusions and Recommendations to that effect by the 2009 Special Commission

[ ]   YES

[ ]   NO

*Comments:*

b.   A Protocol to the Service Convention:

[ ]   YES

[ ]   NO

*Comments:*

*Thank you!*

\*   \*   \*