# EXHIBIT G



# ORDER ISSUED BY THE MARITIME AND COMMERCIAL COURT

### Delivered on May 29, 2018

---

**Case BS-7796/2018-SHR**

3SHAPE TRIOS A/S
(attorney Mikkel Vittrup)
(attorney Peter Nørgaard)
and

3SHAPE A/S
(attorney Mikkel Vittrup)
(attorney Peter Nørgaard)
and

3Shape, Inc.
(attorney Mikkel Vittrup)
(attorney Peter Nørgaard)


versus


Align Technology, Inc.
(attorney Kenneth Kvistgaard-Aaholm)




*The ruling was delivered by judge Mette Skov Larsen.*

**Particulars of claim and the parties' claims**

3SHAPE TRIOS A/S, 3SHAPE A/S and 3Shape, Inc. (hereinafter: 3Shape) brought an action before the Maritime and Commercial Court on March 6, 2018 against the American company Align Technology, Inc. (hereinafter: Align).

This ruling concerns only the question of whether the writ was duly served on Align.

The Plaintiff, *3Shape*, has *principally* contended that the writ of March 6, 2018 in Case No. 10/2018. BS-7796/2018-SHR was served on Align Technology, Inc., and that the case is adjourned by 14 days on receipt of a defence from Align Technology, Inc., *in the alternative,* that the writ of March 6, 2018 be served on Align Technology, Inc. via the central authority of the United States of America.

The Plaintiff, *Align*, contends that the action be adjourned by properly serving the writ.

**The information contained in the case**

On March 6, 2018, 3Shape brought the present action before the Maritime and Commercial Court against Align. At the same time, 3Shape sent a copy of the writ and annex, including an English translation of the writ, to Align's address in the United States by UPS.

On March 8, 2018, an employee of Align received the writ, including an English translation and the annex, at Align's address in California, USA.

It is undisputed that both Align and Align's attorneys (in Denmark and the United States) have received a copy of the writ and the annex together with an English translation of the writ.

<u>Legal basis</u>

The rules on service are set out in Chapter 17 of the Administration of Justice Act. The general rules on service are set out in Paragraphs 155 to 157a.

Paragraph 158 of the Administration of Justice Act states on service abroad that

> "If the person concerned has a permanent address abroad or resides abroad and if service cannot be made in this kingdom, the person concerned may not be served in this kingdom under Paragraph 155(1)(4) and (5), cf. Paragraph 157, or Paragraph 155 (1)(4) and (5), cf. Paragraph 2, service shall occur by letter or in the manner proscribed by convention or under applicable law of the person's country of residence."

Paragraph 163(2) of the Administration of Justice Act states that

> "Where the document to be served has come into possession of the person concerned, service is considered to be effected, even if service has not been effected in accordance with the rules laid down in Paragraphs 155 to 157a."

The provision was introduced by law no. 66 of 8 March 1972 on amendments to the Administration of Justice Act (service, etc.) and entered into force on July 1, 1972.

In the proposed amendment to the Justice of Administration Act L7 submitted on October 19, 1971, the remarks on Paragraphs 159-165 of the Administration of Justice Act state that

> "... the provisions are essentially equivalent to the draft of the Council of Justice. However, in Paragraph 163 a new Sub-Paragraph 2 has been inserted, in accordance to which service is considered to occur where the notice to be served has come into possession of the person concerned even if service has not been effected in accordance with the rules laid down in Paragraphs 155-157. In such cases, the notification shall be deemed to be served at the time the notification came into possession of the person concerned. It seems unreasonable that a case must be adjourned in order to effect new service when the notice in question has undoubtedly been served on the person concerned. A similar provision is contained in the Swedish Code of Judicial Procedure, Chapter 33, Paragraph 14."

Article 15 of the Convention of 15 November 1965 on the Service of Legal And Commercial Documents abroad (the Hague Convention on Service) states, inter alia, that

> "The central authority of the receiving states shall serve or commission service of the document either by
>
> - a) applying one of the procedures prescribed by the law of the receiving state on the service of documents in domestic proceedings to persons who reside in its territory;
> - b) applying a specific procedure requested by the applicant, provided that it is not incompatible with the law of the receiving state. …"

Furthermore, Article 10a of the same Convention states that

> "Unless the recipient state objects to it, the Convention shall not prevent the option of sending judicial documents directly by mail to persons abroad"

The United States has not objected to legal documents being sent directly by mail.

