```
 1                   UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF TEXAS
 2                          WACO DIVISION

 3   DENSYS, LTD              ) Docket No. WA 19-CA-680 ADA
                              )
 4   vs.                      ) Waco, Texas
                              )
 5   3SHAPE TRIOS A/S,        )
     3SHAPE A/S               ) August 31, 2020
 6

 7         TRANSCRIPT OF VIDEOCONFERENCE MARKMAN HEARING
             BEFORE THE HONORABLE ALAN D. ALBRIGHT
 8

 9   APPEARANCES:

10   For the Plaintiff:      Mr. Ronald M. Daignault
                             Mr. Oded Burger
11                           Goldberg Segalla, LLP
                             711 Third Avenue, Suite 1900
12                           New York, New York 10017

13

14   For the Defendant:      Mr. William D. Belanger
                             Mr. Frank Liu
15                           Troutman, Pepper, Hamilton,
                             Sanders, LLP
16                           125 High Street,
                             High Street Tower, 19th Floor
17                           Boston, Massachusetts 02110

18

19                           Mr. Goutam Patnaik
                             Troutman, Pepper, Hamilton,
20                           Sanders, LLP
                             2000 K Street NW, Suite 600
21                           Washington, D.C. 20006

22

23

24

25
```

1   **(Appearances Continued:)**

2   For the Defendant:          Mr. Massimo Ciccarelli
                                Thompson & Knight, LLP
3                               1722 Routh Street, Suite 1500
                                Dallas, Texas 75201

4

5   Court Reporter:             Ms. Lily Iva Reznik, CRR, RMR
                                501 West 5th Street, Suite 4153
6                               Austin, Texas 78701
                                (512)391-8792

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings reported by computerized stenography,
    transcript produced by computer-aided transcription.

| | | |
|---|---|---|
| 09:11:15 | 1 | THE COURT:  Good morning, everyone.  I'm sorry |
| 09:11:16 | 2 | I'm late. |
| 09:11:17 | 3 | Suzanne, would you be so kind as to call the |
| 09:11:19 | 4 | case, please. |
| 09:11:20 | 5 | THE CLERK:  Sure. |
| 09:11:22 | 6 | Markman hearing in Civil Action 6:19-CV-680, |
| 09:11:25 | 7 | styled, Densys, Limited vs. 3Shape Trios A/S and 3Shape |
| 09:11:31 | 8 | A/S. |
| 09:11:32 | 9 | THE COURT:  And if I could -- good morning. |
| 09:11:34 | 10 | If I could hear from counsel of record, please. |
| 09:11:37 | 11 | And I'm going to -- while you're announcing on the record, |
| 09:11:39 | 12 | I'm going to run back to my desk and grab a pen.  I'm not |
| 09:11:42 | 13 | leaving you.  So if I could hear from plaintiff's counsel |
| 09:11:45 | 14 | first. |
| 09:11:48 | 15 | MR. BURGER:  Good morning, your Honor. |
| 09:11:49 | 16 | My name is Oded Burger.  I'm from the New York |
| 09:11:52 | 17 | City office of Goldberg Segalla, and I represent the |
| 09:11:54 | 18 | plaintiff.  Today with me is Ron Daignault, and he's also |
| 09:12:00 | 19 | from the New York City office of Goldberg Segalla. |
| 09:12:01 | 20 | THE COURT:  Okay.  Very good. |
| 09:12:02 | 21 | And will you be the primary speaker, both of you? |
| 09:12:05 | 22 | MR. BURGER:  Yes, your Honor.  I think Ron may |
| 09:12:09 | 23 | chime in, but I'll be doing the primary argument. |
| 09:12:13 | 24 | THE COURT:  Very good. |
| 09:12:14 | 25 | And if I could hear from counsel for the |

| | | |
|---|---|---|
| 09:12:16 | 1 | defendant. |
| 09:12:19 | 2 | MR. CICCARELLI:  Good morning, your Honor. |
| 09:12:19 | 3 | This is Max Ciccarelli for 3Shape.  As is |
| 09:12:24 | 4 | customary for me, I'll let other people that are more |
| 09:12:26 | 5 | intelligent than me do the speaking.  And today, it's |
| 09:12:28 | 6 | going to be lead counsel Bill Belanger, Frank Liu and |
| 09:12:33 | 7 | Goutam Patnaik.  And we also have a client representative |
| 09:12:36 | 8 | on the Zoom call, and I'll let Mr. Patnaik introduce him. |
| 09:12:46 | 9 | THE COURT:  Mr. Patnaik, you're on mute. |
| 09:12:48 | 10 | MR. PATNAIK:  Sorry.  I got it.  Sorry about |
| 09:12:50 | 11 | that. |
| 09:12:50 | 12 | I just wanted to introduce our two client |
| 09:12:52 | 13 | representatives.  It's from our litigation department |
| 09:12:55 | 14 | within 3Shape.  We have Thomas Kirkbak and we have Mads |
| 09:13:00 | 15 | Demenikov.  They were both extremely interested in the |
| 09:13:01 | 16 | Markman process in U.S. litigation, and being in Denmark, |
| 09:13:05 | 17 | the Zoom gives us a nice opportunity for them to |
| 09:13:08 | 18 | participate. |
| 09:13:08 | 19 | THE COURT:  Well, I hope we don't disappoint |
| 09:13:13 | 20 | them.  I hope I get a decent Zoom review or, you know, |
| 09:13:16 | 21 | Yelp review.  It will be my first international Yelp |
| 09:13:19 | 22 | review.  This will be a good thing.  So let me thank them |
| 09:13:23 | 23 | for attending. |
| 09:13:24 | 24 | I always try and make it a point to thank inhouse |
| 09:13:29 | 25 | attorneys and anyone who's from inhouse for taking the |

09:13:32  1  time to attend.  I think it's important folks see the

09:13:37  2  judicial process and see their lawyers and see -- frankly,

09:13:40  3  see how I handle my docket, as well.  So I think it's a

09:13:44  4  very good thing that they're on the call.  I appreciate it

09:13:46  5  very much.

09:13:47  6       So let's turn to typically the way I do my

09:13:52  7  Markmans, if you all have not had one in front of me yet,

09:13:55  8  especially since I've been giving preliminary

09:13:58  9  constructions is, I start with the plaintiff.  I ask the

09:14:01  10 plaintiff on each proposed claim term their position with

09:14:05  11 respect to the Court's proposed or preliminary claim

09:14:10  12 construction.  If the plaintiff says that they are -- they

09:14:16  13 find the proposal acceptable, then I move immediately to

09:14:20  14 the defendants to hear from them.  If the plaintiff says

09:14:23  15 that they would like to have -- help me fix or amend my

09:14:30  16 proposal, then I let them go first, and I typically allow

09:14:34  17 defendants then to go second.

09:14:36  18      So starting with the claim construction from the

09:14:40  19 707 patent of, quote, an intra-oral fixed global

09:14:47  20 registration position inside the oral cavity, I would ask

09:14:50  21 plaintiff's counsel what your position is with respect to

09:14:54  22 the Court's preliminary construction, which is, quote, a

09:14:59  23 fixed position inside the oral cavity that is used as a

09:15:03  24 reference point for relating multiple sets of

09:15:07  25 three-dimensional data to a fixed global reference

| | | |
|---|---|---|
| 09:15:10 | 1 | coordinate system. |
| 09:15:13 | 2 | If the plaintiff -- I'll ask the plaintiff first. |
| 09:15:16 | 3 | MR. BURGER:  Your Honor, for the plaintiff, we |
| 09:15:19 | 4 | agree with the Court's construction. |
| 09:15:21 | 5 | THE COURT:  Okay.  Then I'll hear from the |
| 09:15:23 | 6 | defendants, please. |
| 09:15:26 | 7 | MR. BELANGER:  Thank you, your Honor. |
| 09:15:29 | 8 | And, your Honor, I think the issues regarding |
| 09:15:33 | 9 | this -- the construction of this term are simpler in terms |
| 09:15:37 | 10 | of the issues regarding the first maybe four terms for |
| 09:15:43 | 11 | construction. |
| 09:15:44 | 12 | And so, with your Honor's indulgence, I'd like to |
| 09:15:48 | 13 | give some background as to why we think the definition of |
| 09:15:54 | 14 | intra-oral fixed global registration position should |
| 09:15:58 | 15 | include a sequence for timing as to when that position is |
| 09:16:01 | 16 | fixed because we think that is the whole -- what the |
| 09:16:05 | 17 | patentee described as a point of novelty and what |
| 09:16:09 | 18 | plaintiffs themselves in their tutorial described as a |
| 09:16:13 | 19 | point of novelty. |
| 09:16:13 | 20 | So if that would be acceptable for me to start |
| 09:16:15 | 21 | with that background. |
| 09:16:15 | 22 | THE COURT:  You can do whatever you'd like. |
| 09:16:17 | 23 | MR. BELANGER:  Thank you, your Honor. |
| 09:16:19 | 24 | So I'd like to first start with slide 5, Jim. |
| 09:16:28 | 25 | MR. BURGER:  Your Honor, I apologize for |

```
09:16:29   1   interjecting.  I'm going to have an objection to some of

09:16:32   2   the slides.  And so, maybe before we proceed with the

09:16:37   3   slides, there are a number of slides that have taken

09:16:44   4   screen shots from the plaintiff's technology tutorial, and

09:16:48   5   my understanding is that that's not supposed to be a part

09:16:52   6   of the record, according to the Court's rules.

09:16:55   7            And so, we would object to slides 12 through 15

09:17:01   8   and 36 and 37 for that reason.  So I apologize --

09:17:06   9            THE COURT:  Well.

09:17:08   10           MR. BURGER:  -- for not mentioning that when it

09:17:09   11  was my turn to speak.

09:17:10   12           THE COURT:  That's okay.  Let me see how the

09:17:13   13  defendant uses them, and then, I'll figure out whether I

09:17:15   14  want to allow them to be made part of the record.  I

09:17:17   15  understand your objection and let me just see what is used

09:17:23   16  -- what they're used for, okay?  And I may wind up

09:17:26   17  granting your objection.  I appreciate you giving me a

09:17:29   18  heads up.  But I'll hear from counsel and I'll need to see

09:17:32   19  the slides so I can make that decision.

09:17:36   20           MR. BELANGER:  Thank you, your Honor.

09:17:36   21           And just -- well, I'll proceed with the argument

09:17:42   22  and can discuss that when I get to the slides.  Actually,

09:17:46   23  if you'll turn to slide 6, Jim.

09:17:49   24           Your Honor, in terms of what this patent is

09:17:52   25  directed to, to orient the Court, this is a statement from
```

09:17:58  1   the background of the patent, a description from the prior
09:18:01  2   art.  The concept of having a local coordinate space
09:18:06  3   within global coordinate space is simply a observation of
09:18:11  4   well-known mathematical concept.
09:18:13  5       And so, when the patent claim describes both
09:18:19  6   local coordinate space and a global coordinate space, by
09:18:22  7   definition the local coordinates are within the global
09:18:26  8   coordinate space, and that is simply an observation of the
09:18:30  9   mathematical relationship between physical objects.
09:18:34  10      We go to the next slide.  So this is figure 1 of
09:18:41  11  the patent.  And just to ground the Court in these
09:18:46  12  different terms and why we think they need to be related
09:18:50  13  in a particular way, the patent in the claims describe a
09:18:53  14  global coordinate space, which is simply the space which
09:18:57  15  -- within which a patient might be found.  The claims then
09:19:02  16  in the specification describe this fixed global reference
09:19:06  17  coordinate system, which is not simply points in space,
09:19:13  18  but it is a coordinate system that is fixed from which
09:19:17  19  relevant measurements can be made.  And there's also a
09:19:20  20  discussion of global reference coordinate systems, which
09:19:24  21  are essentially subsets of this fixed global reference
09:19:30  22  coordinate systems.
09:19:30  23      Go to the next slide, Jim.  Actually, go to slide
09:19:37  24  8.  Or slide 9, excuse me.  So in the patent, the
09:19:42  25  left-hand column, your Honor, this is an excerpt from the

09:19:45  1    background of the patent.  There's several prior art

09:19:49  2    techniques that are described in the background of the

09:19:51  3    patent.  This is one of them.  And there are generally two

09:19:54  4    types of prior art that the patentee distinguished over in

09:19:56  5    the background.

09:19:57  6             One type, you would have a reference point which

09:20:01  7    is outside the oral cavity, and it's not really relevant

09:20:05  8    to the dispute.  But the second type of prior art which is

09:20:09  9    discussed, and I believe is relevant to the construction

09:20:11  10   of this term, is a series of prior art references that

09:20:15  11   disclose the use of reference points within a local

09:20:20  12   coordinate space or within the field of view.  So this is

09:20:22  13   one piece of prior art that the patentee distinguished

09:20:25  14   over, and this shows camera 5 and it shows the reference

09:20:28  15   points 6, and they are within the field of view of the

09:20:34  16   camera 5.

09:20:35  17            And so, what the patentee acknowledges was known

09:20:38  18   in the art is the use of these reference points to

09:20:41  19   register and merge together multiple images or multiple

09:20:48  20   three-dimensional images that are taken from different

09:20:50  21   fields of view of the oral cavity.  So this is

09:20:53  22   acknowledged as known in the prior art.

09:20:56  23            If you go to the prior slide, slide 8.  What the

09:21:01  24   patentee goes on to describe and is a purported problem

09:21:04  25   with this approach where if the measuring and imaging data

09:21:09  1  is captured first and then, merely stitched together by an

09:21:13  2  analysis of the individual images, there's measurement

09:21:18  3  error and propagation error introduced.  And so, this is

09:21:22  4  identified as one of the problems with those types of

09:21:24  5  prior art systems which do not have or do not start with

09:21:29  6  the fixed global reference point; rather, they use

09:21:32  7  reference points that are fixed in a local coordinate

09:21:36  8  space within the field of view.

09:21:37  9       And so, analyzing individual three-dimensional

09:21:40  10  images, according to the patentee in the background, and

09:21:43  11  simply stitching together or matching up those individual

09:21:48  12  three-dimensional images leads to various problems that

09:21:52  13  are identified.  And so, if we go to slide 10, Jim.  So in

09:22:01  14  order to allegedly overcome this problem, what the

09:22:03  15  patentee describes in the preferred embodiment is the use

09:22:08  16  of a fixed global reference point.

09:22:12  17       In this example, that's item 28.  And again, in

09:22:16  18  an example that's shown as the origin of the fixed global

09:22:22  19  coordinate system, that's Z sub G, O sub G, Y sub G.  So

09:22:26  20  that sub G is global, and item 28 is a fixed point.  And

09:22:30  21  the preferred embodiment, again, there's a device that's

09:22:34  22  attached to the patient's mouth that's fixed.  And then,

09:22:38  23  as far as distinguishing over the prior art, this allows

09:22:41  24  the measuring and imaging device to take all the

09:22:47  25  subsequent images and measurements with respect to that

09:22:50    1    fixed point.

09:22:51    2           So rather than having to later stitch together or

09:22:55    3    piece together various images that are taken from

09:22:58    4    different fields of view, without reference to the global

09:23:02    5    coordinate system, what the patentee describes is starting

09:23:05    6    with a fixed global coordinate system with a fixed initial

09:23:10    7    reference point, and then, taking all the subsequent

09:23:14    8    images and measurements with respect to that fixed point

09:23:18    9    within a global coordinate space.

09:23:22   10           If we go to the next slide.  So this is, again,

09:23:28   11    what the patentee describes as their invention.  So

09:23:33   12    contrary to some cases, your Honor, where this is simply a

09:23:39   13    description of a preferred embodiment, then this is what

09:23:42   14    the patentee describes as the novel aspects of their

09:23:45   15    invention.  The key to their invention is that by fixing

09:23:51   16    that global reference coordinate and having a fixed global

09:23:55   17    coordinate space, that enables the real time and

09:23:58   18    discontinuous acquisition of measurements and images.

09:24:03   19           So by having that reference point 28, if an image

09:24:07   20    is taken within, in this example, a field of view which

09:24:10   21    does not include that fixed reference point, the system is

09:24:15   22    able to determine the physical location of that

09:24:21   23    measurement within this global coordinate space; and

09:24:24   24    that's in contrast, according to the applicant to the

09:24:28   25    prior art where the reference point would need to begin

09:24:30  1   that local field of view and could not be outside of the

09:24:34  2   field of view.  And this is -- again, allegedly eliminates

09:24:40  3   the propagation errors and any other problem of taking

09:24:44  4   disparate images and stitching them together to create a

09:24:47  5   three-dimensional object.