**The parties' views**

The Plaintiff, *3Shape*, has essentially pleaded the case in accordance with the particulars of claim of 8 May 2018, which, inter alia, states that:

> "1 <u>Introduction</u>
>
> 1.1 Subject matter of the proceedings
>
> This formality procedure concerns the question of whether 3Shape's writ of 6 March 2018 was served on Align.
>
> According to 3Shape, the court shall rule on the following:
>
> i. whether Paragraph 163(2) of the Administration of Justice Act applies to the service of 3Shape's writ against Align in the United States; and
>
> ii. whether the Hague Convention precludes 3Shape's writ from being served on Align in the United States when the writ is sent by mail.
>
> …
>
> 3 <u>Service is lawful under Danish law</u>
>
> 3Shape contends that lawful service has occurred under the Administration of Justice Act, since it is agreed that the writ, the annex and the English translation of the writ have been received by Align, cf. Paragraph 163(2).
>
> 3.1 The Administration of Justice Act's rules on service
>
> The Danish rules on service are set out in Chapter 17 of the Administration of Justice Act ... The aim of the rules is to ensure that a document be delivered to the correct recipient so that the recipient has the opportunity to familiarize himself/herself with the content of the document. This is apparent, inter alia, from the preparatory works for the rules of the Administration of Justice Act's rules on service ...:

"The purpose of service is to ensure that a notice (writ, notice, etc.) reaches the addressee or the relatives of the addressee, etc. and to obtain proof thereof."

The starting point is that service must be effected under Paragraph 155 of the Administration of Justice Act, which lists a number of methods of service to ensure the performance of the above-mentioned purpose, including, inter alia, the service of letters, postal service and service on bailiffs. By Law No. 1242 of 18 December 2012, the rules were extended, inter alia, to include rules on telephone service (Paragraph 155(1)(6)) and digital service (Paragraph 155(1)(2) and (3)).

If the recipient of the procedural notice has known residence abroad and service cannot be effected under Paragraph 155, service shall be effected by service of letter or in the manner prescribed by convention or by law of the country of the receiving party, cf. Paragraph 158.

3.2 Paragraph 163(2) of the Administration of Justice Act

However, those procedures depart from the central provisions of Paragraph 163(2) of the Administration of Justice Act according to which service is deemed to have occurred if it is demonstrated that the procedural notice has reached the correct recipient, and the purpose of the rules is thus fulfilled. In practice, this rule reduces the rules of the Administration of Justice Act on service to a question of documentation of receipt, as described by Jens Dinesen in *Juristen 1986* ...:

"Thus, Paragraph 163(2) has in fact, both domestically and abroad, transformed the service system into a general rule of proof of personal reception regardless of the form of service (…)".

This is also supported by the preparatory work related to the provision.

Paragraph 163(2) of the Administration of Justice Act was introduced by Law No. 66 of 8 March 1972 … The draft law includes the following comments on the provision …:

"However, in Paragraph 163 new Sub-paragraph 2 has been inserted, according to which service is deemed to have occurred when the notice to be service has come into possession of the person concerned even if service has not been effected in accordance with the rules laid down in Paragraphs 155-157. In these cases, the notice shall be deemed served at the time the notice came into possession of the person concerned. It seems unreasonable to adjourn a case in order to effect a new service when the notice in question undoubtedly has been received by the intended recipient. A similar provision can be found in the Swedish Code of Judicial Procedure, Chapter 33, Paragraph 14." (underlining added)

On this basis, the legislature chose to insert the provision in Paragraph 2 by way of derogation to the other service procedures.

Paragraph 163(2) of the Administration of Justice Act implies that service under Danish law may be effected by any kind of service means when it can be demonstrated that the notice to be served has been received by the recipient, as provided for in the quote from Jens Dinesen above. A purely formal system has therefore been opted out of in which the sole method of service is decisive and, on the other hand, the choice of a system in which it is essential is that the notice has actually been delivered. The rule reflects a healthy dose of Danish pragmatism. The whole purpose of using the methods of action in Paragraph 155 has already been achieved if there is evidence that the notice has been delivered.

This purpose is no less applicable in the case of procedural aliens, as is the case involving Align.