09:24:47  6          If we can go to the next slide, Jim.  So this is

09:24:52  7   the slide --

09:24:54  8          MR. BURGER:  This is the slide that I would

09:24:55  9   object to, your Honor.

09:24:56  10         MR. BELANGER:  I don't intend to introduce this

09:24:58  11  as evidence, your Honor.  This is merely illustrative of

09:25:01  12  what we think is the dispute.  And as your Honor saw from

09:25:04  13  the briefing, we believe that a sequence and an order is

09:25:08  14  required by the claims when read in view of the

09:25:11  15  specification and what the patentee described as its

09:25:14  16  invention.

09:25:16  17         But we think another issue which is raised by the

09:25:20  18  briefing is that the plaintiff, in certain instances,

09:25:25  19  agree that a sequence is required by the claims and in

09:25:32  20  other examples, disagree.  So what we want from the

09:25:33  21  Markman process is a clear understanding as to whether

09:25:36  22  there is a sequence required or there's no sequence

09:25:40  23  required.  If there's no sequence required, that would

09:25:42  24  open up a large field of prior art whereas if a sequence

09:25:45  25  is required, we believe that comports with the proposed

09:25:50  1  constructions and is different than the Court's

09:25:53  2  preliminary constructions for the reasons I'll try to

09:25:56  3  explain.

09:25:56  4         So this is an analogy that plaintiffs included in

09:26:00  5  their tech tutorial.  I think it's just helpful for

09:26:04  6  understanding what the crux of this is.  In this example,

09:26:08  7  taking a picture of the Austin courthouse by taking a

09:26:12  8  series of images, which are then, according to the

09:26:17  9  plaintiff, stitched together in a traditional manner by

09:26:21  10  analyzing each of the images and seeing how they fit

09:26:24  11  together.  Think of this as you're putting together a

09:26:27  12  jigsaw puzzle, and if you don't know ahead of time where

09:26:30  13  the pieces go, you need to do some analysis of the jigsaw

09:26:34  14  puzzle pieces in order to fit them together.

09:26:37  15         If you go to the next slide.  What the plaintiff

09:26:43  16  has said is the alleged novel aspect of the invention or

09:26:48  17  the central insight is to establish a fixed reference

09:26:53  18  point so that each time you take an image or you take a

09:26:57  19  measurement, you know where it goes in relation to other

09:27:00  20  points.

09:27:00  21         So in this example, they show you're taking one

09:27:03  22  picture of the Austin courthouse with respect to the top

09:27:07  23  of the roof.  They put a red dot there.  And by knowing

09:27:09  24  that where that red dot is before you take the pictures,

09:27:11  25  you can more easily piece them together.

09:27:19  1          If we could go to the next slide.  So this is,
09:27:21  2   again, from the tutorial images showing that what I think
09:27:28  3   is consistent with the background, what the patentee
09:27:29  4   describes as their invention, is establishing this
09:27:31  5   reference point so that the measurement for distance or
09:27:36  6   the location of the measurement could be determined with
09:27:39  7   respect to that reference point.
09:27:41  8          Go to the next slide.  Without any sequence, your
09:27:45  9   Honor, using that same example, the claims would be on
09:27:48  10  this admitted prior art approach where you're taking a
09:27:51  11  series of images, stitching them together and then, at
09:27:56  12  some later point in time, randomly assigning a reference
09:27:59  13  point, which then can be measured with respect to
09:28:04  14  individual images.
09:28:05  15         So in this analogy, if I took a panoramic view of
09:28:10  16  the courthouse, I analyze each image, fit the puzzle
09:28:14  17  pieces together in a way that is described as the
09:28:16  18  background of the prior art, I could then, at a later
09:28:19  19  point in time, simply identify the top of the courthouse
09:28:23  20  as a fixed global reference point, and it will be trivial
09:28:27  21  to measure how far each of the individual images were from
09:28:30  22  that point.  We don't believe that that is what the
09:28:35  23  patentee described as their invention.  And so, we think
09:28:38  24  the claims should be limited such that the reference point
09:28:41  25  is identified first, and the images are captured second.

09:28:45   1       However, we would respectfully submit that the

09:28:48   2  Court's construction should clarify this point so that

09:28:52   3  when we're evaluating prior art, it's either the claims

09:28:55   4  should be read in sequence, as we propose, or if there is

09:28:58   5  no sequence, the acknowledged prior art in many other

09:29:03   6  references would be covered because you're simply able to,

09:29:06   7  at any point in time, identify a fixed reference point

09:29:09   8  with respect to individually captured three-dimensional

09:29:13   9  images.

09:29:15  10       If we go to the next slide, please.  So this --

09:29:21  11  actually, in the interest of time, I'll skip ahead.  If we

09:29:23  12  can go to slide 20.  This is, again, consistent with the

09:29:31  13  example given in the tutorial.  This is an example from

09:29:34  14  plaintiff's expert's deposition where he explains the

09:29:38  15  importance of this fixed reference point and having it

09:29:42  16  fixed before the beginning of the imaging and measuring

09:29:46  17  process.  He described this as an analogy to a drone with

09:29:50  18  a base station that once you fix the base station, it's

09:29:51  19  fixed for the entire measuring and imaging mission so that

09:29:55  20  you always know where the drone is with respect to the

09:29:59  21  base station.

09:29:59  22       If the claims are read without that sequence,

09:30:04  23  then that would open up a situation where you could simply

09:30:09  24  later piece together where the drone happened to be with

09:30:12  25  respect to the base station.  But the base station could

09:30:14  1   be any random place, not a fixed place.

09:30:20  2            We can go to the next slide.  And this is just to

09:30:23  3   highlight the point further, your Honor.  This is from

09:30:25  4   plaintiff's reply brief where lawyer -- preliminary

09:30:29  5   construction says no sequence is required by the claims.

09:30:32  6   The plaintiff themselves argue for a sequence where the

09:30:37  7   acquisition step does not have to happen before the fixing

09:30:41  8   of the global registration position.  However, they argue

09:30:45  9   that the later steps do require a consequence and require

09:30:50  10  that the global -- require the prior establishment of a

09:30:55  11  global reference position.

09:30:56  12           If I could go to slide 23.  So the way we've

09:31:07  13  attempted to capture this in our proposed construction

09:31:10  14  and, I think, really the only difference in phrasing

09:31:13  15  between your preliminary construction and our proposed

09:31:19  16  construction is that the intra-oral fixed global

09:31:24  17  registration position is fixed prior to the measuring and

09:31:26  18  imaging.  We believe that this is what the patentee

09:31:29  19  described as their invention, the patentee argued in the

09:31:32  20  background to distinguish over, acknowledged prior art.

09:31:36  21           And so, that's why we think it's appropriate to

09:31:39  22  say that this is -- to define in terms of claim

09:31:44  23  construction when this point must be fixed.  Must it be

09:31:48  24  fixed before the imaging and measuring operation, or can

09:31:50  25  it simply be fixed at any later random point?

| | | |
|---|---|---|
| 09:31:54 | 1 | If I could go to slide -- the next slide, Jim. |
| 09:31:56 | 2 | So where this comes into most stark contrast, your Honor, |
| 09:32:09 | 3 | is with respect to claim 37.  So with respect to claim 37, |
| 09:32:14 | 4 | you've got step (b), which uses the term "the measuring |
| 09:32:20 | 5 | and imaging device for measuring and imaging the |
| 09:32:24 | 6 | intra-oral objects, relative to same said intra-oral fixed |
| 09:32:28 | 7 | global registration position."  And then, you have the |
| 09:32:30 | 8 | second step (c) which talks about the registration device, |
| 09:32:34 | 9 | relative to said same intra-oral fixed global registration |
| 09:32:38 | 10 | position. |
| 09:32:39 | 11 | So as we understand it, plaintiff has a -- |
| 09:32:41 | 12 | MR. BURGER:  Your Honor, I'll object that the |
| 09:32:44 | 13 | claim was not read properly. |
| 09:32:50 | 14 | MR. BELANGER:  I am trying to do my best.  If I |
| 09:32:52 | 15 | left out -- |
| 09:32:52 | 16 | MR. BURGER:  I apologize.  You've left out some |
| 09:32:54 | 17 | words and I do believe that they're relevant.  So I |
| 09:32:58 | 18 | thought it's important for the record to raise that |
| 09:33:00 | 19 | objection. |
| 09:33:01 | 20 | THE COURT:  Okay. |
| 09:33:03 | 21 | MR. BELANGER:  The claim as on the screen or are |
| 09:33:06 | 22 | you saying that the screen is not accurate? |
| 09:33:07 | 23 | MR. BURGER:  No, no.  Just what you were reading |
| 09:33:09 | 24 | out loud omitted some words.  And so, I want to make sure |
| 09:33:13 | 25 | that the transcript is accurate. |

09:33:16   1          MR. BELANGER:  So the -- let me just back up and
09:33:20   2   try to make that point clearly, your Honor.
09:33:23   3          There are two steps in claim 37.  Both steps (b)
09:33:28   4   and (c) use the identical phrase "relative to same said
09:33:33   5   intra-oral fixed global registration position."  Plaintiff
09:33:38   6   and their expert and in the briefing admit that in step
09:33:43   7   (c), relative to same said intra-oral fixed global
09:33:47   8   registration position requires that the intra-oral fixed
09:33:51   9   global registration position be fixed in advance of for
09:33:58  10   step (c), recording global positions and orientations of
09:34:03  11   said measuring and imaging device.
09:34:07  12          We believe for consistency, therefore, step (b)
09:34:09  13   should, likewise, be read that the measuring and imaging
09:34:13  14   device for measuring and imaging the intra-oral objects
09:34:17  15   and features located in the oral cavity relative to same
09:34:20  16   said intra-oral fixed global registration position
09:34:23  17   requires that the measuring and imaging happen after the
09:34:28  18   establishment of the intra-oral fixed global registration
09:34:33  19   position.  So this identical language is used in both.
09:34:36  20          Plaintiffs had argued that use of that language
09:34:38  21   requires a sequence, and the sequence that is required is
09:34:41  22   first establishing said intra-oral fixed global
09:34:45  23   registration position prior to doing the measurement step.
09:34:51  24   And so, we believe that same interpretation should apply
09:34:53  25   for both.  And therefore, for step (b), the intra-oral

| | | |
|---|---|---|
| 09:34:56 | 1 | fixed global registration must be fixed before the |
| 09:35:01 | 2 | measuring and imaging of the features in the oral cavity. |
| 09:35:09 | 3 | Go to the next slide, Jim.  And this is |
| 09:35:16 | 4 | consistent, your Honor, with claim 1, as well, the |
| 09:35:21 | 5 | phrasing in the claim, and is consistent with what the |
| 09:35:23 | 6 | patentee -- this is on the right-hand side of slide 25 |
| 09:35:26 | 7 | where the patent describes their invention, which is the |
| 09:35:32 | 8 | identification of this fixed global registration point in |
| 09:35:35 | 9 | advance of the imaging and measuring steps. |
| 09:35:41 | 10 | So with that, I would defer to plaintiff's |
| 09:35:45 | 11 | counsel and unless your Honor has any questions or |
| 09:35:50 | 12 | anything that you would like me to clarify. |
| 09:35:52 | 13 | THE COURT:  Hold on one second. |
| 09:39:01 | 14 | Gentlemen, thank you for the -- whoops. |
| 09:39:06 | 15 | Gentlemen, thank you for the opportunity.  I discussed it |
| 09:39:11 | 16 | with my clerks, who helped me prepare the preliminary |
| 09:39:18 | 17 | claim constructions.  The Court is going to maintain its |
| 09:39:21 | 18 | construction of this claim term as "a fixed position |
| 09:39:25 | 19 | inside the oral cavity that is used as a reference point |
| 09:39:28 | 20 | for relating multiple sets of three-dimensional data to a |
| 09:39:33 | 21 | fixed global reference coordinate system." |
| 09:39:36 | 22 | I'll go ahead and put on the record that the |
| 09:39:39 | 23 | Court finds that there is no requirement in the claim for |
| 09:39:44 | 24 | a fixed position being defined inside the oral cavity |
| 09:39:47 | 25 | prior to measuring and imaging.  And in fact, the Court |

09:39:51  1   will go further, if it's helpful to you all on other claim

09:39:55  2   terms we're going to take up, to say that the Court is not

09:40:00  3   going to find that the claims require any sequencing, if

09:40:04  4   that helps with other arguments that are going to come

09:40:08  5   about.

09:40:09  6          The next claim term I have to take up is from the

09:40:15  7   707 patent claim, quote, a fixed global reference

09:40:21  8   coordinate system.  The Court's construction is plain and

09:40:27  9   ordinary meaning wherein the plain and ordinary meaning is

09:40:30  10  a reference system used to define the locations of objects

09:40:37  11  in the inter-oral -- and that is "inter" because I noticed

09:40:42  12  that we have "inter" and "intra" occasionally.  I want to

09:40:44  13  make sure that I state correctly on the record -- objects

09:40:47  14  in the inter-oral cavity and whose origin point is fixed

09:40:52  15  at a single location within the inter-oral cavity.

09:40:57  16          I'll hear first from the plaintiff.  I know the

09:41:00  17  plaintiff submitted a proposed construction of plain and

09:41:03  18  ordinary meaning, but I want to find out whether or not

09:41:05  19  the Court's explanation of what a plain and ordinary

09:41:11  20  meaning should be is acceptable with plaintiff's counsel.

09:41:15  21          MR. BURGER:  Your Honor, for the plaintiff, we

09:41:19  22  agree with the Court's construction.  And in fact, we

09:41:21  23  submitted slides that demonstrate the support in the

09:41:28  24  specification that supports the Court's preliminary

09:41:32  25  construction.

09:41:32  1          THE COURT:  Thank you very much.

09:41:34  2          With regard to defendant, I'll hear from you with
09:41:36  3   respect to any suggestions you have with what the Court
09:41:40  4   could do to improve or amend what it has proposed, or
09:41:45  5   whether or not you just agree with it as it is.

09:41:48  6          MR. BELANGER:  I think, your Honor, consistent
09:41:50  7   with your -- the comment you just made, the primary issue
09:41:55  8   we have with the Court's proposed construction is clarity
09:42:00  9   on when the origin needs to be fixed.  And our --
09:42:04 10   respectfully, our belief is, it should be fixed prior to
09:42:08 11   the measuring and imaging.  But if the Court's ruling is,
09:42:10 12   it could be fixed at any time, there's no requirement of
09:42:13 13   timing, we would understand that.  We just want clarity as
09:42:19 14   to that.

09:42:19 15          THE COURT:  You have that clarity and you also --
09:42:22 16   and by the way, let me make absolutely clear on the
09:42:25 17   record.  If you disagreed with my constructions, I
09:42:32 18   absolutely want you -- to make sure you keep that on the
09:42:34 19   record, I want -- I absolutely want to protect your
09:42:37 20   record.  I'm -- I can do anything I want: that doesn't
09:42:43 21   mean I'm always right when I'm doing it at this time.  So
09:42:46 22   I'm doing the best I can.  Doesn't mean I'm absolutely
09:42:49 23   right.

09:42:50 24          However, so if the way the Court is going to take
09:42:55 25   what you said is that you would -- and I'll add in there

| | |
|---|---|
| 09:43:01 | 1 |

the word "respectfully disagree" with what I've said -- I
had a lawyer last week that gave me a grade of zero on one
of my claim constructions, so at least he didn't say that.

       But I'm going to note for the record that you
disagree with the Court's decision that the claim does not
require any sequence, and you have that concern and
objection to the Court's proposal for what my plain and
ordinary meaning is.

       Does the defendant have any other construction
they'd like -- I'm sorry, objection they'd like to raise?

       MR. BELANGER:  No.  Not other than the sequencing
point that we've raised already, your Honor.

       THE COURT:  Okay.  Well, then, with your consent,
I would probably move on to the next -- unless you have
something you want to add, I would move on to the next
claim term.

       MR. BELANGER:  That's fine, your Honor.

       THE COURT:  Okay.  The next claim term is -- and
again, to make clear on the record because I don't know if
I said this out loud.  Then the Court is going to adopt
and make permanent what I just read into the record as the
proposed construction for the claim term "a fixed global
reference coordinate system," noting the defendants'
objections with respect to their belief that it does
require sequence and the Court's determination it does

09:44:17    1    not.