3.3 Application of Paragraph 163(2) of the Administration of Justice Act in relation to procedural aliens

Align's attorneys contend, by making reference to the High Court's decision in U 1997.896 HK … that Paragraph 163( 2) does not apply to service abroad, i.e., in the case of procedural aliens, a purely formal system applies even if the purpose of the service has been achieved. In this specific case, the High Court refrained from applying Paragraph 163(2) of the Administration of Justice Act on the ground that no reference has been made to Paragraph 158 of Paragraph 163(2).

3Shape disagrees that the ruling is an expression of applicable law.

First, the Western High Court's ruling was overturned by the Supreme Court in U 1997.896 HK …, in which no decision was made on the scope of Paragraph 163(2).

Second, the Western High Court's ruling should be seen in the light of the specific circumstances of the case in which service was effected on a person who alternately resided in the United States (California) and Mexico, respectively. The Supreme Court concluded that, despite the special circumstances of the case, that service had occurred.

Third, it is of no material importance that the provision in Paragraph 158 of the Administration of Justice Act does not contain a reference to Paragraph 163(2). The provision in Paragraph 158 of the Administration of Justice Act merely states which rules can be applied in relation to procedural aliens, where no service can be served in Denmark. This provides for 1) the use of letter service, 2) the rules prescribed by convention or 3) the applicable rules of the law of the countries concerned. Letter service (Paragraph 155(1) (1)) is precisely one of the rules that can be waived by Paragraph 163(2) of the Administration of Justice Act if documentation of receipt is available.

Thus, a reference is superfluous. There is no basis in the wording or preparatory work related to the law to conclude that the legislature should have wanted to exempt procedural aliens from the scope of Paragraph 163(2).

Such an interpretation would also lead to strange results given that Paragraph 158 concerns not only service abroad, but also service to aliens in Denmark. If a procedural alien residing outside of Denmark (for example, in the United States) is currently a resident of Denmark, Paragraph 158 prescribes that the common forms of service, such as bailiff service, may be used, cf. the reference to Paragraph 155(1)(5) of Paragraph 158. If Paragraph 163(2) were to be interpreted as narrowly as claimed by Align, it would exclude the application of Paragraph 163(2), even with regard to such persons who are actually residing in this country. This cannot be true.

Fourth, the Eastern High Court subsequently established in U 2005.3302 ØK that Paragraph 163(2) may apply in relation to person who do not reside in Denmark.

In U 2005.3302 ØK, the High Court considered an internal email from a law firm as sufficient documentation that a notice had reached the intended recipient who resided in Sweden.  In the exchange of claims, Align stated that the Eastern High Court did not examine the issue. This is disputed by 3Shape. The case clearly applies Paragraph 163(2) in relation to an alien residing abroad. Moreover, the case was a criminal case, and in such a case it must be assumed that the High Court has paid extra attention to the question of whether proper service occurred.  In addition, criminal proceedings are subject to an official principle; unlike civil proceedings in which a principal of negotiation and disposition applies, Paragraph 338 of the Administration of Justice Act does not apply to criminal proceedings. Thus, the High Court had to examine the question of whether the Defendant or the Defendant's counsel has objected and pleaded the question case. Nevertheless, the Eastern High Court thought nothing of applying Paragraph 163(2) in relation to aliens.

At the time of the ruling of the Eastern High Court in 2005, the High Court was aware of the ruling of the High Court represented in U 1997.896. Partly, because the ruling was printed in the publication *Ugeskrift for Retsvæsen*, partly, because the ruling was one of the few rulings at that time, which referred to the scope of application of Paragraph 163(2) in relation to aliens, partly because the ruling was mentioned in the commented Administration of Justice Act of 2004 ... Nevertheless, the Eastern High Court chose to apply Paragraph 163(2) of Administration of Justice Act in relation to service abroad. On this basis, 3Shape does not believe that the ruling of the High Court U 1997.896 can be taken into account as applicable law at this time.