09:44:18    2           The next claim term is from the 707 patent claim

09:44:23    3    1.  The claim term is "a measuring and imaging device for

09:44:29    4    measuring and imaging the intra" -- that's I-N-T-R-A --

09:44:35    5    "intra-oral objects and features."  The Court's

09:44:38    6    construction and determination is that it is not subject

09:44:42    7    to Section 112, paragraph 6, and that it should have its

09:44:47    8    plain and ordinary meaning.

09:44:47    9           I'll hear first from the plaintiff.  I assume

09:44:51   10    because that was your proposal, as well, that you are okay

09:44:56   11    with the Court's.  But I'll hear from you on the record.

09:44:58   12           MR. BURGER:  That's correct, your Honor.  Thank

09:45:00   13    you.

09:45:00   14           THE COURT:  Okay.  Now I'll hear from defendant

09:45:04   15    who believe that it was subject to Section 112, paragraph

09:45:09   16    6, and/or is indefinite.  I'll hear from the defendant

09:45:14   17    with respect to the Court's determination and preliminary

09:45:16   18    construction.

09:45:17   19           MR. BELANGER:  Thank you, your Honor.

09:45:19   20           Mr. Liu is going to take that term.  But just one

09:45:23   21    clarification.

09:45:24   22           THE COURT:  Yes, sir.

09:45:24   23           MR. BELANGER:  Regarding the difference between

09:45:26   24    inter and intra-oral.  I know you noted that there's a

09:45:30   25    difference, but it wasn't clear to us that that was --

09:45:36    1              LAW CLERK:  That was my mistake.  It's probably

09:45:39    2    supposed to be intra-oral.

09:45:39    3              THE COURT:  Okay.

09:45:39    4              LAW CLERK:  Yeah.  So that's my mistake.

09:45:39    5              THE COURT:  Yeah.  I may be -- I may have

09:45:44    6    mistaken on what I'm reading here.  If I'm misreading it,

09:45:47    7    let me know.  That's why I was trying to pick it up.

09:45:49    8    There may be a mistake in what I have typed here.  Let's

09:46:02    9    make sure that I have down what the appropriate -- what

09:46:05   10    the correct language is.

09:46:11   11              MR. BELANGER:  So, your Honor, the claim language

09:46:14   12    itself is I-N-T-R-A, intra.  And I believe your

09:46:20   13    preliminary uses an E, instead of an A.  And so, I think

09:46:24   14    if we just replaced I-N-T-E-R with I-N-T-R-A, that would

09:46:30   15    comport with the claim language.

09:46:31   16              THE COURT:  Okay.  Very good.  Thank you for

09:46:33   17    bringing that to my attention.

09:46:34   18              MR. BELANGER:  Thank you, your Honor.  And Mr.

09:46:37   19    Liu will address the next term.

09:46:38   20              THE COURT:  Okay.  Thank you.  Thank you very

09:46:40   21    much.

09:46:41   22              MR. LIU:  Good morning, your Honor.

09:46:42   23              THE COURT:  Good morning.

09:46:45   24              MR. LIU:  Frank Liu on behalf of the 3Shape

09:46:48   25    Defendants.

| | | |
|---|---|---|
| 09:46:49 | 1 | I'll be addressing -- |
| 09:46:49 | 2 | THE COURT:  I don't think I've had you in my |
| 09:46:51 | 3 | court before.  Welcome.  I'm glad to have you. |
| 09:46:54 | 4 | MR. LIU:  Thank you, your Honor. |
| 09:46:55 | 5 | I'll be addressing the measuring and imaging |
| 09:46:57 | 6 | device limitation. |
| 09:46:58 | 7 | THE COURT:  Okay. |
| 09:46:59 | 8 | MR. LIU:  We believe the term "measuring and |
| 09:47:02 | 9 | imaging device" is one that's subject to 112, paragraph 6, |
| 09:47:05 | 10 | under prevailing Federal Circuit case law.  And under 112, |
| 09:47:10 | 11 | paragraph 6, construction, we believe the specification |
| 09:47:12 | 12 | fails to provide an adequate disclosure of the |
| 09:47:16 | 13 | corresponding structure for the measuring and imaging |
| 09:47:20 | 14 | device, which would render the claim term indefinite. |
| 09:47:22 | 15 | I plan to address the threshold question of |
| 09:47:26 | 16 | measuring and imaging -- of whether the measuring and |
| 09:47:28 | 17 | imaging device is subject to 112, paragraph 6, first |
| 09:47:31 | 18 | unless the Court would like me to address any other |
| 09:47:34 | 19 | particular issues with respect to this term. |
| 09:47:46 | 20 | Jim, can you pull up slide 46?  I think it's |
| 09:47:57 | 21 | helpful to review the standard governing the construction |
| 09:48:01 | 22 | under 112, paragraph 6.  The recent Federal Circuit case |
| 09:48:06 | 23 | law confirms that the test for determining whether a term |
| 09:48:10 | 24 | is subject to 112, paragraph 6, is whether the claim term |
| 09:48:14 | 25 | connotes sufficiently definite structure.  So if the claim |

09:48:17   1   term fails to connote sufficiently definite structure,

09:48:21   2   then you need to identify the corresponding structure in

09:48:24   3   the specification for performing that claim function.

09:48:28   4            The Federal Circuit in the MTD Products vs. Iancu

09:48:34   5   case, which was --

09:48:34   6            THE COURT:  Mr. Liu.

09:48:36   7            MR. LIU:  Yes.

09:48:41   8            THE COURT:  I found after two years now -- I'll

09:48:43   9   just go ahead and state on the record.  I'm sure two years

09:48:44  10   ago, my patience would have been much greater, but I'll

09:48:48  11   tell you that I'm pretty current on this law.  I deal with

09:48:55  12   this probably about four times a month at these Markmans.

09:48:59  13   So I don't mean to sound offensive but I'm -- my clerks

09:49:05  14   and I are really current on this, so you can probably

09:49:07  15   skip -- skip the case citations.

09:49:11  16            MR. LIU:  Okay.  Thank you, your Honor.

09:49:13  17            And I think just the most important point from

09:49:16  18   the MTD Products vs. Iancu case is that there's two

09:49:21  19   separate steps, and what it makes clear is that you can't

09:49:24  20   just go to the specification and point to some structure

09:49:27  21   and say 112, paragraph 6, applies.  And I think that's the

09:49:30  22   relevant dispute here.

09:49:32  23            We think that Densys in their briefing and

09:49:35  24   argument is going straight to the specification,

09:49:38  25   identifying some structure that purports to correspond to

09:49:42  1  the measuring and imaging device and saying that's

09:49:47  2  sufficient to defeat 112, paragraph 6 -- to avoid a 112,

09:49:51  3  paragraph 6, construction.  So we think that's the issue

09:49:53  4  here, and we think that's inconsistent with the recent

09:49:56  5  Federal Circuit case law on this.

09:50:06  6          Could we go to slide 48.  Looking at the claim

09:50:16  7  language, it's clear that the measuring and imaging device

09:50:19  8  is recited in a means-plus-function format.  While the

09:50:23  9  term doesn't use -- expressly use the term "means," it

09:50:28  10  takes the function that's recited, which is measuring and

09:50:32  11  imaging, and appends the nonce word "device" onto the end

09:50:36  12  of it.  So essentially what they're doing is, they're

09:50:39  13  trying to claim any structure that falls within that can

09:50:45  14  perform the functions of measuring and imaging, and that's

09:50:50  15  consistent with how means-plus-function claims are

09:50:54  16  written.  And there's nothing in the claim language to

09:50:57  17  suggest that there's some connotation of structure with

09:51:02  18  respect to the measuring and imaging device.

09:51:04  19          I think as the Court probably has seen the

09:51:10  20  Williamson vs. Citrix case, notes that terms like "device"

09:51:15  21  such as it's used here are typically insufficient to

09:51:20  22  connote structure.  And so, we submit, your Honor, that

09:51:22  23  the term "measuring and imaging device" is a term that is

09:51:29  24  -- that fails to connote sufficient structure.

09:51:36  25          We'll also note on the record that the term

09:51:41  1   "measuring and imaging device" is not a term that has an

09:51:44  2   understood meaning in the art.  There's no dictionary

09:51:51  3   definition or treatise that uses the term "measuring and

09:51:54  4   imaging device."  So I think that highlights the fact that

09:51:57  5   measuring and imaging device is not a term that has an

09:52:00  6   understood meaning in the art, and that really, the

09:52:03  7   patentee is trying to just use the term "measuring and

09:52:07  8   imaging device" to refer to any structure that's being

09:52:10  9   used to perform the functions of measuring and imaging.

09:52:13  10  And again, that's consistent with how means-plus-function

09:52:16  11  claims are written.  And we submit, your Honor, that that

09:52:21  12  would subject the claim term to 112, paragraph 6.

09:52:28  13      And if we go to slide 49.  And the way that

09:52:34  14  measuring device and imaging device is claimed, it's

09:52:38  15  claimed consistently between the two independent claims.

09:52:40  16  So for in the previous slide, go to claim 37, they recited

09:52:47  17  that the measuring and imaging device was for measuring,

09:52:51  18  imaging the intra-oral objects and features located in the

09:52:54  19  intra-oral cavity, the same language appears in claim 1.

09:52:57  20      If we could go to slide 50.  And consistent with

09:53:09  21  this means-plus-function claiming format, the

09:53:13  22  specification really describes the measuring and imaging

09:53:18  23  devices in terms of a black box.  It illustrates

09:53:23  24  essentially a box in figure 1 of the specification.  And

09:53:27  25  the intent by the patentee was really to signify that any

09:53:32  1   type of device or structure mechanism that could be used

09:53:38  2   for the measuring -- to perform the functions of measuring

09:53:42  3   and imaging device would be within the scope, and I think

09:53:44  4   that's largely confirmed by the specification.

09:53:47  5        If we could go to the slide 51.  So looking at

09:53:57  6   the specification 707 patent at column 16, lines 22

09:54:02  7   through 44, it's apparent that the patentee had intended

09:54:12  8   to capture the measuring and imaging device in a

09:54:18  9   means-plus-function format when they recite the various

09:54:22  10  different types of mechanisms that could be used to

09:54:27  11  perform the functions of measuring and imaging.  They

09:54:30  12  provide a long laundry list of mechanisms, and a lot of

09:54:34  13  these are from various disparate categories, and a lot of

09:54:39  14  them are very vague in nature.

09:54:42  15       So, for example, electronic -- electrical and

09:54:47  16  electronic mechanisms, those categories -- those

09:54:50  17  identified categories alone could virtually cover any type

09:54:54  18  of measuring and imaging device that performs the

09:54:58  19  functions of measuring and imaging.

09:55:11  20       And going to slide 52.  And not to belabor the

09:55:17  21  case law, but I think the MTD Products vs. Iancu case

09:55:22  22  further highlights the fact that if there's nothing in the

09:55:25  23  specification to kind of -- to cabin the scope of the

09:55:28  24  functional term, it lends itself to the conclusion that

09:55:32  25  the claim was intended to be written as a

09:55:35  1    means-plus-function format.

09:55:36  2              And we think the specification's consistent with

09:55:38  3    that analysis.  The specification provides a vague laundry

09:55:42  4    list of mechanisms that could be used, and it doesn't

09:55:45  5    really try to define any kind of particular scope or

09:55:50  6    suggest any kind of particular structure that would be

09:55:52  7    used for the means-plus -- for the measuring and imaging

09:55:55  8    device.

09:55:55  9              And so, virtually any structure that could

09:55:58  10   perform the functions of measuring and imaging would

09:56:03  11   theoretically fall within the scope of the measuring and

09:56:05  12   imaging device.  And because of that, your Honor, we

09:56:13  13   believe that the term "measuring and imaging device" is

09:56:17  14   subject to 112, paragraph 6.

09:56:21  15             THE COURT:  If I could hear a response.

09:56:26  16             MR. BURGER:  Your Honor, were you addressing me?

09:56:32  17             THE COURT:  You're the only other lawyer on --

09:56:37  18             MR. BURGER:  Yes.  There's a number of things

09:56:40  19   that Mr. Liu said that I'd like to clarify.

09:56:48  20             So first, he said that the defendants jumped

09:56:52  21   straight to the specification and ignored the claim terms,

09:56:56  22   and that's entirely untrue.  In fact, I had a footnote

09:57:01  23   where I listed 38 structural elements of the measuring and

09:57:06  24   imaging device that are found in dependent claims.  And

09:57:11  25   the claims that counsel put on the screen just now were

| | |
|---|---|
| 09:57:19 | 1 |
| 09:57:22 | 2 |
| 09:57:27 | 3 |
| 09:57:30 | 4 |
| 09:57:38 | 5 |

1  broad independent claims, but he didn't address the

2  dependent claims at all.  And in fact, you'll see that the

3  structural limitations do appear in the claims, and we

4  have extensive briefing about why that means that 112,

5  paragraph 6 doesn't apply.

6       Let me -- if I may show you a few slides that

7  I've prepared.  Just give me one moment to get that up.

8  All right.  Before I get into some very specific

9  structural limitations that are found in the claims

10  themselves, I'd also like to correct something that -- a

11  different slide that counsel just showed, which was figure

12  1 of the 707 patent, and he highlighted a small purple box

13  to be the measuring and imaging device.

14       In fact, when we know from claim 53 that the

15  measuring and imaging device also includes a position and

16  orientation guide.  And the position orientation guide is

17  a rod that is attached to the, you know, for lack of a

18  better term, the camera and other types of devices that

19  are specifically discussed as acquiring measurements and

20  images.  And so, the specification tells us that this rod,

21  which is a part of the measuring and imaging device, can

22  be made out of plastic or glass and has limitations

23  relating to not irritating the intra-oral cavity.

24       So while this isn't the totality of the measuring

25  and imaging device, it is a part of the measuring and

| | | |
|---|---|---|
| 09:59:47 | 1 | imaging device, and it is certainly something that can |
| 09:59:51 | 2 | connotes structure.  And this is illustrated here where, I |
| 09:59:59 | 3 | believe, the measuring and imaging device was highlighted |
| 10:00:02 | 4 | only as the box -- well, when counsel put the slide up, he |
| 10:00:07 | 5 | only highlighted box 54, but in fact, the measuring and |
| 10:00:12 | 6 | imaging device also includes a structural handle. |
| 10:00:15 | 7 | And so -- and beyond the portions of the |
| 10:00:25 | 8 | specification that counsel alluded to, there are other |
| 10:00:32 | 9 | portions of the specification that discuss the structure, |
| 10:00:35 | 10 | the measuring and imaging device.  Indeed, we know that |
| 10:00:38 | 11 | the measuring and imaging device can be, quote, an |
| 10:00:43 | 12 | ultrasound measuring and imaging probe.  And this is a |
| 10:00:48 | 13 | quote from the deposition transcript of defendants' |
| 10:00:53 | 14 | expert, Dr. Parris Egbert, where he agreed that an |
| 10:00:58 | 15 | ultrasound measuring and imaging probe has structure. |
| 10:01:07 | 16 | And so, let me think if there's any other points |
| 10:01:15 | 17 | I'd like to respond to.  But just I suppose I'd ask your |
| 10:01:20 | 18 | Honor if there's anything that you'd like me to respond to |
| 10:01:24 | 19 | further. |
| 10:01:31 | 20 | THE COURT:  No.  I'm fine. |
| 10:01:33 | 21 | Mr. Liu. |
| 10:01:34 | 22 | MR. LIU:  Yeah.  And so, I'll take the points |
| 10:01:36 | 23 | that Densys' counsel raised. |
| 10:01:40 | 24 | So first, with regards to his response to the |
| 10:01:44 | 25 | argument that they're jumping straight into the |

10:01:46   1   specification to find structure to avoid 112, paragraph 6,

10:01:50   2   I think their argument -- the arguments that they actually

10:01:52   3   made in the briefing, specifically, the footnote that they

10:01:55   4   pointed out, actually highlights that point.

10:01:58   5          The footnote that counsel referenced to that

10:02:05   6   footnote was merely referring -- was pointing, again, to

10:02:09   7   the specification to identify various structures, but we

10:02:14   8   know that it's improper to just go straight to the

10:02:19   9   specification, point out one or two example structures and

10:02:22   10  say 112, paragraph 6, doesn't apply.