The above interpretation of Paragraph 163(2) is also supported by legal literature, cf. Jen Dinesen in *Juristen 1986* …:

"Under Section 158 of the Administration of Justice Act, service abroad can always be effected by letter, as provided for in Paragraph 155(1). It may seem doubtful whether that provision is contrary to the rules of the Hague Convention prescribing that the territory of the State may oppose transmission through the postal service and the general rule of international law, which may be regarded as having been expressed herein

(…)

In any case, such service presumably must, according to the wording of the Administration of Justice Act, have legal effect in this country, and the same must be the case in any other case where the addressee has demonstrably received the document, cf. Paragraph 163 (2). The comments on the provision do not give rise to the reference to Paragraphs 155-157 as its applicability only in the Paragraph 158 situation, if the methods of service are in fact similar and partly based on a reference to the domestic methods of service, cf. hereby, the Judicial Council's summary of the corresponding Swedish rules in FT 197172 A sp. 77. "

In the light of the foregoing, it is 3Shape's belief that it would be an inappropriate formalistic interpretation of Paragraph 163(2) of the Administration of Justice Act in breach of the purpose of the rules on service if the writ is not considered to be served against Align when the parties agree that Align has received the writ.

There is no reason to take into account Align in this situation. Align has confirmed that they have received a writ, an annex and an English translation of the writ. Nevertheless, Align takes the formal view that service on Align occurs only when the rules of the Hague Convention are applied. However, the application of the rules of the Hague Convention would only lead to the outcome that Align agrees has already been achieved, namely proof of Align's receipt of the writ. This conduct on Align's part is likely due to tactical considerations concerning the cases brought by Align against 3Shape in the United States, which the Danish courts should not support.

## 4  No conventional obligation to prevent service

This fact should only be briefly mentioned since the parties now seem to agree on this and since 3Shape understands Align's views in such a way that Align no longer disputes compliance with the rules of the Hague Convention. However, the court should examine, of its own motion, whether there are rules of international law that prevent the establishment of whether service abroad has occurred and that service by mail may occur in the United States without violating the sovereignty of the country.

Some countries consider service by mail a violation of their sovereignty, cf. Jens Dinesen in *Juristen 1986*... That question has now been largely resolved by Article 10(a) of the Hague Convention, according to which the Convention does not preclude service by mail unless reservations are made.  Like Denmark, the United States has not made any reservations about Article 10(a), cf. the US Declaration to the Convention ... Service via mail may therefore occur if this is provided for under the law of the State, in which the case originated. In Denmark, Paragraph 163(2) of the Administration of Justice Act, which includes any form of service, provides for such option if only there is proof of receipt, cf. above.

In this context, it should be pointed out that the phrase "by mail" as referred to in Article 10(a) is not the same as the Danish form of postal service, cf. Paragraph 155(1)(4) of the Administration of Justice Act,  which may be applied only by public authorities, cf. decision no. 816 of 25 June 2013 on service ... Article 10(a), therefore, also covers service provided by private courier companies, cf. item 56 of the opinions of the special commission under the Hague Convention, which drew up a number of recommendations in 2003 on understanding the Convention …:

"The SC considered the increasing use of private courier services for the expedi-
tious transmission of documents in a variety of business settings and heard reports
that such couriers have been used to serve process under Article 10(a) of the Con-
vention. In light of that, the SC concluded that for the purposes of Article 10(a) the
use of a private courier was the equivalent of the postal channel."

This understanding is supported by the official handbook of the Hague Convention …

Finally, to set the record straight, it should be noted that since the USA – like Denmark - has not made any reservation to Article 10(a) on the translation of the legal document in questions, in so far as the question of service pertains, it does not matter whether Align has received the writ in English or only in the language of the law (Danish). However, in the present case, Align has undisputedly received the writ in both Danish and English.

<u>5 Conclusion - 3Shape's claims</u>

In conclusion, 3Shape therefore maintains:

Service must be regarded as being effected against Align in the United States, as provided for in Paragraph 163(2) of the Administration of Justice Act, as the writ, including annexes, has been received by Align.

There are no obligations under international law to prevent the Maritime and Commercial Court from considering the writ served since the United States has not opposed service by mail, as provided for in Article 10(a) of the Hague Convention.

Thus, the Maritime and Commercial Court shall decide in favor of 3Shape's main claim.

If the Maritime and Commercial Court finds that the writ has not been served on Align in the United States, 3Shape shall request that the Maritime and Commercial Court submit the subpoena, including supporting documents for service in the United States via the relevant central US authority , cf. 3Shape's subsidiary claim. In this connection, 3Shape will submit a translation of the writ subpoena for this specific purpose."

The Defendant, Align, has essentially pleaded the case in accordance with the particulars of claim of May 2018, which states, inter alia:

"<u>2 Preliminary remarks</u>

The formality procedure in the present case concerns only the question of the extent to which due service of the writ and the annex on Align has occurred.