10:02:24   11         The same thing also applies with regard to the

10:02:27   12  dependent claims.  As you know, your Honor, dependent

10:02:33   13  claims further specify a term, but they don't purport to

10:02:37   14  limit the term in which it appears in the independent

10:02:41   15  claim.  Put it another way, the various different

10:02:44   16  structures relayed in the independent claim, those aren't

10:02:47   17  limiting on the measuring and imaging device that's

10:02:52   18  recited in claim 1.

10:02:53   19         And so, we don't think that those dependent

10:02:56   20  claims actually help Densys' argument where providing any

10:03:03   21  type of meaningful scope as to the structure of the

10:03:08   22  measuring and imaging device.

10:03:10   23         Second point, Densys' counsel raised an argument

10:03:16   24  with regards to the position and orientation guide.  As

10:03:20   25  counsel described it, it's essentially a rod that's

10:03:23   1   attached to the measuring and imaging device, and all its
10:03:29   2   function is is to move the device around.  And that's not
10:03:32   3   actually relevant to the means-plus-function analysis
10:03:34   4   because in order to determine whether a structure --
10:03:39   5   whether a term connotes structure, you have to look at the
10:03:43   6   alleged structures and see if they're actually performing
10:03:45   7   the claim function.
10:03:46   8          Here, the claim function is measuring and imaging
10:03:51   9   intra-oral objects.  It's clear that that position and
10:03:54  10   orientation guide is not performing that function.  Its
10:03:57  11   whole purpose is just a rod attached to the measuring and
10:04:00  12   imaging device to move it around.  So we don't think
10:04:02  13   that's relevant to the analysis.
10:04:05  14          And then, lastly, counsel raised the structure of
10:04:09  15   an ultrasound probe, and he cited to testimony from our
10:04:14  16   expert to apparently suggest that because our expert
10:04:20  17   acknowledged that one could conceivably understand what
10:04:23  18   the structure of an ultrasound probe is, that there would
10:04:28  19   be sufficient structure connoted to the term "measuring
10:04:32  20   and imaging device."  And again, I think this is
10:04:33  21   consistent with the way that Densys has presented their
10:04:39  22   argument is, they just go straight to the specification,
10:04:42  23   identify various examples of structures and say 112,
10:04:46  24   paragraph 6, doesn't apply.
10:04:47  25          And again, we'd submit, your Honor, that that's

| | | |
|---|---|---|
| 10:04:51 | 1 | inconsistent with how recent Federal Circuit case law |
| 10:04:57 | 2 | addresses the means-plus-function analysis, and we request |
| 10:04:59 | 3 | that you disregard those arguments by Densys. |
| 10:05:09 | 4 | THE COURT:  Thank you.  I'll be back with you all |
| 10:05:11 | 5 | in just a couple of seconds. |
| 10:05:40 | 6 | I'd like to again, at this point, say what I say |
| 10:05:43 | 7 | a lot, which is, I'm always -- I'm very blessed to have |
| 10:05:47 | 8 | this job because I have really good lawyers who make these |
| 10:05:52 | 9 | arguments.  They're very sophisticated and usually do a |
| 10:05:58 | 10 | very good job on both sides, and that was true here. |
| 10:06:03 | 11 | But the Court is going to maintain its |
| 10:06:06 | 12 | preliminary claim construction and make it a final claim |
| 10:06:08 | 13 | construction and find that this claim term is not subject |
| 10:06:11 | 14 | to Section 112, paragraph 6, and it is going to give it |
| 10:06:16 | 15 | its plain and ordinary meaning.  It's going to find that |
| 10:06:18 | 16 | it is not indefinite. |
| 10:06:23 | 17 | I'm going to move on to the claim term from the |
| 10:06:25 | 18 | 707 patent, which is "recording said global position of |
| 10:06:30 | 19 | said measuring and imaging device relative to said |
| 10:06:34 | 20 | intra-oral fixed global registration position" and |
| 10:06:38 | 21 | "measuring and recording global positions and orientations |
| 10:06:42 | 22 | of said measuring and imaging device" related -- "relative |
| 10:06:47 | 23 | to same said intra-oral fixed global registration |
| 10:06:50 | 24 | positions." |
| 10:06:51 | 25 | The plaintiff's construction was plain and |

| | | |
|---|---|---|
| 10:06:54 | 1 | ordinary meaning for both terms.  The Court has adopted |
| 10:06:56 | 2 | that.  I assume -- I'll start with the plaintiff.  I |
| 10:06:59 | 3 | assume that the plaintiff is okay with the Court's |
| 10:07:03 | 4 | preliminary construction. |
| 10:07:04 | 5 | MR. BURGER:  Yes, your Honor. |
| 10:07:05 | 6 | THE COURT:  I'll hear from defense counsel. |
| 10:07:13 | 7 | MR. BELANGER:  I was on mute.  I apologize, your |
| 10:07:15 | 8 | Honor. |
| 10:07:15 | 9 | I'd like to start, your Honor, by going to slide |
| 10:07:25 | 10 | 29.  And I think the crux of the dispute, your Honor, is |
| 10:07:35 | 11 | whether this term "relative to" requires some knowledge |
| 10:07:46 | 12 | within the system of the relationship between the |
| 10:07:52 | 13 | measuring and imaging device and the intra-oral fixed |
| 10:07:57 | 14 | global registration position; and by simply saying that |
| 10:08:01 | 15 | the term has its plain and ordinary meaning may not |
| 10:08:04 | 16 | resolve that dispute. |
| 10:08:07 | 17 | If there -- in our mind, two ways that this could |
| 10:08:13 | 18 | be read.  One way would be that it's simply acknowledging |
| 10:08:19 | 19 | a law of nature, which is every local portion of the mouth |
| 10:08:29 | 20 | has some relation to every other portion of the mouth.  So |
| 10:08:35 | 21 | in this example in figure 1, it shows a field of view K |
| 10:08:40 | 22 | where you're taking a measurement and image of certain |
| 10:08:45 | 23 | teeth, and then, it shows apart from that, this intra-oral |
| 10:08:50 | 24 | global -- fixed global registration position. |
| 10:08:53 | 25 | In our understanding, the entire discussion in |

10:08:57  1  the patent is that a measurement or calculation is

10:09:01  2  performed so that the system knows where the measuring and

10:09:07  3  imaging device is relative to that fixed global

10:09:11  4  registration position when it takes the measurement.

10:09:17  5          In the broadest reading of "relative to," you

10:09:20  6  could eliminate that item 74, which is showing some

10:09:24  7  communication or calculation and simply say, I'm taking a

10:09:31  8  local measurement, and that local measurement by

10:09:34  9  definition is relative to all other points in the mouth.

10:09:39  10  And so, respectfully, your Honor, we think clarification

10:09:41  11  on that point would be helpful.

10:09:45  12          We propose a construction where there was a

10:09:48  13  measurement required because that is what the patentee

10:09:50  14  describes when describing the novel aspects of the

10:09:54  15  invention.  That's what plaintiff's tutorial describes as

10:09:57  16  the novel aspect of the invention is performing a

10:10:01  17  measurement between the measuring and imaging device and

10:10:03  18  that fixed global reference point.

10:10:06  19          But we understand the Court's construction of

10:10:09  20  plain meaning.  We're just concerned that may not resolve

10:10:12  21  the dispute as we may hear plaintiff later try to

10:10:15  22  distinguish the prior art by observing that there's no

10:10:18  23  measurement or calculation performed to determine how far

10:10:25  24  away the measuring and imaging device is from some other

10:10:27  25  fixed point within the oral cavity.

| | | |
|---|---|---|
| 10:10:34 | 1 | And just in summary, your Honor, we don't believe |
| 10:10:36 | 2 | there's any description other than a measurement. |
| 10:10:39 | 3 | Plaintiffs in their brief and their slides point to a |
| 10:10:42 | 4 | calculation, but in this art, the calculation is simply |
| 10:10:47 | 5 | another way to describe the measurement when the end |
| 10:10:53 | 6 | result of the calculation is an indication of relative |
| 10:10:56 | 7 | position between two points. |
| 10:10:58 | 8 | Unless your Honor has additional questions. |
| 10:11:04 | 9 | THE COURT:  Thank you very much.  I'll be right |
| 10:11:05 | 10 | back.  Thank you for that break. |
| 10:12:18 | 11 | The Court is going to go with plain and ordinary |
| 10:12:20 | 12 | meaning for both terms and -- but the Court wanted to put |
| 10:12:23 | 13 | a couple of things on the record, as well.  The Court is |
| 10:12:34 | 14 | concerned that "measured from" doesn't really add |
| 10:12:43 | 15 | anything, doesn't -- isn't really -- doesn't really focus |
| 10:12:46 | 16 | down or help very much.  And also, I mean -- and I say |
| 10:12:52 | 17 | that in the context -- not to take that.  I'm saying that |
| 10:12:56 | 18 | -- which is kind of a fraction of a thought, but in the |
| 10:12:59 | 19 | context of the way that the briefing was done and the |
| 10:13:03 | 20 | suggestion that use of the words "imaging device measured |
| 10:13:10 | 21 | from" would assist in correcting any problems there were |
| 10:13:13 | 22 | with the claim language, the Court finds that does not -- |
| 10:13:17 | 23 | it is not helpful. |
| 10:13:18 | 24 | And also, just because of the conflict between |
| 10:13:26 | 25 | the plaintiff's construction of ordinary meaning and the |

| | |
|---|---|
| 10:13:30 | 1 |
| 10:13:33 | 2 |
| 10:13:36 | 3 |
| 10:13:41 | 4 |
| 10:13:44 | 5 |

10:13:30  1  defendants' constructions here, their proposed, the Court

10:13:33  2  finds for purposes of you all going forward that the

10:13:36  3  defendants' proposed constructions would not be the plain

10:13:41  4  and ordinary meaning of these claim terms for purposes of

10:13:44  5  dealing with your experts.

10:13:45  6          I will move on to patent claim 707 with regard to

10:13:56  7  registering local coordinate -- it says -- I skipped -- I

10:14:01  8  should have included this.  I should have included

10:14:05  9  everything.  There is a little letter (f) and then, it

10:14:07  10 says "registering local coordinate space pixel positions

10:14:11  11 in each of said plurality of globally recorded

10:14:16  12 three-dimensional measurements and images with

10:14:19  13 corresponding global coordinate space pixel position."

10:14:25  14         And then also, we're thinking we may be able to

10:14:33  15 skip this one, given what we discussed earlier, but I

10:14:36  16 would ask counsel if that's correct.  Not that you don't

10:14:40  17 want to maintain the concerns that you raised earlier, and

10:14:43  18 I would keep those on the record, but our sense is that we

10:14:48  19 will cover those.  But let me make clear, if either side

10:14:51  20 wants to make any argument about either, I'm completely

10:14:55  21 open to hearing it at this time.

10:14:58  22         MR. BELANGER:  Yes --

10:14:59  23         THE COURT:  So I'll start -- go ahead.  I'm

10:15:00  24 sorry.  Go ahead, please.

10:15:02  25         MR. BELANGER:  Do you want to start with me or

| | | |
|---|---|---|
| 10:15:04 | 1 | plaintiff? |
| 10:15:04 | 2 | THE COURT:  Yes.  That will be fine. |
| 10:15:06 | 3 | MR. BELANGER:  Thank you, your Honor. |
| 10:15:06 | 4 | So I think you're correct.  This was a sequence |
| 10:15:09 | 5 | of steps argument which we put forward in the briefing.  I |
| 10:15:15 | 6 | would just note for the record, we think the argument as |
| 10:15:18 | 7 | of this phrase, the sequence is imparted in part by the |
| 10:15:22 | 8 | discussion of the novelty of the patent, which I addressed |
| 10:15:25 | 9 | earlier in my argument but, also, just based on a plain |
| 10:15:29 | 10 | reading of the language where step (f) requires something |
| 10:15:34 | 11 | that is -- does not exist until the performance of step |
| 10:15:39 | 12 | (e), which is this plurality of globally recorded |
| 10:15:44 | 13 | three-dimensional measurements.  But it is an argument |
| 10:15:47 | 14 | about sequence. |
| 10:15:48 | 15 | And so, respectfully, we understand the Court's |
| 10:15:50 | 16 | ruling.  Happy to answer any questions that are unique to |
| 10:15:54 | 17 | this term, but I think it is the same. |
| 10:15:55 | 18 | THE COURT:  Okay.  And I'll put on the record at |
| 10:16:00 | 19 | a macro level again, the Court doesn't believe sequencing |
| 10:16:05 | 20 | is required.  On a micro level with respect to this |
| 10:16:08 | 21 | specific claim term, the Court specifically does not |
| 10:16:10 | 22 | believe that (f) is required to occur after step -- for my |
| 10:16:16 | 23 | court reporter, that little letter (f) must occur after |
| 10:16:21 | 24 | step little letter (e).  I know I sound like I'm talking |
| 10:16:26 | 25 | to third graders.  I'm just trying to make sure it's clear |

10:16:28  1   on the record for Lily what I'm trying to say here.

10:16:32  2            The defendants' construction was -- I'm just

10:16:36  3   going to quote the first part of it -- little "(f) after

10:16:38  4   step (e), registering local coordinate space pixel

10:16:43  5   positions."  The Court specifically finds the steps do not

10:16:48  6   have to -- steps do not have to take place in that

10:16:51  7   specific order, and will note obviously the defendant

10:16:56  8   proposed that so they -- that they thought that was

10:16:59  9   correct.  And so, your objection to my construction would

10:17:03  10  be sustained -- would be noted for the record.

10:17:06  11           The Court will go with plain and ordinary meaning

10:17:09  12  without an ordering of steps.  Do you think I've

10:17:13  13  sufficiently preserved for you your concerns for the

10:17:17  14  record with regard to the claim construction?

10:17:19  15           MR. BELANGER:  I believe so, your Honor.  Thank

10:17:22  16  you.

10:17:22  17           THE COURT:  Okay.  Thank you.

10:17:23  18           Next claim term, the 707 patent has, quote,

10:17:30  19  mobile registration device for measuring and recording

10:17:34  20  global positions and orientations of said measuring and

10:17:39  21  imaging device.  The plaintiff has proposed plain and

10:17:44  22  ordinary meaning.  The defendants propose that the claim

10:17:47  23  term is subject to 35 United States Code, Section 112,

10:17:53  24  paragraph 6.  The Court's preliminary construction is that

10:17:55  25  it is not subject to 112, paragraph 6, and that plain and

10:18:01  1    ordinary meaning should be what the Court imposes.

10:18:05  2            I'm assuming from the plaintiff that the

10:18:08  3    plaintiff accepts what the Court has proposed; is that

10:18:11  4    correct?

10:18:11  5            MR. BURGER:  Yes, your Honor.

10:18:13  6            THE COURT:  Okay.  I'll hear from defendant.

10:18:16  7            MR. BELANGER:  Your Honor, I think the issue here

10:18:20  8    is similar in that we believe 112, 6 should apply to this

10:18:27  9    claim term.  The arguments are similar.  I'm happy to --

10:18:31  10   and Mr. Liu is prepared to present those arguments if it

10:18:34  11   would be helpful to the Court, but I think it is the same

10:18:37  12   issue where we believe this claim phrase is merely

10:18:44  13   functional language with a term thrown at the beginning

10:18:46  14   that doesn't have any recognized structure.

10:18:50  15           THE COURT:  Let me say this.  This is y'all's

10:18:53  16   Markman hearing.  If Mr. Liu has anything he'd like to

10:18:57  17   add, in addition to what he argued earlier, he is

10:18:59  18   absolutely welcome to do that, and I'll hear from

10:19:02  19   plaintiff's counsel.  If your argument is essentially

10:19:08  20   pretty much what you argued earlier, I think I'm pretty

10:19:11  21   familiar with the law on this, and I know why I made this

10:19:18  22   preliminary construction.  But I'm absolutely -- Mr. Liu's

10:19:21  23   free to make any argument that he'd like to make.  So just

10:19:24  24   let me know.