…

<u>4 Pleas</u>

In support of the claims made, Align maintains overall that proper service of the writ has not occurred.

<u>4.1 Starting point</u>

All service in Denmark shall be effected in accordance with the rules of Paragraphs 155-162 of the Administration of Justice Act. For a company located abroad, service shall be effected "*by letter or in the manner provided for by the Convention or by the law of the country concerned*", cf. Paragraph 158

of the Administration of Justice Act. This is the provision that applies to service on Align located in California, USA.

None of these forms of service, however, have been used by 3Shape in this case since 3Shape has only delivered a package to Align via a private courier company. The fact that the receipt of the package has been acknowledged before the content of the package was known, as referred to in Annex 40 to the case, does not change this fact.

Thus, it is maintained that the form of service used by 3Shape in the present case does not honor the requirements for service by letter under Danish law or the manner prescribed by the Convention or by the law of the country in question.

As it appears in 3Shape's pleadings, 3Shape actually agrees with that view, but relies on the principle of Paragraph 163(2) of the Administration of Justice Act.

## 4.2 Specifically about the Hague Convention

Service as prescribed by the Hague Convention is set out in Article 5 thereof … Service by Convention shall therefore be effected by

1) submission to the Ministry of Justice for service under the rules of the foreign State;
2) voluntary service through a Danish embassy or consulate;
3) service by letter or
4) direct service to the official abroad in charge of service.

None of these methods of service have been initiated by 3Shape in the present case, nor has this been alleged.

3Shape, on the other hand, has made reference to the "exception" in Article 10(a) of the Hague Convention on Service. on mail service, although the last submissions from 3Shape to the court appear to indicate that it is not Article 10(a) that is invoked as such, but rather an unspecified interaction between Paragraphs 163(2) and 10(a) of the Administration of Justice Act.

However, Align maintains that the lack of reservation against Article 10(a) of the Hague Convention on Service is irrelevant. Article 10(a) is therefore not an exception, which infringes the general rules of service laid down in the Administration of Justice Act. That provision merely states that the Convention does not in itself preclude service by letter in a country of the Convention unless the country in which service is to be effected has made reservations. This is expressly reflected in the wording of Article10(a)
. That provision clearly presupposes that service by letter is, moreover,

a lawful form of service in the country from which service is effected, i.e. in the present case in Denmark. However, such a legal basis does not exist in Denmark.

3Shape's interpretation of the Hague Convention on Service would thus introduce a form of service, which is not provided for by the Administration of Justice Act, namely service involving a private party only sending a letter by mail. This appears to be a clear misinterpretation of the Convention.

Service by mail may, under the Administration of Justice Act, be effected solely with the involvement of the court, as provided for in Paragraph 3(2) of Executive Order No. 816 of 25 June 2013 on service ... Delivery by a private courier of a package – regardless of the fact that it contains a writ and an annex – from 3Shape's attorney to Align in San Jose, California, does therefore not imply service by mail.

Thus, it is disputed that, irrespective of the united States' lack of reservations against the application of Article 10(a) of the Convention, the form of service used by 3Shape complies with the manner prescribed under the Hague Convention.

## 4.3 Paragraph 163(2) of the Administration of Justice Act

The only exception to the rules laid down in Paragraphs 155-162 of the Administration of Justice Act is Paragraph 163(2) of the Administration of Justice Act. After that limited exception, service shall be regarded as having occurred in cases where it can be established that the documents to be served have been received by the recipient regardless of whether service has not been effected under (some of) the formal rules on service.

It is argued that Paragraph 163(2) of the Administration of Justice Act does not apply in the present case.

Paragraph 163(2) of the Administration of Justice Act reads *"[i]f the document to be served has been received by the recipient in question, service shall be deemed to have been effected even if service has not been effected in accordance with the rules laid down in Paragraphs 155 to 157a"* [our highlighting].
It therefore expressly reflected in the wording that that provision is only an exception to the provisions of Paragraphs 155-157a. As stated above, Align is a company situated abroad, and proper service can therefore be effected only in accordance with the rule laid down in Paragraph 158 of the Administration of Justice Act.

The exception therefore does not apply in this case, as materially supported in case law. The decision of the High Court in the case referred to in UfR 1997.896 H … expressly examines the issue and reflect the applicable law

on this issue. In the case referred to by 3Shape, UfR 2005.3302 Ø …, the question of scope of the exception is not explicitly a subject of debate, and this ruling therefore does not change this fact.