10:19:27  25           MR. BELANGER:  Yeah.  I think I'll let Mr. Liu

| | | |
|---|---|---|
| 10:19:29 | 1 | just briefly address the issue, your Honor, so it could be |
| 10:19:31 | 2 | on the record. |
| 10:19:31 | 3 | THE COURT:  Sure.  Please do. |
| 10:19:33 | 4 | MR. LIU:  Yeah.  And I appreciate the |
| 10:19:36 | 5 | opportunity. |
| 10:19:36 | 6 | I won't belabor the point, but I think the |
| 10:19:40 | 7 | argument is similar.  I think it's actually here, the term |
| 10:19:43 | 8 | is, you know, one step even more removed than the |
| 10:19:47 | 9 | measuring and imaging device.  Mobile registration device |
| 10:19:51 | 10 | is not a term of art.  There's no evidence that it's -- |
| 10:19:56 | 11 | there's no evidence, either in the form of a dictionary |
| 10:20:00 | 12 | definition or a treatise, to suggest that it connotes some |
| 10:20:02 | 13 | type of well-understood structure.  Again, it's a verbal |
| 10:20:10 | 14 | construct that with the term "device," which is a nonce |
| 10:20:14 | 15 | term, appended to the end of it. |
| 10:20:16 | 16 | And if you look at the structure of the claim -- |
| 10:20:18 | 17 | and, Jim, can you pull up slide 67?  Oh, sorry, 62.  I |
| 10:20:31 | 18 | apologize.  The language of the claim after mobile |
| 10:20:40 | 19 | registration device is purely functional language.  It |
| 10:20:44 | 20 | recites the function of measuring and recording global |
| 10:20:47 | 21 | positions and orientations of the measuring and imaging |
| 10:20:50 | 22 | device.  It doesn't provide any -- it doesn't purport to |
| 10:20:52 | 23 | provide any structure or providing that measurement or |
| 10:20:56 | 24 | recording of the global positions of the measuring device. |
| 10:20:59 | 25 | It just recites a pure function.  And we submit, your |

10:21:04  1   Honor, that's, again, pure means-plus-function claiming.

10:21:09  2           And going to the next slide, slide 64.  Sorry,

10:21:20  3   the next slide, 64.  And again, the specification confirms

10:21:24  4   this.  Again, the way that the specification describes the

10:21:30  5   mobile registration device, it merely provides a laundry

10:21:33  6   list of broad and vague mechanisms that could be used to

10:21:38  7   perform the function of measuring and recording the global

10:21:43  8   positions of the measuring and imaging device.

10:21:45  9           Again, it gives the example of electrical and

10:21:51  10  electromechanical mechanisms, and we submit, your Honor,

10:21:54  11  that those descriptions are extremely vague and don't

10:21:59  12  really provide any guidance as to what the corresponding

10:22:02  13  structure would be to perform the function of measuring

10:22:07  14  and recording the global positions of the measuring and

10:22:10  15  imaging device.

10:22:14  16          And with respect to that, I think that's -- as

10:22:21  17  you can see, it's very similar to the mobile registration

10:22:27  18  -- sorry, the measuring and imaging device term.  And I'll

10:22:29  19  pass to plaintiff's counsel to see if he has any comments.

10:22:34  20  Or if you have any questions, your Honor, I'd be glad to

10:22:37  21  address them.

10:22:38  22          THE COURT:  Sounds great.

10:22:40  23          Does plaintiff's counsel have anything they'd

10:22:42  24  like to put on the record?

10:22:43  25          MR. BURGER:  Your Honor, it seems from what I'm

| | | |
|---|---|---|
| 10:22:47 | 1 | hearing that you're very familiar with the briefs.  Unless |
| 10:22:54 | 2 | you have a question about what defense -- |
| 10:22:57 | 3 | THE COURT:  I don't.  No.  I don't. |
| 10:22:58 | 4 | I just want to give you -- I gave Mr. Liu an |
| 10:23:01 | 5 | opportunity to put whatever he wants on the record as to |
| 10:23:03 | 6 | why I'm wrong.  And if you have anything you'd like to put |
| 10:23:09 | 7 | on the record to address what he said specifically, you're |
| 10:23:12 | 8 | free to.  If not, I'm happy to rule and move on to the |
| 10:23:14 | 9 | next term. |
| 10:23:15 | 10 | MR. BURGER:  I obviously don't agree with what |
| 10:23:18 | 11 | Mr. Liu said, but I think that the reasons why I disagree |
| 10:23:21 | 12 | are plain from our briefs.  So I will rest on what is |
| 10:23:27 | 13 | contained in our briefs. |
| 10:23:28 | 14 | THE COURT:  Very good.  That's fine. |
| 10:23:30 | 15 | The Court is going to find that that claim term |
| 10:23:32 | 16 | is not subject to Section 112, paragraph 6, and give it |
| 10:23:37 | 17 | the claim construction of plain and ordinary meaning. |
| 10:23:40 | 18 | The next claim term that we have up is from the |
| 10:23:44 | 19 | 768 patent, which is the claim term "sector."  The |
| 10:23:49 | 20 | plaintiff has proposed plain and ordinary meaning.  The |
| 10:23:52 | 21 | Court has adopted plain and ordinary meaning for the word |
| 10:23:57 | 22 | "sector." |
| 10:23:58 | 23 | The defendant has proposed "region defined by two |
| 10:24:04 | 24 | radii at" -- I hope I said that correctly.  Josh, did I |
| 10:24:08 | 25 | get close?  "Radii at a given angle to each other."  And |

10:24:13  1  so, I'll hear -- I'm going to guess this is from Mr. Liu.

10:24:19  2  But I could be wrong.

10:24:21  3       MR. PATNAIK:  Actually, you are wrong, your

10:24:23  4  Honor.  It's Mr. Patnaik.

10:24:26  5       THE COURT:  I'm equally happy to hear from you.

10:24:30  6  So I invite you to say whatever you'd like in support of

10:24:34  7  your proposed construction.

10:24:36  8       MR. PATNAIK:  Thank you, your Honor.

10:24:37  9       Real quick, I just -- I am looking at plain and

10:24:41  10 ordinary.  We actually tried to expound on the plain and

10:24:46  11 ordinary, or actually put forth we used extrinsic evidence

10:24:47  12 like dictionary definitions and our expert.  Plaintiff in

10:24:51  13 advocating plain and ordinary, it's curious to us because

10:24:54  14 we don't think that's actually advocating plain and

10:24:54  15 ordinary.  If you look at their briefing, your Honor, and

10:24:58  16 I'll be specific.  In their reply submission -- in their

10:25:01  17 responsive claim construction brief, they criticize 3Shape

10:25:05  18 for using the geometric definition of sector.

10:25:08  19      So I would argue, your Honor, today, that if you

10:25:12  20 look at what they're actually saying, they're not saying

10:25:15  21 plain and ordinary.  They're saying plain and ordinary

10:25:16  22 when you have to carve out geometric.  They're

10:25:19  23 acknowledging that the geometric definition of sector is

10:25:22  24 what we have propounded.

10:25:23  25      So we would like some clarity because we don't

10:25:27  1   think what plaintiff actually said in their briefs or

10:25:29  2   their expert declaration is plain and ordinary.  And

10:25:32  3   again, I'll be specific with their declaration.  Dr. Bajaj

10:25:39  4   at paragraph 48 of his expert declaration says very

10:25:43  5   plainly, establishes that the word "sector" is not being

10:25:47  6   used in the geometric sense.

10:25:49  7         So there's no, as far as we can see in the

10:25:52  8   specification or the patent, otherwise, any disavowal of

10:25:55  9   this geometric sense.  In fact, the patent is sprinkled

10:25:59  10  with references to the geometric context that this full

10:26:04  11  patent is being read within.  So it was curious to us that

10:26:08  12  they're saying plain and ordinary, but not geometric, but

10:26:12  13  at the same token, it leaves a dispute outstanding, your

10:26:16  14  Honor.  And I'll leave it at that.

10:26:19  15        THE COURT:  That's a good argument.  Give me one

10:26:21  16  second, I'll be right back.  I appreciate the issue -- let

10:31:53  17  me go back on the record.

10:31:54  18        I appreciate the issue that defense counsel has

10:31:56  19  raised and we believe -- I believe that a word like

10:32:02  20  "sector," absent some compelling reason -- and I don't

10:32:07  21  think defendant is even arguing there is a compelling

10:32:09  22  reason here to give it a construction -- should be given a

10:32:13  23  construction beyond plain and ordinary meaning.

10:32:16  24        That being said, I certainly understand the

10:32:21  25  defendants' concern with the wording that was used in the

| | | |
|---|---|---|
| 10:32:28 | 1 | plaintiff's brief.  And I understand the plaintiff's |
| 10:32:31 | 2 | concern with the proposed construction in defendants' |
| 10:32:35 | 3 | brief, given that this is a three-dimensional -- a patent |
| 10:32:39 | 4 | that involves three dimensions. |
| 10:32:41 | 5 | So the Court, when we enter our claim |
| 10:32:45 | 6 | construction order, we will -- we'll make clear -- we will |
| 10:32:52 | 7 | amplify what is meant by plain and ordinary meaning to |
| 10:32:55 | 8 | help you all when you're preparing with your experts.  But |
| 10:32:58 | 9 | the Court is going to maintain a claim construction of |
| 10:33:02 | 10 | plain and ordinary meaning.  And I appreciate defense |
| 10:33:04 | 11 | counsel bringing to the Court's attention what the concern |
| 10:33:08 | 12 | was with that claim term.  And the Court will do its best |
| 10:33:12 | 13 | to address that in the order based on what was said in the |
| 10:33:15 | 14 | briefs. |
| 10:33:15 | 15 | With regard to the next claim term in the 768. |
| 10:33:21 | 16 | MR. PATNAIK:  Your Honor, before we go on, could |
| 10:33:23 | 17 | I just make one clarification point? |
| 10:33:23 | 18 | THE COURT:  Sure. |
| 10:33:25 | 19 | MR. PATNAIK:  You brought up the idea of the |
| 10:33:26 | 20 | distinction because it's 3-D, and that was curious to me |
| 10:33:32 | 21 | because going through the plaintiff's briefs, we thought |
| 10:33:34 | 22 | it was very conclusory for their expert to say there's |
| 10:33:37 | 23 | some distinction between a sector in 2-D versus 3-D.  We |
| 10:33:42 | 24 | didn't see any real support for it; it was just kind of |
| 10:33:45 | 25 | said.  And the easy example that comes to mind is a |

| | | |
|---|---|---|
| 10:33:47 | 1 | sphere.  That's 3-D and a sphere will have a sector, as |
| 10:33:50 | 2 | well. |
| 10:33:50 | 3 | So, you know, I know that distinction was made, |
| 10:33:53 | 4 | but we didn't really understand the point that was being |
| 10:33:55 | 5 | made.  And I just want to make sure that -- that doesn't |
| 10:33:59 | 6 | go unaddressed because it wasn't something that was really |
| 10:34:02 | 7 | honed in on. |
| 10:34:05 | 8 | THE COURT:  Well, let me make clear.  The Court |
| 10:34:08 | 9 | rarely, very rarely -- and won't probably in this |
| 10:34:13 | 10 | instance -- relies on extrinsic evidence.  And so, I |
| 10:34:17 | 11 | understand your concern.  I'm pretty well on the record |
| 10:34:23 | 12 | that, you know, I do my best to look at the intrinsic |
| 10:34:27 | 13 | evidence and the specification.  And that's why I'm saying |
| 10:34:30 | 14 | with regard to a word like "sector," that here, my |
| 10:34:38 | 15 | philosophy is -- generally speaking is this. |
| 10:34:40 | 16 | That when someone is -- when an attorney is doing |
| 10:34:45 | 17 | their best -- when they are prosecuting the patent and |
| 10:34:48 | 18 | they're doing best to capture the intention of the |
| 10:34:52 | 19 | inventor, they -- and they're drafting it, I think there |
| 10:34:57 | 20 | are words and selections of words and phrases that they |
| 10:35:01 | 21 | use where they would understand and anticipate that if the |
| 10:35:07 | 22 | patent is granted, that there might be a challenge and |
| 10:35:10 | 23 | that they need to define those claim -- that those words |
| 10:35:13 | 24 | need to be construed.  They could do that in the |
| 10:35:17 | 25 | specification, you know, all that stuff. |

| 10:35:19 | 1 | But on the other hand, when a person is drafting |
| 10:35:23 | 2 | a patent, trying to capture an invention and they use a |
| 10:35:27 | 3 | word like "sector" that, in my opinion, they anticipate |
| 10:35:34 | 4 | everyone skilled in the art, generally speaking, to know |
| 10:35:39 | 5 | unless they have to disavow something during the |
| 10:35:40 | 6 | prosecution or, in this case, if the patent involved a new |
| 10:35:45 | 7 | way of creating sectors and they had to explain what the |
| 10:35:48 | 8 | word "sector" meant, I'm very reluctant to go down the |
| 10:35:54 | 9 | road of construing a word like "sector," you know, or a |
| 10:36:01 | 10 | word like "pole," which I've been asked to do, you know, |
| 10:36:06 | 11 | or "pipe."  You know, I don't do that. |
| 10:36:11 | 12 | On the other hand, I understand your concern that |
| 10:36:16 | 13 | you have a concern based on the briefing that was done by |
| 10:36:20 | 14 | the plaintiff.  I don't want you all, if I can avoid it, |
| 10:36:24 | 15 | to get to the point where your experts are coming up with |
| 10:36:31 | 16 | and opining in their reports and at depositions on whether |
| 10:36:35 | 17 | or not there's infringement or whether or not there's |
| 10:36:37 | 18 | invalidity because of some confusion over what the word |
| 10:36:44 | 19 | "sector" means. |
| 10:36:44 | 20 | We are going to do our best when we draft the |
| 10:36:47 | 21 | order to make it as clear as possible what we think the |
| 10:36:50 | 22 | plain and ordinary meaning of "sector" is.  Failing that, |
| 10:36:56 | 23 | then I anticipate I might receive Daubert motions or |
| 10:37:00 | 24 | motions for summary judgment down the road if one of you |
| 10:37:04 | 25 | -- if one of you believes the other side's experts has |

10:37:07  1  taken a position on what the word "sector" means in the

10:37:10  2  context of this patent that is not -- that should not fall

10:37:14  3  within the plain and ordinary meaning.

10:37:16  4         So let me move on to the next claim term, which

10:37:19  5  is "identifiable positional characteristic."  The

10:37:24  6  plaintiff's construction is plain and ordinary meaning.

10:37:26  7  The defendants' construction is that it is indefinite

10:37:28  8  under 35 United States Code, Section 112, 6 -- paragraph

10:37:36  9  6.  The Court's proposed construction is, it is not

10:37:39  10  subject to Section 112, paragraph 6.  And I'll say this in

10:37:45  11  part for the benefit of the defendants and they have

10:37:49  12  clients on board.

10:37:52  13        I think we have only once found in this situation

10:37:57  14  when a defendant made the proposal that something was

10:37:59  15  subject to Section 112, paragraph 6, that it, indeed, was.

10:38:08  16  So it is probable -- I'm probably in the 98 percent

10:38:11  17  category of rejecting these arguments, and so, it's

10:38:16  18  consistent with my general philosophy of patent law.