3Shape's view that Paragraph 163(2) of the Administration of Justice Act applies to the present case is therefore contrary to the wording of that provision as well as applicable case-law.

If the scope of Paragraph 163(2) of the Administration of Justice Act is to be interpreted contrary to its own crystal-clear wording, one must be able to argue that a slip was made on the part of the legislature. However, there are no indications thereof whatsoever. On the contrary, it seems to be most intentional that the provision does not include the cases governed by Paragraph 158; if Denmark allowed service pursuant to the principle in Paragraph 163(2) in these cases, there would therefore be a risk that Denmark would be in breach of its conventional obligations. For example, service that consists solely of "actual knowledge" is not covered by the Hague Convention on Service.

For said reasons, Paragraph 163(2) of the Administration of Justice Act does not apply.

3Shape is attempting to make Align's conduct appear obstructionist. It is disputed that this is the case, but, in any event, this is irrelevant to the objective legal decision of the dispute. Moreover, the fact is that the rules of the Administration of Justice Act have been carefully designed to ensure a fair process. The service rules are clear, and from the start, 3Shape could have initiated proper service according to the statutory processes instead of deliberately applying an unlawful approach based on the contemplation "if it works, it works". If 3Shape had chosen that path, service could have been done lawfully at this time. Furthermore, it seems paradoxical that 3Shape seeks to sanction a circumvention of the rules by stating that Align acted in bad faith, in light of the fact that bringing the action before the Maritime and Commercial Court is based solely on 3Shapes's attempt to obstruct ongoing processes in the United States.

## 5 Summary

Service on Align may occur solely on the basis of Paragraph 158 of the Administration of Justice Act. The exception provided for in Paragraph 163(2) of the Administration of Justice Act does not apply to cases governed by Paragraph 158 and is therefore not applicable to the present case.

Article 10(a) of the Hague Convention on Service does not provide a separate legal basis for service by simply sending a letter via a private courier service, nor is this type of service provided for in the

Administration of Justice Act.

Thus, overall, service may be effected only under Paragraph 158 of the Administration of Justice Act, which did undisputedly not occur. …"

**The Court's justification and outcome**

It is an undisputable fact that sending the writ by letter via UPS to Align is contrary to the rules of the Administration of Justice Act, nor was service effected under Paragraph 158 of the Administration of Justice Act.

The question is then only whether Paragraph 163(2) of the Administration of Justice Act applies in a situation such as the present one in which service occurs abroad.

The provision, which was last amended by Law No. 1242 of 18 December 2012 when a reference to Paragraph 157a of the Administration of Justice Act was added, does not refer to Section 158 of the Administration of Justice Act and there is no support in the preparatory work indicating that the provision is also applicable in connection with service abroad.

Notwithstanding the fact that the considerations underlying the provision of Paragraph 163(2) of the Administration of Justice Act also apply in the present case, in which Align has undisputedly received the writ, the court takes the view that the provision does not apply to service abroad and the writ can therefore not be regarded as served on Align.

Consequently, the case is adjourned pending due service of the writ.

### IT IS RULED THAT:

The case is adjourned pending due service of the writ.

Mette Skov Larsen

Published on the portal on May 29, 2018 at 10:02 AM.
Recipients: Plaintiff 3SHAPE TRIOS A/S, Attorney (H) Mikkel Vittrup,
Attorney (H) Kenneth Kvistgaard-Aaholm, Plaintiff 3SHAPE A/S, Attorney
Peter Nørgaard

Published on the portal on May 29, 2018 at 10:02 AM.
Recipients: Plaintiff 3SHAPE TRIOS A/S, Attorney (H) Mikkel Vittrup,
Attorney (H) Kenneth Kvistgaard-Aaholm, Plaintiff 3SHAPE A/S, Attorney
Peter Nørgaard



February 27, 2020

**Certification**

**Park IP Translations**

**TRANSLATOR'S DECLARATION:**

I, Sandra Bird, hereby declare:

That I possess advanced knowledge of the Danish and English (US) languages. The attached Danish into English (US) translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of: txwd-6-2019-cv-00680-00010-006

_____

Sandra Bird

Project Number: PHLL_2002_008

15 W. 37th Street 8th Floor
New York, NY 10018
212.581.8870
ParkIP.com