10:38:19  19        The Court's construction here is that claim term

10:38:23  20  "identifiable positional characteristic" of plain and

10:38:27  21  ordinary meaning is "a characteristic of the reference

10:38:31  22  surface device that facilitates the conversion of 2-D

10:38:34  23  images to 3-D models."  I'll hear first from the plaintiff

10:38:38  24  as to whether or not you are satisfied with the Court's

10:38:44  25  interpretation of what the plain and ordinary meaning is.

| | | |
|---|---|---|
| 10:38:49 | 1 | MR. BURGER:  Thank you, your Honor. |
| 10:38:50 | 2 | This is the term where we proposed a slight |
| 10:38:57 | 3 | modification.  I have some slides for what our proposal is |
| 10:39:02 | 4 | for what the plain and ordinary meaning of the term means |
| 10:39:07 | 5 | and slides relating to the spec support.  Here we are. |
| 10:39:25 | 6 | And can you guys see my screen at this point?  All right. |
| 10:39:34 | 7 | I'll take the silence as a yes. |
| 10:39:36 | 8 | So, your Honor, we do agree with the first |
| 10:39:44 | 9 | portion. |
| 10:39:44 | 10 | THE COURT:  Give me one second because I'm |
| 10:39:48 | 11 | looking right now at your proposal, and I may take it and |
| 10:39:55 | 12 | modify your proposal a little bit.  So let me work on that |
| 10:40:00 | 13 | for just a second here and come back to you all with |
| 10:40:03 | 14 | perhaps a modification of what the Court's preliminary |
| 10:40:06 | 15 | construction was, based off of what the plaintiff |
| 10:40:11 | 16 | suggested.  Give me just one second. |
| 10:40:14 | 17 | MR. BURGER:  Thank you, your Honor. |
| 10:41:37 | 18 | THE COURT:  Allow me to go back on the record. |
| 10:41:39 | 19 | I am going to take what the plaintiff has |
| 10:41:43 | 20 | suggested.  I am going to change the word "stitching" |
| 10:41:48 | 21 | because I don't think that necessarily helps the jury |
| 10:41:51 | 22 | because I might have to explain to them what stitching |
| 10:41:54 | 23 | means, but I'm going to use it as the foundation.  And the |
| 10:42:01 | 24 | Court is now going to offer and so the defendant knows |
| 10:42:05 | 25 | what it's arguing against, and I'll see if the plaintiff |

```
10:42:09   1    is okay with this.  Plaintiff will get to go first and
10:42:12   2    tell me if I've gotten it wrong.
10:42:15   3            A characteristic of the reference surface device
10:42:19   4    that facilitates conversion of a 2-D image to 3-D models
10:42:24   5    or combining -- and I'm using the word "combining" rather
10:42:28   6    than the proposed word "stitching" -- "a first
10:42:32   7    three-dimensional model to a second three-dimensional
10:42:35   8    model."
10:42:35   9            So let me hear from the plaintiff first and ask
10:42:39  10    if you are satisfied with that proposed claim
10:42:42  11    construction.
10:42:45  12            MR. BURGER:  Yes, your Honor.  The substitution
10:42:47  13    of the word "combining" for the proposed word "stitching"
10:42:51  14    is acceptable to the plaintiff.
10:42:53  15            THE COURT:  Okay.  So let me turn, then, to
10:42:56  16    defense counsel and hear any arguments you have why the
10:43:01  17    Court's proposed construction, which is the one I just
10:43:06  18    gave with regard to "combining" in it, is incorrect.
10:43:11  19            MR. LIU:  Yes, your Honor.  This is Frank Liu on
10:43:14  20    behalf of the defendants.
10:43:15  21            So the language that was proposed -- and at the
10:43:22  22    outset, we'd just note that our original proposed
10:43:25  23    construction was not 112, paragraph 6.  It was actually
10:43:28  24    intended just to be an indefiniteness under 112, paragraph
10:43:32  25    2.  So we apologize if there's any confusion around that.
```

| | | |
|---|---|---|
| 10:43:37 | 1 | And after receiving the Court's preliminary |
| 10:43:41 | 2 | construction, we took a look at it, and we thought that |
| 10:43:46 | 3 | the Court's preliminary construction was helpful in |
| 10:43:53 | 4 | providing what the understanding of the plain and ordinary |
| 10:43:55 | 5 | meaning.  However, we believe that the addition that's |
| 10:43:58 | 6 | been just proposed would improperly attempt to import a |
| 10:44:07 | 7 | preferred embodiment into the claims. |
| 10:44:10 | 8 | And so, just to be clear, defendant would be fine |
| 10:44:16 | 9 | with the language -- or with the construction, "a |
| 10:44:20 | 10 | characteristic of the" -- |
| 10:44:22 | 11 | THE COURT:  Mr. Liu, let me ask you something. |
| 10:44:24 | 12 | You've touched on something that I always gotta be careful |
| 10:44:31 | 13 | how I say it.  You look so young to me that I was going to |
| 10:44:35 | 14 | say something like I've been practicing law longer, but I |
| 10:44:38 | 15 | won't.  But I probably have been practicing law longer |
| 10:44:42 | 16 | than any of you have been alive.  But I never -- |
| 10:45:01 | 17 | MR. PATNAIK:  Your Honor, we've lost audio for |
| 10:45:04 | 18 | you. |
| 10:45:06 | 19 | THE COURT:  Oh, can you hear me now? |
| 10:45:11 | 20 | MR. PATNAIK:  It's muffled.  It's muffled and |
| 10:45:14 | 21 | distorted. |
| 10:45:16 | 22 | THE COURT:  Okay.  Let me do this then.  I'm |
| 10:45:25 | 23 | going to log out and log back in. |
| 10:45:28 | 24 | MR. BURGER:  Your Honor, it appears to have |
| 10:45:29 | 25 | resolved. |

| | | |
|---|---|---|
| 10:45:30 | 1 | THE COURT:  Very good. |
| 10:45:33 | 2 | So what I was saying is, I don't know that it's |
| 10:45:37 | 3 | not a good argument or a legitimate argument.  I've just |
| 10:45:42 | 4 | never -- Mr. Liu, I've never heard a defendant concerned |
| 10:45:44 | 5 | that a plaintiff was importing a limitation from the |
| 10:45:50 | 6 | specification into a claim construction because typically, |
| 10:45:57 | 7 | you know, that's a narrowing of what -- the argument |
| 10:46:01 | 8 | against doing that philosophically is if the claim is |
| 10:46:05 | 9 | broad and a defendant -- the claim is usually -- the |
| 10:46:08 | 10 | argument's usually going the other way.  The plaintiff is |
| 10:46:11 | 11 | saying, Judge, you can't use that construction because |
| 10:46:13 | 12 | it's a limitation.  My claim is actually broader and they |
| 10:46:17 | 13 | want to limit it.  Why would a defendant care if the |
| 10:46:21 | 14 | plaintiff -- I'm not saying it's right or wrong, but why |
| 10:46:25 | 15 | can't a plaintiff do that?  I guess I've just never heard |
| 10:46:29 | 16 | anyone make that argument before. |
| 10:46:32 | 17 | MR. LIU:  And let me see if I can explain. |
| 10:46:33 | 18 | THE COURT:  Okay. |
| 10:46:34 | 19 | MR. LIU:  So the language that Densys' counsel |
| 10:46:39 | 20 | proposed, the portion of the specification that they cite |
| 10:46:44 | 21 | to, which is column 6, lines 58 through column 7, line 11, |
| 10:46:53 | 22 | that's where the limitations of the first |
| 10:46:56 | 23 | three-dimensional model to a second three-dimensional |
| 10:46:59 | 24 | model come from. |
| 10:46:59 | 25 | And in that part of the specification -- and, |

```
10:47:06   1   Jim, can I actually get that pulled up onto the screen?

10:47:33   2   Sorry.  Can we get the 768 patent?  So, Jim, can you blow

10:47:58   3   up column 6, lines 58 through 7, 11?

10:48:23   4          MR. BURGER:  Frank, I have the slide where you

10:48:25   5   can see the entire portion that we're relying on, if you'd

10:48:29   6   like it, I can just throw that up.  It might be easier for

10:48:34   7   everyone to see.

10:48:37   8          MR. LIU:  That's fine.  Jim, if you already have

10:48:42   9   -- it seems like your --

10:48:44  10          MR. BURGER:  Here.  I just think this might be

10:48:51  11   simpler since you're referring to what we submitted.

10:49:00  12          MR. LIU:  Thank you, Oded.  I appreciate that.

10:49:05  13          Yeah.  And so, this is the relevant portion of

10:49:09  14   the specification that plaintiff's counsel cited to for

10:49:13  15   support for the limitation, which makes reference to the

10:49:19  16   first three-dimensional model to a second

10:49:22  17   three-dimensional model.  If you can see the first line of

10:49:26  18   that portion, it begins with furthermore, according to

10:49:30  19   some embodiments of the present invention, there is

10:49:32  20   provided a method for producing a three-dimensional model

10:49:35  21   of an intra-oral scene.  And then, it goes on to list the

10:49:40  22   various steps of this method.

10:49:42  23          And as you can see in steps -- step (e), it

10:49:50  24   recites the first two-dimensional image of the

10:49:54  25   three-dimensional -- of the intra-oral scene, including a
```

10:49:56  1  first reference surface and at least one identifiable

10:50:00  2  positional characteristic.

10:50:03  3          Step (f) is where it recites obtaining a first

10:50:06  4  three-dimensional model from a two-dimensional image.  And

10:50:11  5  step (h) recites obtaining a second three-dimensional

10:50:14  6  model from the --

10:50:16  7          THE COURT:  Mr. Liu, can I ask you a question?

10:50:19  8  Since I'm -- since I am saying what plain and ordinary

10:50:26  9  meaning means and I'm looking at what you're saying here,

10:50:31 10  how would -- and I'm using the word "combining" instead of

10:50:36 11  "stitching," but how would combining, which is in the

10:50:41 12  specification, combining the first three-dimensional model

10:50:46 13  to the second three-dimensional model not be part of the

10:50:49 14  plain and ordinary meaning if it's disclosed in the

10:50:53 15  specification?

10:50:54 16          I mean, I guess we could quibble on whether or

10:50:59 17  not I ought to include that language in my claim

10:51:03 18  construction and that might even go to whether or not it

10:51:06 19  helps a jury or doesn't help a jury.  But even if I left

10:51:09 20  that language out of my explanation of what a plain and

10:51:15 21  ordinary meaning is for the 768 patent, how would that

10:51:19 22  possibly not be part of the plain and ordinary meaning of

10:51:25 23  what's covered here by identifiable positional

10:51:30 24  characteristic when it's discretely disclosed?

10:51:35 25          MR. LIU:  Well, your Honor, I think that the

| | |
|---|---|
| 10:51:40 | 1 |
| 10:51:44 | 2 |
| 10:51:47 | 3 |
| 10:51:51 | 4 |
| 10:51:55 | 5 |
| 10:51:59 | 6 |
| 10:52:03 | 7 |
| 10:52:07 | 8 |
| 10:52:11 | 9 |
| 10:52:19 | 10 |
| 10:52:23 | 11 |

1  Court's original construction of a characteristic of the

2  reference surface device that facilitates conversion of

3  2-D images to 3-D models, we think that's a clear and

4  concise definition for the identifiable positional

5  characteristic.  We think by injecting the additional

6  language "or combining a first three-dimensional model to

7  a second three-dimensional model," that injects some

8  ambiguity into the claim language because now it takes

9  away that original requirement of the reference surface

10 device facilitating the conversion of 2-D images to 3-D

11 models.

12         THE COURT:  Mr. Liu, let me try this.  Let me go

13 back to the plaintiff for a second.  Plaintiff's counsel.

14         MR. LIU:  Yes, your Honor.

15         THE COURT:  I am, frankly, agnostic probably

16 whether I include the language that you have proposed in

17 that the Markman is to do two things.  One is to make

18 certain you all know what is -- what I think the claim

19 term means, and the other's possibly to benefit the jury

20 in explaining what they otherwise might not understand.

21         I can tell you on the record right now -- and

22 we'll have a transcript of this so you can remind me of

23 this when we get to trial and I may have forgotten it.

24 But as far as I'm concerned, stitching or combining the

25 first three-dimensional model to the second

| | | |
|---|---|---|
| 10:53:21 | 1 | three-dimensional model as is in the specification is part |
| 10:53:26 | 2 | of the plain and ordinary meaning of identifiable |
| 10:53:29 | 3 | positional characteristic. |
| 10:53:31 | 4 | If you don't care -- if me having said that, do |
| 10:53:36 | 5 | you care whether or not I include it in the construction I |
| 10:53:40 | 6 | have, which is going to go to the jury? |
| 10:53:44 | 7 | MR. BURGER:  Yes -- |
| 10:53:45 | 8 | THE COURT:  Because I am -- |
| 10:53:45 | 9 | MR. BURGER:  I apologize. |
| 10:53:47 | 10 | THE COURT:  No.  Please. |
| 10:53:47 | 11 | MR. BURGER:  No.  I actually believe that it's |
| 10:53:49 | 12 | important and I have a slide to explain why. |
| 10:53:51 | 13 | THE COURT:  Okay. |
| 10:53:52 | 14 | MR. BURGER:  Previous slide and that's -- this is |
| 10:53:55 | 15 | the portion of the specification that speaks to the way |
| 10:54:02 | 16 | that the identifiable positional characteristic relates to |
| 10:54:07 | 17 | driving 3-D information from 2-D images.  But it's |
| 10:54:14 | 18 | important that the spec uses the word "typically" there. |
| 10:54:18 | 19 | It is sometimes the case, but it is not always the case. |
| 10:54:22 | 20 | And the instances when it is the case relate to structured |
| 10:54:29 | 21 | illumination, which is a way of getting 3-D information |
| 10:54:33 | 22 | from 2-D images. |
| 10:54:34 | 23 | But the spec is very clear that this invention |
| 10:54:40 | 24 | does not only relate to instances when this reference |
| 10:54:47 | 25 | surface device is being used with the structured |

| | | |
|---|---|---|
| 10:54:52 | 1 | illumination.  And the cite, for your Honor's benefit, for |
| 10:54:58 | 2 | how structured illumination is not the only way in order |
| 10:55:02 | 3 | to get 3-D information in the context of this invention is |
| 10:55:09 | 4 | -- the cite I'd like to give you is column 1, lines 39 |
| 10:55:13 | 5 | through 56.  There are other cites, as well, that I don't |
| 10:55:19 | 6 | have at my fingertips, but that cite is very clear that |
| 10:55:26 | 7 | structured illumination is not required.  I believe, in |
| 10:55:30 | 8 | fact, that some of the defendants' briefing even agrees |
| 10:55:34 | 9 | with that point. |
| 10:55:35 | 10 | And so, that's why this word "typically" that |
| 10:55:37 | 11 | we're looking at the portion of the specification at |
| 10:55:43 | 12 | column 10, lines 23 through 36, the fact that it uses the |
| 10:55:48 | 13 | word "typically," I think that, again, the identifiable |
| 10:55:55 | 14 | positional characteristic can be used for this purpose, |
| 10:55:59 | 15 | but this is not the only purpose for which the |
| 10:56:03 | 16 | identifiable positional characteristic is disclosed.  And |
| 10:56:07 | 17 | that is why I believe the Court's explanation as to what |
| 10:56:12 | 18 | the plain and ordinary meaning should include the other |
| 10:56:18 | 19 | sense, which is disclosed at column 6, line 58 through |
| 10:56:24 | 20 | column 7, line 11. |
| 10:56:29 | 21 | MR. DAIGNAULT:  Yes, your Honor.  This is Ron |
| 10:56:32 | 22 | Daignault speaking. |
| 10:56:33 | 23 | Further to counsel's point, one of the things |
| 10:56:36 | 24 | that we believe is that as the Court construed plain and |
| 10:56:40 | 25 | ordinary meaning, or illuminated what plain and ordinary |

10:56:44  1   meaning is, we would just respectfully submit that it
10:56:47  2   actually is limiting to the 2-D, 3-D concept, and that it
10:56:50  3   would be excluding the combining or stitching that's
10:56:53  4   talked about in the spec.
10:56:54  5          So that's -- so in addition to what Mr. Burger
10:57:00  6   mentioned and the fact that it talks about typically, our
10:57:05  7   issue really was that on its face, it just seemed that the
10:57:08  8   Court was limiting the construction.  We understand from
10:57:10  9   the Court's comments that you would be including the
10:57:13  10  combining, stitching as part of plain and ordinary
10:57:16  11  meaning.
10:57:17  12         So if the jury, though, only sees the portion
10:57:20  13  about 2-D, 3-D, then they may not appreciate that you have
10:57:24  14  this combining aspect, too, which is actually embodiment
10:57:27  15  in the patent and would be excluded arguably from the
10:57:32  16  construction.
10:57:37  17         THE COURT:  Okay.  If I could hear from
10:57:40  18  whoever -- I apologize.  I forgot who it was that was
10:57:42  19  arguing on behalf of defendant.  Mr. Liu, I think.
10:57:46  20         MR. LIU:  Yes, your Honor.
10:57:47  21         And if I may comment on that point.  And I think
10:57:52  22  one point I wanted to make clear was that the modified
10:58:00  23  construction uses the term "or."  So in other words,
10:58:08  24  they're effectively not going to require the identifiable
10:58:13  25  positional characteristic to require a characteristic of

10:58:19  1   the reference surface device that facilitates conversion
10:58:22  2   of 2-D images to 3 models.  We believe that the
10:58:25  3   specification, particularly the portion that plaintiff's
10:58:32  4   counsel put up on 10, lines 23 through 36, provides that
10:58:38  5   requirement for the conversion of the 2-D image just to
10:58:42  6   the 3 models.
10:58:43  7          That being said, we don't believe that once you
10:58:54  8   -- with that being said, we're not trying to read out the
10:58:56  9   -- we're not trying to preclude them from subsequently
10:59:00  10  relying upon combining first three-dimensional model to a
10:59:04  11  second three-dimensional model.
10:59:07  12         So just at a high level, the way that this works
10:59:09  13  is that you have your structured illumination, you create
10:59:14  14  these two-dimensional images and you generate a
10:59:18  15  three-dimensional model.  That three-dimensional model is
10:59:20  16  only a small portion of the object.  And in order to
10:59:25  17  capture the full three-dimensional model, you need to
10:59:30  18  capture multiple of these.  So you would have multiple 2-D
10:59:32  19  images that you convert to 3 models, and then, you can
10:59:35  20  subsequently stitch them together to create entire
10:59:39  21  three-dimensional model.
10:59:39  22         So I guess more simply put, I think we would be
10:59:47  23  okay with the modification if instead of using the term
10:59:50  24  "or," you use the word "and" combining the first
10:59:53  25  three-dimensional model to a second three-dimensional

| | | |
|---|---|---|
| 10:59:55 | 1 | model. |
| 11:00:03 | 2 | THE COURT:  Okay.  The Court is going to go with |
| 11:00:06 | 3 | the proposal that I read that included the word "capable." |
| 11:00:11 | 4 | And I don't think the change of the word from "and" -- |
| 11:00:14 | 5 | from "or" -- I'm sorry, combined and I don't think Mr. |
| 11:00:18 | 6 | Liu's correct when he says it should be "and" rather than |
| 11:00:21 | 7 | "or."  I think "or" is appropriate. |
| 11:00:24 | 8 | So let's move to the next claim term, the 768 |
| 11:00:29 | 9 | patent.  Claim term is "a plurality of faces" and "each |
| 11:00:34 | 10 | face of said plurality of faces at an angular orientation |
| 11:00:37 | 11 | with respect to each adjacent face."  The Court's proposed |
| 11:00:43 | 12 | construction is plain and ordinary meaning.  Defendants' |
| 11:00:47 | 13 | obviously is much more robust.  I'll hear from whoever is |
| 11:00:51 | 14 | going to speak on behalf of defendants with respect to |
| 11:00:54 | 15 | their construction -- or their proposed construction. |
| 11:00:58 | 16 | MR. PATNAIK:  Your Honor, this is Mr. Patnaik |
| 11:01:00 | 17 | again on this one. |
| 11:01:00 | 18 | So on this one, I'm mindful of your earlier words |
| 11:01:04 | 19 | about how you generally construe terms.  We do have a very |
| 11:01:08 | 20 | strong indication in the specification here of the |
| 11:01:11 | 21 | patentee actually acting as his own lexicographer and |
| 11:01:15 | 22 | putting forth certain properties with respect to the |
| 11:01:17 | 23 | claims that are used in the claim -- or the terms that are |
| 11:01:20 | 24 | used in the claim, and I'll specify claim 10. |
| 11:01:22 | 25 | So the dispute at its crux is that defendants are |

| | |
|---|---|
| 11:01:26 | 1 |
| 11:01:31 | 2 |
| 11:01:33 | 3 |
| 11:01:36 | 4 |
| 11:01:38 | 5 |

putting or 3Shape is putting in this "substantially plane"
language, and I think that's where the dispute is.  I'll
let plaintiff speak for themselves, but from our
understanding of the briefing, that's the crux of the
dispute.

        When -- and our use of "substantially plane"
comes actually from the guidance in the specification when
it's talking about the properties of the referenced
surface device, and it uses the face that's the subject of
these -- of this claim term.  And so, I'm looking at
column 10, your Honor, lines 44 through 57.  And this is
where the patentee discusses substantially plane, and they
end the paragraph, it's not simply about an embodiment,
which I understand is the beginning of the paragraph, but
the end of that paragraph states very clearly the term,
quote, reference surface device, end quote, herein denotes
a device where apparatus having at least these properties.

        So these properties are, in fact, read into the
overarching.  I mean, claim 1 is all about this reference
surface device.  So what we were trying to do with the
language in our construction was ensure that that property
that's the subject of this paragraph was actually captured
in the construction.

        Your Honor, I mean, that's the crux of my
argument.  I think the additional points I would make, in

11:02:51  1   plaintiff's briefing, they quibbled with our use -- they

11:02:54  2   pointed to the pyramid examples as how our construction

11:02:57  3   couldn't be possibly correct.  The pyramid example,

11:03:02  4   actually, your Honor, is exactly what we're saying because

11:03:04  5   each of the faces of the pyramid are substantially planar.

11:03:06  6         And you could see that if you look at figure 6A.

11:03:11  7   It points to 605.  605 is described in column 15 as a

11:03:16  8   face, and all we're saying is, even in the pyramid

11:03:19  9   structure that those individual faces, they comport with

11:03:22  10  the requirements of the claim, but they are still

11:03:25  11  substantially planar.

11:03:26  12        The other point that plaintiffs use to argue

11:03:32  13  against our construction is the dependent claim 16, which

11:03:36  14  talks about the length being an arch.  Again, we think

11:03:39  15  that's completely consistent and not mutually exclusive at

11:03:42  16  all with our substantially plane construction insertion

11:03:46  17  because if you look, for instance, at figure 6A and 6B,

11:03:50  18  those, we would argue, are -- the length is in the shape

11:03:54  19  of an arch so -- and that's the pyramidal structure.  So

11:03:57  20  -- and that by definition, by the patent specification

11:04:01  21  tells you that there are different angles for each of the

11:04:04  22  pyramidal structures, and it comports with the rest of the

11:04:07  23  claim requirements.

11:04:08  24        So I'll leave it that, your Honor, unless you

11:04:11  25  have any questions.  But I did want to address the two

11:04:13   1   points raised by plaintiffs against our construction.

11:04:22   2          THE COURT:  Yeah.  I'll hear a response from the

11:04:25   3   plaintiff.  And I'm happy to hear with regard to the issue

11:04:30   4   -- on the suggestion with regard to the pyramids.

11:04:38   5          MR. BURGER:  Your Honor, if I could have control.

11:04:39   6   Yeah, okay.  I do have slides that illustrate this point.

11:04:47   7   Just one moment.

11:05:01   8          The pyramidal depression is addressed not only in

11:05:09   9   the specification but, also, in claim 2.  And here, you

11:05:12  10   see that where the word "face" appears in the next to the

11:05:23  11   last line of this quote of claim 2.  It says wherein each

11:05:30  12   face of said plurality of faces includes a pyramidal

11:05:37  13   depression.  So the use of the word "face" there, a face

11:05:41  14   that has a pyramidal depression is not a face that it's

11:05:49  15   substantially plane.  So even within the context of the

11:05:51  16   claim, the use of the word "face" is inconsistent with

11:05:57  17   having -- being substantially plane.  It tells us that it

11:06:03  18   includes a pyramidal depression.

11:06:04  19          So what this tells me is that the use of the word

11:06:08  20   "face" in the context of the claims and the specification

11:06:13  21   is broader than the substantially plane face.  And indeed,

11:06:19  22   where the claims require substantially plane face, they do

11:06:26  23   include that; but in other contexts, they just mention

11:06:31  24   faces.

11:06:35  25          And so, I think the use of the word "face" as it

| | |
|---|---|
| 11:06:42 | 1 |
| 11:06:49 | 2 |
| 11:06:54 | 3 |
| 11:06:58 | 4 |
| 11:07:01 | 5 |
| 11:07:08 | 6 |
| 11:07:11 | 7 |
| 11:07:12 | 8 |
| 11:07:15 | 9 |
| 11:07:23 | 10 |
| 11:07:27 | 11 |
| 11:07:32 | 12 |
| 11:07:34 | 13 |
| 11:09:27 | 14 |
| 11:09:29 | 15 |
| 11:09:31 | 16 |
| 11:09:34 | 17 |
| 11:09:38 | 18 |
| 11:09:42 | 19 |
| 11:09:45 | 20 |
| 11:09:50 | 21 |
| 11:09:55 | 22 |
| 11:10:00 | 23 |
| 11:10:05 | 24 |
| 11:10:09 | 25 |

1   appears very clearly in claim 2 is that it's a surface,
2   and so, the surface has a pyramidal depression.  And
3   another -- I was thinking of another example that might
4   help the Court.  When one speaks about the face of a
5   cliff, no one -- there's a face of a cliff is not
6   substantially plane, but yet, we talk about it as a
7   surface as a face.
8         And I believe that that is the sense in which the
9   claims use the word "face."  And I do have other points to
10  make, but I believe your Honor wanted me to respond
11  specifically to the pyramidal depression.
12        THE COURT:  Okay.  If y'all will give me just one
13  second.
14        Okay.  I'm back on the record.  Thank you for
15  your courtesies in letting me take a short break to chat
16  about this with my law clerks.
17        The Court is going to maintain its construction
18  of plain and ordinary meaning.  And also, having heard the
19  arguments that were made by defendants' counsel with
20  respect to how the claims should be construed, the Court
21  rejects those and finds that the effort that you are
22  making regarding to including "each substantially plane
23  surface at an angular orientation relative to an adjacent
24  substantially plane surface" would not be -- that a person
25  skilled in the art would not find that to be the plain and

| | | |
|---|---|---|
| 11:10:13 | 1 | ordinary meaning or the correct construction of that claim |
| 11:10:16 | 2 | term. |
| 11:10:17 | 3 | The Court is going to make as its final and |
| 11:10:20 | 4 | permanent construction that it be plain and ordinary |
| 11:10:27 | 5 | meaning.  Hold on one second.  I want to put on the record |
| 11:10:41 | 6 | that we believe the specification shows the ability to map |
| 11:10:46 | 7 | curved surfaces.  So to the extent that the defendants' |
| 11:10:49 | 8 | proposal would indicate that the specification does not |
| 11:10:54 | 9 | allow that or the claim does not include that, the Court |
| 11:10:57 | 10 | rejects that proposed construction. |
| 11:11:00 | 11 | The final claim term we have is "orientation |
| 11:11:07 | 12 | indicium" and "position indicium."  The Court's claim |
| 11:11:11 | 13 | construction proposal is plain and ordinary meaning. |
| 11:11:12 | 14 | Defendants' proposed construction is that the claim term |
| 11:11:16 | 15 | is either indefinite or is indefinite under 35 United |
| 11:11:23 | 16 | States Code, Section 112, paragraph 2. |
| 11:11:26 | 17 | The Court's preliminary construction is the |
| 11:11:28 | 18 | defendant is incorrect.  It is not subject to Section 112, |
| 11:11:34 | 19 | paragraph 2, and that plain and ordinary meaning is the |
| 11:11:36 | 20 | appropriate construction for both "orientation indicium" |
| 11:11:41 | 21 | and "position indicium."  I'll hear from counsel for |
| 11:11:45 | 22 | defendant, please. |
| 11:11:51 | 23 | MR. LIU:  Yes, your Honor. |
| 11:11:52 | 24 | We've taken a look through the Court's proposed |
| 11:11:55 | 25 | construction, and I think it helps give clarity as to what |

11:11:59  1   the plain and ordinary meaning is for the orientation

11:12:04  2   indicium and the location indicium.  And I guess, one

11:12:07  3   point that we wanted to seek clarification on is with

11:12:11  4   respect to the language "allows a viewer to ascertain the

11:12:18  5   orientation of the reference surface device."

11:12:21  6          And so, in our understanding of the claimed

11:12:26  7   invention, the purpose of the reference surface device is

11:12:29  8   to use orientation indicium and position indicium to

11:12:35  9   ultimately determine three-dimensional points.  And the

11:12:44  10  orientation indicium and the position indicium are going

11:12:49  11  to be points or orientation in the two-dimensional images

11:12:54  12  that are captured and that are subsequently process.  So

11:12:58  13  in terms of the characteristic, we believe that it's more

11:13:03  14  consistent with the invention that's described in the 768

11:13:09  15  patent to have that the reference surface device is using

11:13:14  16  the orientation of the reference surface device with

11:13:18  17  respect to the intra-oral cavity as opposed to merely

11:13:23  18  allowing it to just be a viewer to ascertain the

11:13:26  19  orientation of the reference surface device.

11:13:34  20          THE COURT:  Okay.  Let me hear a response from

11:13:36  21  the plaintiff.

11:13:37  22          MR. BURGER:  I have to apologize, your Honor.

11:13:40  23  I'm not really clear what counsel is proposing.  I can

11:13:48  24  tell you why I believe the construction that your Honor

11:13:54  25  has proposed is supported by the patent specification, but

| | | |
|---|---|---|
| 11:14:01 | 1 | I think I need -- |
| 11:14:01 | 2 | THE COURT:  Okay.  I've got it.  Let me -- that's |
| 11:14:04 | 3 | my fault.  So let me go ahead and do this. |
| 11:14:07 | 4 | Mr. Liu, so let me read to you for the record |
| 11:14:13 | 5 | with respect to orientation indicium, I'm going to read |
| 11:14:17 | 6 | what the Court's proposal is, and then, I'm going to have |
| 11:14:21 | 7 | you tell me what language you would like to add or delete |
| 11:14:25 | 8 | to clarify my proposal.  And then, I'll hear from |
| 11:14:30 | 9 | plaintiff's counsel. |
| 11:14:30 | 10 | So the plain and ordinary meaning -- and this |
| 11:14:33 | 11 | will be true for both of them.  Orientation indicium is a |
| 11:14:37 | 12 | characteristic of the reference surface device that allows |
| 11:14:41 | 13 | a viewer to ascertain the orientation of a reference |
| 11:14:45 | 14 | surface device with respect to the inter-oral cavity. |
| 11:14:50 | 15 | You mentioned that you had an issue with the |
| 11:14:53 | 16 | portion of it that begins with "allows" and ends with |
| 11:14:57 | 17 | "surface device."  Tell me how you would propose modifying |
| 11:15:02 | 18 | the Court's preliminary construction so that I can hear |
| 11:15:04 | 19 | from plaintiff's counsel. |
| 11:15:08 | 20 | MR. LIU:  Sure.  And I think the most -- simply |
| 11:15:11 | 21 | that the dispute is really over whether it's -- the |
| 11:15:18 | 22 | reference surface device is something that allows a viewer |
| 11:15:21 | 23 | to ascertain the orientation or the position of the |
| 11:15:24 | 24 | reference surface device or whether it's a system that's |
| 11:15:27 | 25 | being used to ascertain the orientation or position of the |

11:15:31  1   reference surface device.

11:15:33  2          We submit, your Honor, that consistent with the

11:15:36  3   spec -- teachings of the 768 patent, the whole purpose of

11:15:40  4   the reference surface device is to allow the computer

11:15:43  5   system to ascertain what the orientation or position of

11:15:49  6   the reference surface device is so that you can use that

11:15:53  7   to determine three-dimensional points of the object that

11:15:59  8   you're scanning.

11:16:00  9          And so, I think that's the clarification that we

11:16:03  10  seek, and we believe that's consistent with the

11:16:06  11  specification.  And so, we would be fine if you just

11:16:13  12  replaced the word "viewer" with "system."

11:16:17  13         THE COURT:  So -- and as you're talking, I think

11:16:22  14  I am persuaded that "allows a viewer" may be unnecessarily

11:16:27  15  restrictive.  And I understand why it may be a viewer

11:16:32  16  that's looking at it, but it may be the system that is

11:16:36  17  providing it.  Let me put you on mute for just a second,

11:16:46  18  and we'll see what we can do on our side.  Give me one

11:16:56  19  second.

11:17:42  20         Okay.  So here is what I'm going to try modifying

11:17:48  21  this to.  I'll start with Mr. Liu and ask if this

11:17:54  22  satisfies what you're trying to accomplish.  For both of

11:17:57  23  them in the section that says, allows a viewer to

11:18:02  24  ascertain the orientation, I would modify that to read, a

11:18:07  25  device that allows for the ascertainment of the

| | |
|---|---|
| 11:18:13 | 1 |
| 11:18:27 | 2 |
| 11:18:28 | 3 |
| 11:18:35 | 4 |
| 11:18:39 | 5 |
| 11:18:43 | 6 |
| 11:18:49 | 7 |
| 11:18:55 | 8 |
| 11:18:58 | 9 |
| 11:19:01 | 10 |
| 11:19:03 | 11 |
| 11:19:07 | 12 |
| 11:19:09 | 13 |
| 11:19:13 | 14 |
| 11:19:18 | 15 |
| 11:19:21 | 16 |
| 11:19:25 | 17 |
| 11:19:27 | 18 |
| 11:19:30 | 19 |
| 11:19:38 | 20 |
| 11:19:44 | 21 |
| 11:19:46 | 22 |
| 11:22:53 | 23 |
| 11:22:56 | 24 |
| 11:23:03 | 25 |

orientation.  And that will be for both claim terms.

MR. LIU:  I believe we would be fine with that clarification, with the additional clarification that it's not intended to allow just any viewer to look at the reference surface device and, in their head, be able to ascertain the orientation or the position, but rather, it's the system that's viewing it and making that determination.

THE COURT:  Let me -- I'm going to hold off on the addition that you'd like.  But let me hear from plaintiff's counsel with respect to my modification of my preliminary construction.

MR. BURGER:  Your Honor, I believe that we are in agreement with your modified construction.

THE COURT:  And I'm going to go out on a limb here and guess that you'd prefer for me not to add the language that Mr. Liu suggested that I add.

MR. BURGER:  I actually don't understand, again, what Mr. Liu has proposed, specifically.  But in terms of what you laid out, I am in agreement.

THE COURT:  Okay.  If you all will give me just a second.  Okay.  Thank you very much for the break.

The Court is going to go with the modified proposal it came up with this morning for orientation indicium.  The construction's going to be plain and

11:23:06   1   ordinary meaning as a characteristic of the reference

11:23:09   2   surface device that allows for the ascertainment of the

11:23:15   3   orientation of a reference surface device with respect to

11:23:19   4   the inter-oral cavity.

11:23:20   5          With respect to position indicium, the Court is

11:23:24   6   going to go with a characteristic of the reference surface

11:23:28   7   device that allows for the ascertainment of the

11:23:33   8   orientation -- allows the ascertainment of the position of

11:23:39   9   the reference surface device within the inter-oral cavity.

11:23:43  10          So that is --

11:23:47  11          MR. BURGER:  Your Honor.

11:23:48  12          THE COURT:  And there's -- my clerk said we might

11:23:52  13   want to have intra-oral, rather than inter, if that is --

11:23:57  14   so I'm going to say intra-oral cavity.

11:24:01  15          MR. BURGER:  That is precisely what I was going

11:24:03  16   to say.

11:24:04  17          THE COURT:  Very good.  Okay.

11:24:06  18          So that ends the Markman hearing, which allows us

11:24:11  19   to turn to a trial date.  The Court is going to -- unless

11:24:19  20   you all -- if you can look at your calendars, unless you

11:24:23  21   all have a prior court engagement, in terms of a trial on

11:24:28  22   June 21st of next year, that is when the case is going to

11:24:34  23   be set for trial.

11:24:37  24          I don't need you to tell me today.  If, for some

11:24:40  25   reason, one of you finds out, one of your lead counsel

| | |
|---|---|
| 11:24:43 | 1 |
| 11:24:45 | 2 |
| 11:24:50 | 3 |
| 11:24:57 | 4 |
| 11:25:01 | 5 |
| 11:25:05 | 6 |
| 11:25:10 | 7 |
| 11:25:13 | 8 |
| 11:25:15 | 9 |
| 11:25:20 | 10 |
| 11:25:23 | 11 |
| 11:25:28 | 12 |
| 11:25:34 | 13 |
| 11:25:50 | 14 |
| 11:25:50 | 15 |
| 11:25:52 | 16 |
| 11:25:53 | 17 |
| 11:25:55 | 18 |
| 11:26:00 | 19 |
| 11:26:10 | 20 |
| 11:26:11 | 21 |
| 11:26:13 | 22 |
| 11:26:13 | 23 |
| 11:26:17 | 24 |
| 11:26:22 | 25 |

1  determines that they're unavailable because they have a

2  previously set trial date, I will modify that date by a

3  little bit to accommodate anyone's trial date.  In my

4  court, just letting you know how it works, if it's set for

5  the 21st, that means you should plan to -- on the Thursday

6  or Friday before the trial starts to have the voir dire

7  with my magistrate.

8            The reason I do the voir dire with my magistrate

9  is because it's much better for the parties in my opinion.

10 The magistrate judge is very good.  He's very experienced.

11 He's been there for more than two terms.  He will do

12 probably a 45-minute to one-hour voir dire first, and

13 then, each side will have a 45-minute voir dire per side

14 to do their own --

15            MR. PATNAIK:  Your Honor, you're distorted

16 again --

17            THE COURT:  -- usually happens in this case, I

18 will be going with a seven-person jury.  The jury -- okay.

19 Give me one second.  Are you able to hear me now?

20            MR. PATNAIK:  We are.

21            THE COURT:  Very good.  Thank you for letting me

22 know.

23            You'll have a seven-person jury.  You'll each get

24 four strikes on your venire.  And then, Monday, July --

25 I'm sorry, Monday, June 21st at 9:00, we'll start trial

| | | |
|---|---|---|
| 11:26:26 | 1 | with opening arguments.  So that pretty much is everything |
| 11:26:31 | 2 | I think we need to do. |
| 11:26:34 | 3 | Does the plaintiff have anything that we needed |
| 11:26:37 | 4 | to address? |
| 11:26:39 | 5 | MR. BURGER:  No, your Honor. |
| 11:26:40 | 6 | THE COURT:  Counsel for defendant? |
| 11:26:45 | 7 | MR. PATNAIK:  No, your Honor. |
| 11:26:46 | 8 | THE COURT:  And just so you know, I didn't think |
| 11:26:53 | 9 | I would have to say this back in March, but we're actually |
| 11:26:56 | 10 | going to trial in Waco.  I know there's some questions |
| 11:26:59 | 11 | about the other places about when, but we're going back -- |
| 11:27:02 | 12 | we're having trials.  And so, I don't know what will be |
| 11:27:06 | 13 | happening in the rest of the world in June, but unless |
| 11:27:08 | 14 | there's some dramatic reversal in the trend of COVID, |
| 11:27:12 | 15 | we'll be going to trial in person on that date. |
| 11:27:19 | 16 | But I look forward to working with you on this |
| 11:27:21 | 17 | case throughout.  If you have anything that I need to help |
| 11:27:23 | 18 | you with, take up during discovery, anything like that, I |
| 11:27:27 | 19 | think your counsel knows well, I'm always available and |
| 11:27:30 | 20 | I'm happy to help.  Make sure that everything stays on |
| 11:27:33 | 21 | track. |
| 11:27:34 | 22 | MR. BURGER:  I'm sorry, your Honor.  I just |
| 11:27:35 | 23 | wanted to clarify one thing from earlier. |
| 11:27:38 | 24 | THE COURT:  Sure. |
| 11:27:39 | 25 | MR. BURGER:  I apologize.  I may have spoken |

| | | |
|---|---|---|
| 11:27:41 | 1 | before you were ready to be done.  I apologize about that. |
| 11:27:44 | 2 | Just for the purpose of the record, I did have an |
| 11:27:47 | 3 | objection that the slides from the technology tutorial |
| 11:27:56 | 4 | should not be a part of the record.  I'm wondering if -- |
| 11:27:59 | 5 | THE COURT:  I will -- generally speaking here, |
| 11:28:04 | 6 | let me tell you, I'm going to overrule, but let me explain |
| 11:28:07 | 7 | why.  I don't think that the plaintiff -- I'm sorry.  I |
| 11:28:11 | 8 | don't think that the defendant used it in a way that I'm |
| 11:28:13 | 9 | typically concerned with, which is, I don't want an |
| 11:28:18 | 10 | engineer to come in at a tutorial and say, the way we |
| 11:28:25 | 11 | drill for oil is we go down -- and whatever I'm going to |
| 11:28:29 | 12 | say, I know some of you are going to laugh at me because |
| 11:28:32 | 13 | I don't know anything about oil and gas.  But, you know, I |
| 11:28:33 | 14 | don't want an expert to say, you know, fracking means this |
| 11:28:37 | 15 | and then, it turns -- just because he's trying to give me |
| 11:28:40 | 16 | a big picture, and then, it turns out fracking, you know, |
| 11:28:43 | 17 | as much -- I'm not going to allow people to be |
| 11:28:47 | 18 | cross-examined over something that they said generically |
| 11:28:50 | 19 | to help me to be educated that wasn't -- as much as you |
| 11:28:56 | 20 | guys worry about getting experts to say exactly what they |
| 11:29:00 | 21 | mean. |
| 11:29:00 | 22 | But in your case where I think the defendant just |
| 11:29:03 | 23 | took something that you were using to help me understand |
| 11:29:07 | 24 | something and tried to use it to help me understand it |
| 11:29:10 | 25 | from their perspective, not in any way challenge I think |

| | | |
|---|---|---|
| 11:29:14 | 1 | what you said, then I think that's okay.  That's within |
| 11:29:18 | 2 | what I'm okay with having happen. |
| 11:29:21 | 3 | I don't recall the defendants saying anything |
| 11:29:25 | 4 | that you said was wrong, or misleading, or made some use |
| 11:29:30 | 5 | of it other than to say, Judge, just to put things in |
| 11:29:35 | 6 | perspective, this is how I see it.  That's the way I took |
| 11:29:38 | 7 | it.  So I don't -- I don't know what the record will |
| 11:29:40 | 8 | reflect of what they actually did, but that's what I used |
| 11:29:43 | 9 | it for was, had you said the same thing during your |
| 11:29:45 | 10 | tutorial, I got the feeling it was exactly the same thing. |
| 11:29:50 | 11 | MR. BURGER:  Thank you, your Honor.  I just |
| 11:29:51 | 12 | wanted that to be clear, so I appreciate you clarifying. |
| 11:29:58 | 13 | THE COURT:  I don't think that defendant -- yeah. |
| 11:30:01 | 14 | I don't think defendant in any way tried to take advantage |
| 11:30:03 | 15 | of what you did in the tutorial in a way that I think |
| 11:30:06 | 16 | would be inappropriate.  I think you took it and used it |
| 11:30:09 | 17 | as a tutorial to help me understand it and I think that's |
| 11:30:12 | 18 | okay.  So I'll overrule your objection to that extent. |
| 11:30:16 | 19 | Is there anything else we need to take up? |
| 11:30:18 | 20 | MR. BURGER:  No, your Honor. |
| 11:30:20 | 21 | MR. BELANGER:  Your Honor. |
| 11:30:20 | 22 | THE COURT:  Yes, sir. |
| 11:30:21 | 23 | MR. BELANGER:  I apologize.  I missed this in |
| 11:30:25 | 24 | your explanation.  I know you said we would start the |
| 11:30:28 | 25 | trial on June 21st.  Did you give us a number of trial |

| | | |
|---|---|---|
| 11:30:32 | 1 | days that you were setting aside? |
| 11:30:33 | 2 | THE COURT:  My guess is a two-patent case, you're |
| 11:30:39 | 3 | probably looking at somewhere between 13 to 15 hours per |
| 11:30:44 | 4 | side. |
| 11:30:45 | 5 | MR. BELANGER:  (Moving head up and down.) |
| 11:30:46 | 6 | THE COURT:  I don't have any huge desire -- let |
| 11:30:49 | 7 | me say one other thing.  The most likely scenario is that |
| 11:30:54 | 8 | we will have -- the reason I have you all pick the jury |
| 11:30:57 | 9 | the week before so I could start on Monday morning, that |
| 11:31:00 | 10 | doesn't mean I'm trying to jam the trial into one week |
| 11:31:03 | 11 | just, you know, to get it done.  The more likely scenario, |
| 11:31:07 | 12 | because of my docket, is that I don't even have to look. |
| 11:31:12 | 13 | I probably have a Markman set, or two or three, on that |
| 11:31:15 | 14 | Friday. |
| 11:31:16 | 15 | So we'll probably go Monday through Thursday, if |
| 11:31:18 | 16 | we can finish, great.  If you get finished, great.  If we |
| 11:31:23 | 17 | don't get finished, you may be doing your -- we may be |
| 11:31:26 | 18 | finishing witnesses and doing closing arguments the |
| 11:31:29 | 19 | following Monday.  But I have no -- I will have no march |
| 11:31:36 | 20 | through the south to get us done and a verdict by sometime |
| 11:31:41 | 21 | in that first week. |
| 11:31:43 | 22 | Now, it's a full year from now, so my patience |
| 11:31:46 | 23 | may have waned between now and then.  But so far, I like |
| 11:31:51 | 24 | lawyers, I like trials, I look forward to these.  I'm not |
| 11:31:56 | 25 | going to ask you all to mediate this.  I think it's good |

| | | |
|---|---|---|
| 11:32:00 | 1 | if you do.  I think it's great if you do.  I think it's |
| 11:32:02 | 2 | great if you mediate it and settle it because I think that |
| 11:32:06 | 3 | can be what's best for your clients.  But I really like |
| 11:32:09 | 4 | jury trials and I really like jury patent trials.  So as |
| 11:32:12 | 5 | far as I'm concerned, it will be like Christmas in June to |
| 11:32:13 | 6 | have goods lawyers come in and try the case. |
| 11:32:16 | 7 | So one other thing and I'll have forgotten I told |
| 11:32:20 | 8 | you this, so I'm sure I'll repeat it.  But the way I like |
| 11:32:24 | 9 | to do things is, generally speaking, only place where that |
| 11:32:28 | 10 | I get a little skittish is, I don't -- I really dislike |
| 11:32:32 | 11 | carrying witnesses overnight.  Now, if you put your |
| 11:32:35 | 12 | witness on for 20 minutes on direct and then, the next |
| 11:32:39 | 13 | morning, we're going to start with the same witness on |
| 11:32:42 | 14 | direct, I don't care about that.  That's -- you know, |
| 11:32:44 | 15 | that's fine. |
| 11:32:45 | 16 | I really don't like you putting your witness on |
| 11:32:50 | 17 | on direct, for example, and getting halfway through cross |
| 11:32:55 | 18 | and then, stopping.  Or I don't like giving people the |
| 11:32:57 | 19 | opportunity to go overnight in that situation.  So we may |
| 11:33:03 | 20 | go -- we may play a little bit with the end of the day and |
| 11:33:06 | 21 | when I finish, if I can finish with the witness, I will |
| 11:33:10 | 22 | almost always try to do that within reason for y'all's |
| 11:33:14 | 23 | planning purposes. |
| 11:33:15 | 24 | But that being said, I also understand that when |
| 11:33:17 | 25 | I finish trial, you have your second day of work getting |

| | | |
|---|---|---|
| 11:33:19 | 1 | ready for the next day of trial.  So again, I'm probably |
| 11:33:23 | 2 | hopefully the most sympathetic trial judge in terms of |
| 11:33:26 | 3 | wanting you all to do what's ever best for you all to get |
| 11:33:29 | 4 | this case tried fairly and work with your witnesses and do |
| 11:33:33 | 5 | all that. |
| 11:33:33 | 6 | But that if I have a particular oddity about me |
| 11:33:38 | 7 | is, I like to finish witnesses, you know, before we -- if |
| 11:33:43 | 8 | we can, before we take an overnight break.  Other than |
| 11:33:46 | 9 | that, it's pretty vanilla. |
| 11:33:52 | 10 | So anything else I can address? |
| 11:33:54 | 11 | MR. BELANGER:  Thank you, your Honor. |
| 11:33:55 | 12 | MR. BURGER:  No, your Honor. |
| 11:33:56 | 13 | Thank you very much. |
| 11:33:57 | 14 | THE COURT:  And I'll apologize in advance because |
| 11:33:58 | 15 | I'm sure I'll repeat that because I'd forgotten I told |
| 11:34:02 | 16 | you.  But I wish you the best of luck.  Have a good week |
| 11:34:05 | 17 | and be safe out there.  Take care. |
| | 18 | MR. BURGER:  Thank you, your Honor. |
| | 19 | MR. BELANGER:  Thank you, your Honor. |
| | 20 | (End of proceedings.) |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
1                    *  *  *  *  *  *

2

3

4    UNITED STATES DISTRICT COURT  )

5    WESTERN DISTRICT OF TEXAS)

6

7       I, LILY I. REZNIK, Certified Realtime Reporter,

8    Registered Merit Reporter, in my capacity as Official

9    Court Reporter of the United States District Court,

10   Western District of Texas, do certify that the foregoing

11   is a correct transcript from the record of proceedings in

12   the above-entitled matter.

13      I certify that the transcript fees and format comply

14   with those prescribed by the Court and Judicial Conference

15   of the United States.

16      WITNESS MY OFFICIAL HAND this the 9th day of September,

17   2020.

18

19

20                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                SOT Certification No. 4481
25                              Expires:  1-31-21
```